# EXHIBIT A

**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
Morristown, NJ 07962-1997
Phone: (973) 538-4006
Fax: (973) 538-5146
Vito A. Gagliardi, Jr., Esq. (024821989)
Weston J. Kulick, Esq. (251092017)
Attorneys for Plaintiff CC Ford Group, LLC

| | |
|---|---|
| CC FORD GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JENNIFER JOHNSON,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: SOMERSET COUNTY<br><br>DOCKET NO.: SOM-L-541-22<br><br>CIVIL ACTION<br><br>**SUMMONS** |

From The State of New Jersey To The Defendant(s) Named Above:

Jennifer Johnson
78 Allview Avenue
Brewster, NY 10509

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to

6954580

plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

*s/ Michelle M. Smith, Esq.*
Clerk of the Superior Court

DATED:   May 17, 2022

Name of Defendant to Be Served:   Jennifer Johnson

Address of Defendant to Be Served:   78 Allview Avenue
Brewster, NY 10509

6954580

**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
Morristown, NJ 07962-1997
Phone: (973) 538-4006
Fax: (973) 538-5146
Vito A. Gagliardi, Jr., Esq. (024821989)
Weston J. Kulick, Esq. (251092017)
Attorneys for Plaintiff CC Ford Group, LLC

| | |
|---|---|
| CC FORD GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JENNIFER JOHNSON,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: SOMERSET COUNTY<br><br>DOCKET NO.: SOM-L-<br><br>CIVIL ACTION<br><br>**COMPLAINT** |

Plaintiff CC Ford Group, LLC ("Plaintiff") by and through its attorneys, Porzio, Bromberg

& Newman, P.C., by way of Complaint against Defendant Jennifer Johnson ("Johnson") alleges

as follows:

## NATURE OF THE ACTION

1.     Plaintiff seeks relief against Defendant arising out Defendant's willful, bad faith

conduct in connection with breaches of the parties' contractual agreements governing employment

and consulting relationships.

## PARTIES

2.     Plaintiff, CC Ford Group LLC, is a limited liability company organized under the

laws of New Jersey and having a principal place of business at 150 Morristown Road, Suite 102,

Bernardsville, NJ 07924 and is comprised of subsidiary and affiliated companies, including CC

Ford Group West, LLC (collectively "the Company").

1

6912763

3.     Defendant Jennifer Johnson is a natural person who resides at 78 Allview Avenue Brewster, NY 10509.

## VENUE

4.     Venue in the Superior Court of New Jersey, Law Division, Somerset Vicinage is proper in accordance with *R.* 4:3-2(a)(2) because Plaintiff conducts business within Somerset County.

## FACTUAL BACKGROUND

5.     This case arises as a result of Defendant's unlawful conduct committed when she was employed by and serving as the Managing Director of CC Ford Group West, LLC as well as following her separation from the Company in March 2022 whereafter she served as an independent contractor performing work for the Company.

6.     The Company is a comprehensive medical communications firm engaged in the business of pharmaceutical marketing services, including advertising and promotion, web site development and management, medical education, meeting planning, and other related marketing services associated with the pharmaceutical industry. With more than 20 years' experience in, and an extensive history of, launching products for the world's largest pharmaceutical clients, up-and-coming biotechnology companies, and leading device manufacturers, the Company has spent countless dollars and hours to provide scientific and strategic support through all stages of a product's life cycle, from early-stage clinical trial results and market development, through launch and expanding indications, as well as final-stage evergreening opportunities. In this capacity the Company has supported industry-leading product launches through a systematic process that provides a complete strategic solution with flawless implementation and has worked with leading

companies to change the treatment paradigm in many significant markets including oncology, hematology, cardiovascular disease, diabetes, pain, neurology, infectious diseases, and many rare conditions.

7.       Defendant worked for CC Ford Marketing Group, LLC directly until about 10 years ago, at which point she was assigned to its wholly-owned subsidiary, CC Ford Group West, LLC.

8.       CC Ford Marketing Group, LLC is the former name by which Plaintiff conducted business. Plaintiff ceased utilizing "Marketing" in its entity name in 2004.

9.       Until March 26, 2022, Defendant maintained a senior position at the Company as CC Ford Group West, LLC's Managing Director.

10.      On or about August 31, 2003, Defendant signed an Employee Non-Competition, Non-Solicitation, Confidentiality and Dispute Resolution Agreement ("the Non-Compete") with CC Ford Marketing Group, LLC.

11.      Pursuant to the Non-Compete, Defendant agreed to be prohibited from competing with the Company during Defendant's employment and for a period of one (1) year subsequent to her employment's termination.

12.      Specifically, the Non-Compete provides:

> *a.  Restrictions on Competition.* During Employee's employment with the Company and for a period of one (1) year after termination of Employee's employment with the Company, Employee will not, directly or indirectly, own any equity interest or option or right to acquire an equity interest in any Competitive Business as defined in subsection (e) below (other than in Employee's capacity as a holder of not more than five percent (5%) of the combined voting power of the outstanding stock of a publicly-held company).

3

6912763

13. Pursuant to the Non-Compete Defendant agreed to be prohibited from soliciting away the Company's employees during Defendant's employment and for a period of one (1) year subsequent to her employment's termination.

14. Specifically, the Non-Compete provides:

> *b. Restrictions on Enticement.* During Employee's employment with the Company and for a period of one (1) year after termination of Employee's employment with the Company, Employee will not, directly or indirectly, solicit, interfere with, hire, offer to hire any employee of the Company, or induce any employee of the Company to discontinue his or her employment with the Company in order to become employed by or associated with any business with which Employee is employed or associated with in any capacity.

15. Pursuant to the Non-Compete Defendant agreed to be prohibited from soliciting the Company's clients or business during Defendant's employment and for a period of two (2) years subsequent to her employment's termination.

16. Specifically, the Non-Compete provides:

> *c. Restrictions on Customer Contact.* During Employee's employment with the Company and for a period of two (2) year after termination of Employee's employment with the Company, Employee will not solicit for any Competitive Business, directly or indirectly, any Account, client or customer with whom the Company has conducted any business or for whom the Company has performed any services during the one (1) year prior to the termination of Employee's employment with the Company, or any potential account, client or customer with whom the Company has had substantial contact during the one (1) year period prior to the termination of Employee's employment with the Company. For the purposes of this Section 1(c), the Company will be deemed to have had 'substantial contact' with a potential account, client or customer if it has identified a business opportunity and a

4

> contact person within the potential account, client or
> customer and has communicated with the potential account,
> client or customer concerning the identified business
> opportunity.

17.    Pursuant to the Non-Compete Defendant agreed to be prohibited from disparaging

the Company in a manner resulting in harm to or loss of the Company's business subsequent to her

employment's termination.

18.    Specifically, the Non-Compete provides:

> *d. Non-Disparagement.* During Employee's employment
> with the Company, and at all times after termination of
> Employee's employment with the Company, Employee
> will not disparage the Company, and the Company's
> officers, directors, employees, shareholders, and agents, in
> any manner likely to be harmful to them or their business,
> business reputation, or personal reputation; provided that
> Employee shall respond accurately and fully to any
> question, inquiry or request for information when required
> by legal process.

19.    During the course of Defendant's employment with the Company, Defendant had

access to the Company's customer information and goodwill, existing business, equipment,

confidential and proprietary information, and trade secrets, to use solely for the benefit of the

Company.

20.    By virtue of her senior position at the Company, Defendant had the ability to access

files containing virtually all of the Company's most sensitive documents containing its

competitively sensitive and confidential information, including critical employee and customer

information.

21.    On or about February 28, 2022, Defendant informed the Company of her intention

to resign.

5

22.     After informing the Company of this intention, Defendant did not execute a termination agreement with the Company.

23.     Instead, Defendant proposed that she and the Company agree on a message to share with employees and clients regarding her departure.

24.     Contrary to initial indications, prior to her departure Defendant began contacting the Company's clients, and employees, to discuss her departure from the Company.

25.     In so doing, Defendant effectively co-opted the Company's customer goodwill, business opportunities, equipment, confidential and proprietary information, trade secrets, and other resources she encountered during her employment with the Company, while still employed at the Company.

26.     Defendant's final day with the Company in her role as CC Ford Group West, LLC's Managing Director was March 25, 2022.

27.     Prior to her departure, Plaintiff requested that Defendant return all Company items, including her laptop, keys, and American Express credit card by noon on her last day as an employee.

28.     Defendant did not return the above items, as requested.

29.     Subsequent to her departure as an employee, Defendant had agreed to work on certain defined projects as an Independent Contractor with CC Ford Group LLC and CC Ford Group West contingent upon a Consulting Agreement ("the Consulting Agreement") entered into on March 26, 2022 between Defendant and CC Ford Group, LLC its affiliated companies, including, but not limited to CC Ford Group West LLC.

6

30. The term of this consulting arrangement was to begin on the effective date of the Consulting Agreement, March 26, 2022, and end on July 17, 2022.

31. The Consulting Agreement provided that Defendant would perform the role of Consultant: Content Development and Strategic Consulting.

32. Pursuant to the Consulting Agreement Defendant "agree[d] to maintain confidentiality of this work in accordance with the Confidentiality Agreement, and [was] forbidden/will refrain from communicating information, in any manner, about the project(s), or any related information, with all outside parties other than Company employees without written consent from the Company's President. In addition to confidentiality, the contractor is expressly forbidden to utilize the names of CC Ford Group LLC or its affiliates, or CC Ford Group LLC's client(s) names(s), or any reference to the program at hand for promotional purpose without written permission from the Company."

33. While the Consulting Agreement acknowledges that Defendant "would pursue other business opportunities during the term of this Agreement" Defendant also expressly "agree[d], for the duration of the term of this agreement, not to pursue any business opportunities that will create a conflict of interest with the Company, and to notify the Company immediately, in writing, of any actual or potential conflict of interest."

34. Pursuant to the Consulting Agreement Defendant further "agree[d], for the duration of the term of this Agreement, not to solicit or any client, customer, or employee of the Company to engage in any business relationship with Contractor other than in furtherance of the objectives of [the Consulting Agreement]."

6912763

35.    Moreover, as a condition of the Consulting Agreement, Defendant was required to sign a Confidentiality Agreement ("the March 2022 Confidentiality Agreement").

36.    Defendant entered into the March 2022 Confidentiality Agreement with CC Ford Group, LLC and all subsidiary and affiliated companies, including but not limited to CC Ford Group, LLC and CC Ford Group West, LLC.

37.    The March 2022 Confidentiality Agreement requires Defendant to "retain in confidence all Confidential Information disclosed to Consultant by or on behalf of CC FORD GROUP, whether or not in writing or recorded in electronic or other format" for a period of ten (10) years following its effective date.

38.    The March 2022 Confidentiality Agreement further provides that Defendant "will not, either directly or indirectly, use any Confidential Information for any purpose other than to discharge her duties under the CONSULTING AGREEMENT without the prior written consent of CC FORD GROUP."

39.    Despite the foregoing contractual provisions, Plaintiff has discovered that, subsequent to Defendant's resignation from the Company and initiation of the consulting arrangement, Defendant has diverted business opportunities from the Company.

40.    As of the date of this Complaint, the Company is aware of at least two clients with respect to which, while engaged in the consulting arrangement, Defendant used confidential and proprietary information relating to work for which customers sought to engage the Company to solicit those clients and induce them to terminate their relationships with the Company, in violation of Defendant's Consulting Agreement, the March 2022 Confidentiality Agreement, and the Non-Compete Agreement.

8

41.     Defendant was paid a salary for her work on behalf of Plaintiff during the relevant period of employment.

42.     Defendant was also paid a fee in connection with the services performed pursuant to the Consulting Agreement.

43.     Thereafter, Plaintiff became aware of an April 7, 2022 email from Defendant sent from a PharmaEssentia email address.

44.     PharmaEssentia is a client of the Company which, subsequent to Defendant's termination as an employee, reneged on an anticipated business relationship with the Company.

45.     This April 7, 2022 email was sent during the time period in which Defendant was actively consulting for the Company.

46.     Defendant also misrepresented herself to the Company's travel agent by having an assistant attempt to create an unapproved stop in Vienna during a consulting trip on behalf of the Company that was only authorized to take place in Dubai.

## FIRST COUNT
## BREACH OF CONTRACT

47.     Plaintiff repeats and re-alleges the statements made in each of the preceding paragraphs of the Plaintiff's Complaint as if same were set forth at length herein.

48.     The parties' Non-Compete Agreement, Consulting Agreement, and March 2022 Confidentiality Agreement constituted valid and enforceable contracts among Plaintiff and Defendant.

49.     Defendant breached the aforementioned agreements as set forth above and herein.

9

6912763

50.     Defendant threatens to inflict further real, imminent and irreparable harm to the
Company in breaching the aforementioned agreements such that prompt action is necessary to
protect the Company's rights.

51.     Defendant is raiding the Company's customers and exploiting the Company's
substantial investments in customer cultivation, market testing and promotion.

52.     As a direct and proximate result of Defendant's breaches, Defendant has caused
Plaintiff economic damages and irreparable loss of good will, profits, revenue and business
opportunities, including the loss of customers and related business.

**WHEREFORE**, Plaintiff demands judgment against Defendant, awarding Plaintiff:

(a)     Enforcement of the parties' Non-Compete Agreement, Consulting
Agreement, and March 2022 Confidentiality Agreement and injunction
enjoining and restraining Defendant from directly or indirectly making any
disparaging or defamatory remarks about Plaintiff, from directly or
indirectly interfering with Plaintiff's contractual relationships, including, but
not limited to, attempting to divert business from Plaintiff, and soliciting
Plaintiff's customers and employees;

(b)     Compensatory and consequential damages in an exact amount to be
determined at trial;

(c)     Punitive damages in an exact amount to be determined at trial;

(d)     Disgorgement compelling Defendant to reimburse Plaintiff for all wages
paid by Plaintiff during the period of Defendant's disloyalty;

(e)     Attorneys' fees, and costs against Defendant in favor of Plaintiff;

(f)     Such other legal and equitable relief as the Court may deem just and proper.

## SECOND COUNT
## BREACH OF FIDUCIARY DUTY

53.     Plaintiff repeats and re-alleges the statements made in each of the preceding
paragraphs of the Plaintiff's Complaint as if same were set forth at length herein.

54.     As CC Ford West LLC's Managing Director, Defendant had a fiduciary relationship
with Plaintiff.

10

55.     As fiduciary, Defendant owed Plaintiff the utmost duties of loyalty, honesty, care and fair dealing.

56.     Defendant violated the duties owed to Plaintiff by engaging in the wrongful conduct described herein.

57.     Defendant breached her fiduciary duties to Plaintiff by soliciting Plaintiff's customers and diverting their business from the Company on specific jobs for which those customers sought originally to engage the Company, while Defendant was still employed by and/or consulting for the Company.

58.     Defendant also breached those fiduciary duties by using the Company's confidential and proprietary information, obtained in the course and scope of Defendant's employment and/or consulting arrangement with Plaintiff, to solicit the Company's customers to work with Defendant.

59.     As a direct and proximate cause of Defendant's breaches of her fiduciary duties, Plaintiff has suffered, and continues to suffer, significant economic loss and irreparable damages and harm, and will continue to do so unless and until Defendant is properly enjoined from continuing to harm Plaintiff.

60.     Furthermore, Defendant's breach of her fiduciary duties was willful, wanton, and malicious.

61.     Moreover, pursuant to the New Jersey Supreme Court's decision in *Kaye v. Rosefielde,* 223 N.J. 218 (2015), Plaintiff is entitled to the remedy of equitable disgorgement directing that all sums paid to Defendant during the period she violated her duty of loyalty be repaid.

11

6912/63

SOM-L-000541-22    05/16/2022 5:14:38 PM    Pg 12 of 17    Trans ID: LCV20221925300

**WHEREFORE**, Plaintiff demands judgment against Defendant, awarding Plaintiff:

(a) Enforcement of the parties' Non-Compete Agreement, Consulting Agreement, and March 2022 Confidentiality Agreement and injunction enjoining and restraining Defendant from directly or indirectly making any disparaging or defamatory remarks about Plaintiff, from directly or indirectly interfering with Plaintiff's contractual relationships, including, but not limited to, attempting to divert business from Plaintiff, and soliciting Plaintiff's customers and employees;

(b) Compensatory and consequential damages in an exact amount to be determined at trial;

(c) Punitive damages in an exact amount to be determined at trial;

(d) Equitable disgorgement compelling Defendant to reimburse Plaintiff for all wages paid by Plaintiff during the period of Defendant's disloyalty;

(e) Attorneys' fees, and costs against Defendant in favor of Plaintiff;

(f) Such other legal and equitable relief as the Court may deem just and proper.

## THIRD COUNT
## TORTIOUS INTERFERENCE WITH EXISTING BUSINESS RELATIONSHIPS

62.    Plaintiff repeats and re-alleges the statements made in each of the preceding paragraphs of the Plaintiff's Complaint as if same were set forth at length herein.

63.    Plaintiff maintains business and contractual relationships with its clients to provide consulting services when requested by customers.

64.    Defendant has interfered with Plaintiff's business and contractual relationship with its clients by soliciting the Company's clients and diverting them from the Company on specific jobs for which those customers sought originally to engage the Company.

65.    Defendant took these actions without privilege to do so, knowing the effect the actions would have on Plaintiff's existing business and contractual relationships.

66.    Defendant was particularly able to interfere with the Company's existing customers and business relations by virtue of her employment as CC Ford West LLC's Managing Director.

12

67.   In the absence of Defendant's actions and interference Plaintiff would have had a reasonable probability of economic gain from the customers who attempted to engage the Company for services but were diverted by Defendant.

68.   As a direct and proximate cause of Defendant's actions, Plaintiff has suffered, and continues to suffer, damages, including but not limited to, contractual damages, consequential damages, lost profits, and irreparable harm by tarnishing Plaintiff's reputation within the industry, causing an unquantifiable loss of Plaintiff's good will, and threatening future losses to Plaintiff's business operations and revenue.

**WHEREFORE**, Plaintiff demands judgment against Defendant, awarding Plaintiff:

(a)   Enforcement of the parties' Non-Compete Agreement, Consulting Agreement, and March 2022 Confidentiality Agreement and injunction enjoining and restraining Defendant from directly or indirectly making any disparaging or defamatory remarks about Plaintiff, from directly or indirectly interfering with Plaintiff's contractual relationships, including, but not limited to, attempting to divert business from Plaintiff, and soliciting Plaintiff's customers and employees;

(b)   Compensatory and consequential damages in an exact amount to be determined at trial;

(c)   Punitive damages in an exact amount to be determined at trial;

(d)   Disgorgement compelling Defendant to reimburse Plaintiff for all wages paid by Plaintiff during the period of Defendant's disloyalty;

(e)   Attorneys' fees, and costs against Defendant in favor of Plaintiff;

(f)   Such other legal and equitable relief as the Court may deem just and proper.

### FOURTH COUNT
### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

69.   Plaintiff repeats and re-alleges the statements made in each of the preceding paragraphs of the Plaintiff's Complaint as if same were set forth at length herein.

70.   Plaintiff's retention of clients to pursue future business represents a cognizable protectable interest.

13

6912763

71. In the absence of Defendant's actions and interference Plaintiff would have had a reasonable probability of economic advantage from its clients and industry contacts, including prospective clients who attempted to engage the Company to perform services but were diverted by Defendant.

72. Defendant has maliciously interfered with Plaintiff's interest in retaining clients for future business and the economic advantages associated with same her obstructionist measures, including intentionally utilizing the Company's confidential and proprietary information, goodwill, and trade secrets to lure away existing customers with future business and prospective customers from the Company instead of securing their business for the Company, as Defendant should have done given her duties as CC Ford West LLC's Managing Director and the scope of her consulting arrangement with the Company.

73. Defendant's actions were taken intentionally, without justification, and with the knowledge and expectation that Plaintiff's rights and expectations would be adversely affected.

74. Defendant's conduct as described above has resulted, and continues to result in, material loss to Plaintiff in terms of prospective services diverted from the Company.

75. As a direct and proximate result of Defendants' interference Plaintiff has suffered, and will continue to suffer substantial harm, including loss of a prospective gain, as well as damages.

**WHEREFORE,** Plaintiff demands judgment against Defendant, awarding Plaintiff:

    (a)    Enforcement of the parties' Non-Compete Agreement, Consulting Agreement, and March 2022 Confidentiality Agreement and injunction enjoining and restraining Defendant from directly or indirectly making any disparaging or defamatory remarks about Plaintiff, from directly or indirectly interfering with Plaintiff's contractual relationships, including, but

14

not limited to, attempting to divert business from Plaintiff, and soliciting
Plaintiff's customers and employees;

(b)   Compensatory and consequential damages in an exact amount to be
      determined at trial;

(c)   Punitive damages in an exact amount to be determined at trial;

(d)   Disgorgement compelling Defendant to reimburse Plaintiff for all wages
      paid by Plaintiff during the period of Defendant's disloyalty;

(e)   Attorneys' fees, and costs against Defendant in favor of Plaintiff;

(f)   Such other legal and equitable relief as the Court may deem just and proper.

## FIFTH COUNT
## TRESPASS TO CHATTEL

76.   Plaintiff repeats and re-alleges the statements made in each of the preceding
paragraphs of the Plaintiff's Complaint as if same were set forth at length herein.

77.   At all times relevant hereto, Plaintiff had possessory rights and/or interests in the
Company laptop, keys, and American Express credit card, used by Defendant in connection with
her employment with the Company.

78.   Defendant has deprived Plaintiff of the use and possession of said personal property
for a substantial time, causing damages.

79.   To date, Defendant has not returned said personal property despite Plaintiff's
multiple requests for same.

80.   Defendant's actions described hereinabove constitute trespass to chattels.

6912763

**WHEREFORE**, Plaintiff demands judgment against Defendant, awarding Plaintiff:

    (a)    Return of any and all Company items retained by Defendant, including the Company laptop, keys, and American Express credit card;

    (b)    Compensatory and consequential damages in an exact amount to be determined at trial;

    (c)    Punitive damages in an exact amount to be determined at trial;

    (d)    Attorneys' fees, and costs against Defendant in favor of Plaintiff;

    (e)    Such other legal and equitable relief as the Court may deem just and proper.

**PORZIO, BROMBERG & NEWMAN, P.C.**
Attorneys for Plaintiff CC Ford Marketing, LLC

By: _Vito A. Gagliardi, Jr._ _____
    Vito A. Gagliardi, Jr., Esq.

Dated:  May 16, 2022

16

## RULE 4:5-1 CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other action pending in any other court or of any pending arbitration proceeding, that no other action or arbitration is contemplated, and that I know of no other party who should be joined in this action.

Vito A. Gagliardi, Jr., Esq.

Dated:  May 16, 2022

## RULE 1:38-8 CERTIFICATION

I certify that confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

Vito A. Gagliardi, Jr., Esq.

Dated: May 16, 2022

17

0912703

SOM-L-000541-22   05/16/2022 5:14:38 PM   Pg 1 of 1   Trans ID: LCV20221925300

# Civil Case Information Statement

**Case Details: SOMERSET | Civil Part Docket# L-000541-22**

**Case Caption:** CC FORD GROUP, LLC  VS JOHNSON JENNIFER

**Case Initiation Date:** 05/16/2022

**Attorney Name:** VITO ANTHONY GAGLIARDI JR

**Firm Name:** PORZIO BROMBERG & NEWMAN PC

**Address:** 100 SOUTHGATE PKWY PO BOX 1997 MORRISTOWN NJ 079621997

**Phone:** 9735384006

**Name of Party:** PLAINTIFF : CC Ford Group, LLC

**Name of Defendant's Primary Insurance Company (if known):** Unknown

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION

**Document Type:** Complaint

**Jury Demand:** NONE

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by:** CC Ford Group, LLC? NO

---

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

05/16/2022
Dated

/s/ VITO ANTHONY GAGLIARDI JR
Signed

SOM-L-000541-22   05/17/2022 5:22:09 AM   Pg 1 of 1   Trans ID: LCV20221927119

SOMERSET COUNTY SUPERIOR COURT
40 NORTH BRIDGE STREET
1ST FLR PO BOX 3000
SOMERVILLE        NJ 08876-1262
                                    TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (908) 332-7700
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:   MAY 16, 2022
                    RE:     CC FORD GROUP, LLC   VS JOHNSON JENNIFER
                    DOCKET: SOM L -000541 22

     THE ABOVE CASE HAS BEEN ASSIGNED TO: TRACK 2.

     DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS: HON ROBERT G. WILSON

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      001
AT:  (908) 332-7700 EXT 13467.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:

                         ATT: VITO A. GAGLIARDI
                         PORZIO BROMBERG & NEWMAN PC
                         100 SOUTHGATE PKWY
                         PO BOX 1997
                         MORRISTOWN      NJ 07962-1997

ECOURTS