# CRITCHLEY, KINUM & LURIA, LLC

ATTORNEYS AT LAW
75 LIVINGSTON AVENUE - SUITE 303
ROSELAND, NEW JERSEY 07068

MICHAEL CRITCHLEY
MICHAEL CRITCHLEY, JR.
CHRISTOPHER W. KINUM
AMY LURIA
_____
ARMANDO B. SUÁREZ

(973) 422 - 9200
(973) 422 – 9700 fax
www.critchleylaw.com

September 21, 2022

**By ECF Filing**

Hon. Michael A. Shipp
Hon. Douglas E. Arpert
United States District Court
District of New Jersey
United States Courthouse
402 East State St., Room 2020
Trenton, NJ 08608

   *Re: CC Ford Group, LLC v. Johnson*, **22-cv-04143-MAS-DEA**

Dear Judge Shipp and Judge Arpert,

  We, along with Slarskey LLC, represent Defendant Jennifer Johnson and Project Velocity, Inc. in connection with the above-referenced dispute (the "Action"). Yesterday, Plaintiff CC Ford Group West, LLC ("CC Ford Group") filed an application for a temporary restraining order, which would have a drastic effect on our clients if issued. We write because we would like to be heard before the Court decides whether to issue the proposed order to show cause and/or TRO, which should be denied.

  This dispute arises out of a business divorce between the parties, after nearly a decade of unfulfilled and fraudulent promises and representations made by John Studdiford, the principal behind CC Ford Group. Ms. Johnson, formerly the Managing Director of CC Ford Group, is entirely responsible for having built and operated the CC Ford Group business, a pharmaceutical consulting company that she grew into a business with as much as $10 million in annual revenue, while Mr. Studdiford silently profited off her efforts.

  After a failed effort to buyout Mr. Studdiford's interest in CC Ford Group, Ms. Johnson told Mr. Studdiford in February 2022 that she was leaving CC Ford Group, since she could no longer tolerate being exploited and since he refused a commercial resolution. Ms. Johnson remained for an extra month to assist in transitioning the business, and thereafter launched Project Velocity. Several of CC Ford Group's old clients immediately retained Project Velocity's services, as did *CC Ford Group*, to continue assisting clients that CC Ford Group could not otherwise support. Ms. Johnson has spent the last seven months building Project Velocity, hiring staff, engaging clients and — already — growing the business briskly.

CC Ford Group filed this action on May 16, 2022, approximately two months after Ms. Johnson left CC Ford Group. CC Ford Group did not, at that time, seek injunctive relief to prohibit Ms. Johnson from competing with CC Ford Group. Instead, Plaintiff expressed interest in attempting to *mediate* the dispute with Ms. Johnson, which Ms. Johnson agreed to do. The parties did not execute an agreement to exclude the time set aside for mediation from any finding of undue delay or laches. Ms. Johnson would not have agreed to that, given the investment she was making in the new business, and the other people and clients affected by the passage of time.

In August 2022, the mediation failed. Yet, Plaintiff still waited several weeks before filing for an emergency temporary injunction to enjoin Ms. Johnson and Project Velocity from competing with CC Ford, on the basis of a purported two-year non-compete agreement that Ms. Johnson executed ***not*** with CC Ford Group West LLC, but with a ***separate*** entity, CC Ford Marketing Group LLC. That agreement was signed in 2003, when Ms. Johnson and Mr. Studdiford first began working together (the "Non-Compete Agreement"). (*See* Doc. 9, Am. Compl. ¶ 15; Doc. 9-1, Ex. A (Non-Compete Agreement).) **Ms. Johnson, however, has not been employed by CC Ford Group Marketing, LLC, since 2013**.

There are three main problems with Plaintiff's application, any one of which should be fatal:

*First*, note that Ms. Johnson did not enter into the Non-Compete Agreement with *Plaintiff*, CC Ford Group West LLC. She entered into the Non-Compete Agreement with a different entity, CC Ford Marketing Group. (*See* Doc. 9-1, Ex. A (Non-Compete Agreement).) Ms. Johnson last worked for CC Ford Marketing Group in 2013, subsequent to which Ms. Johnson was employed by CC Ford Group West LLC for the last nine years.  CC Ford Group West was established as part of Mr. Studdiford's fraudulent ruse to keep Ms. Johnson when she was offered more lucrative and successful professional opportunities elsewhere.  At that time, in 2013, Mr. Studdiford established CC Ford Group West LLC, and promised that she would be made a partner in the new entity. Hence, given the circumstances under which CC Ford Group West was formed, while *other employees* were asked to sign non-compete agreements, Ms. Johnson was never asked and never signed a non-compete with CC Ford Group West. In other words, ***Plaintiff in this action does not have a non-compete agreement with Ms. Johnson***.

Since the failed mediation, Plaintiff has effectively *admitted* this deficiency in its non-compete claim, as it has manufactured an "Assignment" of the CC Ford Marketing Group LLC Non-Compete Agreement *to CC Ford Group West LLC*. (*See* Doc. 9-1, Ex. B.) That assignment is dated ***September 11, 2022***—nine years after Ms. Johnson last worked for CC Ford Marketing Group LLC, seven years after the non-compete restrictions expired, seven months after Ms. Johnson noticed her resignation, four months after CC Ford Marketing Group LLC filed the complaint in this action, and—not coincidentally—several weeks after the mediation failed. Simply put, CC Ford Group West LLC is attempting to enjoin Ms. Johnson based on rights it did not have when she worked for CC Ford Group West LLC, based on an agreement with CC Ford Marketing Group LLC that expired ***seven years earlier***, and based on the bad faith "assignment" of that agreement after initiating this action and failing in mediation. If this weren't such a clumsy and obvious attempt to retroactively cure the deficiencies in Plaintiff's claim, it would be a fraudulent assignment, intended to mislead the Court into believing that the Non-Compete Agreement was previously effective to bar Ms. Johnson from competing with CC Ford Group West LLC.

*Second*, Plaintiff ***waited for more than seven months after Ms. Johnson left CC Ford Group West***, and began her business, to seek to enforce these purported non-compete rights. This is plainly

undue and prejudicial delay, sufficient to establish laches, insofar as Ms. Johnson has been outwardly and visibly competing with CC Ford Group (indeed, she has serviced several former CC Ford Group clients), and ***this complaint was filed back in May***. If CC Ford Group were truly to suffer irreparable harm as a result of Project Velocity's competition (and not merely—potentially—money damages), then it should have moved promptly for injunctive relief. The fact is, no amount of injunctive relief will provide CC Ford Group the protection that it is seeking; the clients who do not want to work with Mr. Studdiford's company have already left and are not going back to him, whether an injunction is issued or not. Any cognizable injury to CC Ford Group—if it exists—can be compensated with money damages. And the demand for an injunction is simply intended to injure Ms. Johnson and her business, and exert unfair leverage in this proceeding.

*Third*, in the vein of the foregoing, the balance of equities plainly tips in favor of Ms. Johnson. She has clients and employees who are now relying on the Project Velocity business—increasingly so over the past seven months. Enjoining Project Velocity now, after months of work, would serve no purpose other than to injure those innocent parties.

Notably, the attempt to obtain injunctive relief is not the first bare-knuckle tactic employed by Studdiford: CC Ford Group's lawyers had threatened as an *in terrorem* tactic to name as a defendant, along with Ms. Johnson, the CEO of one of her clients, a public company with a $165 billion market cap. That was a bald threat intended to scare Ms. Johnson into capitulating, for fear that her clients would get dragged into this dispute and not want to do business with her. That threat didn't work, and neither should this attempt to obtain frivolous, belated injunctive relief, based on an agreement that expired eight years ago and was not even "assigned" to CC Ford Group West LLC until last week. When CC Ford Group actually amended its complaint yesterday, it did not actually name that executive (or her company) as defendants, thus further underscoring the bad faith in Mr. Studdiford's threats.

For these reasons, the Court should not enter an order to show cause and/or a restraining order in this action—even on a temporary basis, and *certainly* not on an emergency basis. There is literally no enforceable agreement for the non-compete allegations upon which the application is based. If this truly were an emergency, Plaintiff would have made this application months ago. And there are many individuals and clients relying on Project Velocity both for their income and for valuable services. Under the circumstances, the Court should recognize the application for what it is: an attempt to harness the Court's extraordinary power, on a pretextual basis, to injure Ms. Johnson and obtain for Plaintiff an unfair advantage in this proceeding, even before it gets off the ground.

      We have not had the opportunity to put caselaw to these common-sense arguments, nor attach certain documentary evidence, but would welcome the opportunity to do so if requested by the Court. We would also welcome an opportunity to discuss this matter with the Court, prior to issuance of any order, whether in person or via teleconference, as well as to further brief these issues.

                                            Respectfully submitted,

                                            Critchley, Kinum & Luria, LLC

                                            */s/ Amy Luria*
                                            Amy Luria, Esq.

                                            */s/ David Slarskey*
                                            David Slarskey[1]
                                            Slarskey LLC
                                            420 Lexington Avenue, Suite 2525
                                            New York, NY  10170
                                            (212) 658-0661

---

[1] *Pro hac vice* admission pending.