```
                      UNITED STATES DISTRICT COURT
                         DISTRICT OF NEW JERSEY


 CC FORD GROUP, LLC              )     22-CV-4143-MAS
                                 )
            Plaintiff            )
       vs.                       )
                                 )
 JENNIFER JOHNSON, ET AL.        )
                                 )     Trenton, NJ
                                 )     October 24, 2022
            Defendant            )     2:49 p.m.


       MOTION FOR AN ORDER TO SHOW CAUSE VIA TELECONFERENCE
            BEFORE THE HONORABLE MICHAEL A. SHIPP
                  UNITED STATES DISTRICT JUDGE


 APPEARANCES:


 For the Plaintiff:        STEVEN I. ADLER, ESQUIRE
                           JANINE MATTON, ESQUIRE
                           MANDELBAUM BARRETT
                           3 Becker Farm Road, Suite 105
                           Roseland, NJ  07068
                           973-736-4600
```

SHANNAN GAGLIARDI, RDR, CRR
OFFICIAL COURT REPORTER
U.S. DISTRICT COURT, DISTRICT OF NEW JERSEY
402 East State Street, Suite 3090
Trenton, NJ  08608
(609)815-2750

```
For Defendant Johnson:        AMY D. LURIA, ESQUIRE
                              CRITCHLEY, KINUM & LURIA, LLC
                              75 Livingston Avenue, Suite 303
                              Roseland, NJ  07068
                              973-422-9200


                              DAVID SLARSKEY, ESQUIRE
                              SLARSKEY LLC
                              420 Lexington Avenue, Suite 2525
                              New York, NY  10170
                              (212) 658-0661


For Defendants                WILLIAM F. O'CONNOR, JR., ESQUIRE
Bicking and Weiler:           McELROY DEUTSCH MULVANEY CARPENTER
                              1300 Mount Kemble Avenue
                              P.O. Box 2075
                              Morristown, NJ  07962
                              973-993-8100
```

```
 1              (PROCEEDINGS held via teleconferencing before the
 2         Honorable Michael A. Shipp, United States District Judge,
 3         at 2:49 p.m.)
 4              THE COURT:  Good afternoon, Counsel.  This is the
 5   matter of CC Ford Group West versus Johnson, et al., Docket No.
 6   22-4143.
 7              Who is on the line for the plaintiff?
 8              MR. ADLER:  Good afternoon, Your Honor, Steven Adler
 9   and Janine Matton from Mandelbaum Barrett.
10              THE COURT:  Okay.  Good afternoon.
11              And who is on for the defendants?  I understand we
12   have two -- go ahead and enter your appearance.  I'm sorry.
13              MS. LURIA:  Good afternoon, Your Honor.  This is Amy
14   Luria from Critchley, Kinum & Luria on behalf of defendants,
15   Jennifer Johnson and Project Velocity.  I'll allow my
16   co-counsel to introduce himself.
17              MR. SLARSKEY:  Good afternoon, Your Honor, David
18   Slarskey from Slarskey LLC.  I'm joined by Ms. Johnson also on
19   behalf of Project Velocity.
20              MR. O'CONNOR:  Good afternoon, Your Honor, Bill
21   O'Connor, McElroy, Deutsch, Mulvaney & Carpenter, for Carrie
22   Bicking and Beth Weiler.
23              THE COURT:  Okay.  Is there anyone else on the line
24   today?
25              MS. STUDDIFORD:  Yes, Cathleen Studdiford.
```

```
 1              THE COURT:  Okay.  So this matter comes before the
 2   Court by way of an application for emergency injunction.  When
 3   the matter was previously before the Court, I declined to fully
 4   resolve the TRO application but advised the parties to resolve
 5   their differences concerning certain aspects of the request to
 6   relief, including, one, the return of the laptop that was
 7   possessed by the defendant, Jennifer Johnson, and the update of
 8   Johnson's LinkedIn profile to reflect that she departed CC Ford
 9   Group West in March of 2022.  My understanding from the letter
10   in correspondence is that the defendant -- that following that
11   conference, that both of those things have been resolved.
12              Now, the parties submitted additional briefing in
13   response to the TRO application.  Now, ordinarily, I really
14   don't need to hear from the parties any further unless you
15   believe there's something additional beyond your papers.  At
16   this time, the Court's really prepared to put a decision on the
17   record.
18              Is there anything else that needs to be said from
19   plaintiff's counsel, Mr. Adler?
20              MR. ADLER:  Yes, Your Honor.  Thank you.  Just
21   briefly, I just want to be clear that at the time we submitted
22   the initial application, there were certain facts that our
23   client was aware of, and since the time we were before Your
24   Honor last, the conduct of the defendants have continued.  So I
25   just wanted to point that out to the Court.
```

```
 1                  The matters that they are still working on are
 2   referenced at the end of John Studdiford's reply certification
 3   that we submitted to the Court, and I would submit, based upon
 4   the continuing breaches and the various causes of action that
 5   we set forth in the amended -- the verified amended complaint,
 6   that restraints are needed at this time.
 7                  If Your Honor has any other questions of me based
 8   upon what was stated, I'm happy to respond.
 9                  THE COURT:  No, I don't.  In fact, I think the papers
10   really speak for themselves.
11                  Anything else from the defendants?  And I know that,
12   Mr. O'Connor, you just recently joined in, but let me hear
13   first from Ms. Luria and company.
14                  Anything further from your end?
15                  MS. LURIA:  Your Honor, Mr. Slarskey, I believe, will
16   answer Your Honor's questions.
17                  THE COURT:  Okay.  Mr. Slarskey?
18                  MR. SLARSKEY:  No, Your Honor.  I mean, we would just
19   point out, as Your Honor I'm sure noted, much of our argument
20   was addressed in our reply.
21                  THE COURT:  All right.  Okay.  Mr. O'Connor, anything
22   to add from you and from your side?
23                  MR. O'CONNOR:  No, thank you, Your Honor.
24                  THE COURT:  Okay.  Let me put my decision on the
25   record here, folks.  First and foremost, preliminary injunctive
```

relief is an extraordinary remedy and should be granted only in limited circumstances. Kos Pharmaceuticals, Inc. v. Andrx Corp. 369 F.3d 700, 708 (3d Cir. 2004) (quoting American Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994)). I'm not going to read any citations here. Those will be in the transcript, if you should choose to order it.

In deciding to issue temporary restraints or preliminary injunction, the Court must weigh four factors: One, whether the movant has shown a reasonable probability of success on the merits; two, whether the movant will be irreparably harmed by the denial of relief; three, whether granting preliminary relief will result in either greater harm to the nonmoving part; and, four, whether granting the preliminary relief will be in the public interest. Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994).

Plaintiff bears the burden of showing that the factors weigh in favor of granting injunctions. Kos Pharms. Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004). While all four factors are important, failure to show either likelihood of success on the merits or irreparable harm must necessarily result in the denial of a preliminary injunction application. N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue, 707 F.Supp. 2d 520, 542 (D.N.J. 2010) (quoting In re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1143 (3d Cir.

1    1982)).

2            The irreparable harm requirement is met if a
3    plaintiff demonstrates a significant risk that he or she will
4    experience harm that cannot adequately be compensated after the
5    fact by monetary damages.  Adams v. Freedom Forge Corp. 204
6    F.3d 475, 484-85 (3d Cir. 2000). See Frank's GMC Truck Center,
7    Inc., 847 F.2d 102-03 (3d Cir. 1988).  This burden is a
8    difficult one to meet because economic loss does not constitute
9    irreparable harm.  Acierno v. New Castle County, 40 F.3d 645
10   653 (3d Cir. 1994).  Irreparable connotes that which cannot be
11   repaired, retrieved, put down again, atoned for.  Id.
12   (citations omitted).  Moreover, the harm must also be
13   immediate.  See Quad/Tech, Inc. v. Q.I. Press Controls B.V.,
14   701 F. Supp. 2d 644 655 (E.D. Pa. 2010) ("In order to make this
15   showing [of irreparable harm], the movant must clearly show
16   'immediate irreparable harm,' rather than a risk of harm.")
17   (quoting Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 92
18   (3d Cir. 1992)).

19           Here the Court finds that plaintiff has failed to
20   meet its burden.  The pleadings presented to the Court simply
21   fail to indicate that the alleged misappropriation of trade
22   secrets and/or confidential and proprietary information of the
23   company would constitute irreparable harm.  (Pl.'s Moving Br.
24   4, ECF No. 9-6.)

25           First, the Court is not convinced that any

enforceable agreement currently exists to preclude defendant from competing with the company, thus precluding a finding of irreparable harm from defendants' ongoing competition. Defendants point out that plaintiff is not even a party to the 2003 agreement, which is between Johnson and CC Ford Marketing Group, LLC, a different entity than plaintiff, and in any event, the non-compete/non-solicit obligations under that agreement expired at the latest in 2015. (Defs.' Opp'n Br. 12-13, ECF No. 20.)

The fact that plaintiff attempted to take this 2003 agreement by assignment dated September 11, 2022, presumably in anticipation of filing this request for injunctive relief, calls into serious question its enforceability. (Id.) As to the 2022 consulting agreement between Johnson and CC Ford Group and its affiliates, including plaintiff, the non-compete restriction there only ran from May 26, 2022, through July 17, 2022, providing no basis for the prospective injunctive relief sought here. (Am. Compl. ¶¶ 33-34, ECF No. 9.) And as to all the individual defendants, the Court finds that plaintiff has not adequately demonstrated a risk of ongoing harm such that injunctive relief is warranted.

The Court expresses no opinion on the ultimate outcome of plaintiff's breach of contract claim or ability to prove that it contractually could restrict defendants from competing or working with the same clients. All the Court

holds today is plaintiff falls short of showing a substantial likelihood of success on this issue at this stage.

Second, the timing weighs against a finding of irreparable harm. Plaintiff first filed its initial complaint on or about May 16, 2022, without simultaneously seeking injunctive relief, yet this was already two months after Johnson departed from her position as managing director, which occurred on March 25, 2022. (Id. ¶ 30; Defs.' Opp'n Br 1.) Plaintiff then waited until September 2022 to file its TRO application. (See generally Pl.'s Moving Br.)

Even assuming that plaintiff did not know about certain breaches until mid-June and that thereafter the parties were attempting to resolve the litigation through mediation, plaintiff still served Johnson its proposed amended complaint in August of 2022, prior to the start of mediation efforts, and could have sought injunctive relief then. (Defs.' Opp'n Br. 23.)

It is also not lost on the Court that plaintiff sought additional time to submit its reply brief in support of the TRO application. (Pl.'s Stip. of Ext. of Time, ECF No. 23.) These factors cut against a finding that emergency relief is warranted here. Where irreparable harm is alleged, an application for a temporary restraining order is expected to be filed expeditiously. See Nutrasweet Co. v. Vit-Mar Enterprises, Inc., 112 F.3d 689, 691 (3d Cir. 1997)

(application for TRO filed on same day as complaint); Logic Technology Development LLC v. Levy, No. 17-463 2021 WL 3884287, at *2 (D.N.J. Aug. 31, 2021) (noting approvingly that delays of even weeks or months to seek preliminary injunctions undercut a finding that there is irreparable harm).

Third, even if plaintiff could prove irreparable harm, the Court finds that such harm could be reduced to a sum certain. Plaintiff seeks to protect its legitimate business interest, that being its confidential and proprietary information as well as its customer relations and goodwill. (Pl.'s Moving Br. 6.)

Plaintiff's claims, many of which revolve around the alleged stealing of plaintiff's clients, seem to boil down to the request for disgorgement of profits, which sounds in the realm of monetary damages, making injunctive relief inappropriate. (Id. at 11 (Plaintiff contending, for example, that the Court can compel disgorgement of compensation received by an employee during the period in which the employee violated the duty of loyalty).)

Because plaintiff cannot meet its burden to prove irreparable harm, the Court need not run through the other factors. Plaintiff's application for an order to show cause TRO application is denied without prejudice for the failure to allege the requisite irreparable harm. The parties should still, however, feel free to reach out to the magistrate judge

1  to set this matter down for expedited discovery to help reach a
2  speedy resolution on the outstanding claims.
3             So with that, Counsel, that's all that I have for
4  today.  Again, all of the citations will be included in the
5  transcript if you should choose to order it.  That's all we
6  have for today, folks.
7       (Proceedings adjourned at 2:59 p.m.)
8
9                              CERTIFICATE
10
11 I certify that the foregoing is a correct transcript from the
12 record of proceedings in the above-entitled matter.
13
14 /s/Shannan Gagliardi   11/1/22
15 Shannan Gagliardi
16
17
18
19
20
21
22
23
24
25