Exhibit 3

2002 WL 1558531

2002 WL 1558531
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

TRUEPOSITION, INC. & KSI, INC.,
Plaintiffs/ Counterclaim Defendants,

v.

ALLEN TELECOM, INC.
Defendant/ Counterclaim Plaintiff.

No. CIV.A.01–823 GMS.
|
July 16, 2002.

**Synopsis**
Motion was filed to amend patent infringement complaint to add claims of infringement regarding four additional patents relating to the same subject matter. The District Court, Sleet, J., held that amendment was not precluded on grounds of bad faith or prejudice to defendant.

Motion granted.

West Headnotes (3)

[1]     **Patents**  🔑  Amended and supplemental pleadings

Motion to amend patent infringement complaint to add claims of infringement regarding four additional patents relating to the same subject matter was not in bad faith, where it was in compliance with the deadline imposed by the scheduling order, despite contentions that plaintiff filed its initial complaint with the knowledge that the asserted patents were invalid and that it sought discovery of accused products in connection with patents that were not mentioned in the complaint. Fed.Rules Civ.Proc. Rule 15(a), 28 U.S.C.A.

4 Cases that cite this headnote

[2]     **Federal Civil Procedure**  🔑  Injustice or prejudice

The scope of the court's inquiry as to bad faith on motion to amend is limited to whether the motion to amend itself is being made in bad faith, not whether the original complaint was filed in bad faith or whether conduct outside the motion to amend amounts to bad faith, and inquiry focuses on the plaintiff's motives for not amending the complaint earlier. Fed.Rules Civ.Proc. Rule 15(a), 28 U.S.C.A.

22 Cases that cite this headnote

[3]     **Patents**  🔑  Amended and supplemental pleadings

Amendment of patent infringement complaint to add claims of infringement regarding four additional patents was not precluded on ground of prejudice to defendant, despite contention that amendment would increase the complexity of the action and unnecessarily delay its conclusion to the prejudice of defendant's business relationships, where discovery was in its earliest stages, the patents which plaintiff sought to add were substantially similar to the patents contained in the original complaint, and it would be economically beneficial to the parties to resolve all the issues in a single proceeding, as well as being in the interest of judicial economy. Fed.Rules Civ.Proc. Rule 15(a), 28 U.S.C.A.

4 Cases that cite this headnote

MEMORANDUM AND ORDER

SLEET, District J.

I. INTRODUCTION

**\*1** On December 11, 2001, the plaintiffs, Trueposition, Inc. and KSI, Inc. (collectively "Trueposition") filed a complaint against the defendant, Allen Telecom, Inc. ("Allen"). In the complaint, Trueposition alleges that Allen has infringed three of its patents, namely U.S. Patent No. 4,728,959 ("the '959 patent"), U.S. Patent No. 6,108,555 ("the '555 patent"), and U.S. Patent No. 6,119,013 ("the '013 patent"). Each of these patents discloses a technology for locating cellular phones.

2002 WL 1558531

The court held a scheduling conference on March 7, 2002. During the scheduling conference, Trueposition asked the court to set a July 15, 2002 deadline for filing motions to amend. Trueposition stated that they needed until that time in order to complete "adequate discovery to determine whether we've asserted all the patents that we should." (D.I. 20, March 7, 2002 Scheduling Conference Transcript at 3:17–4:20.) In its April 3, 2002 scheduling order, the court set a May 31, 2002 deadline for motions to amend pleadings. The case is still in early stages of discovery, with fact discovery related to liability scheduled to close on November 1, 2002. The other stages of discovery have not yet commenced.

Presently before the court is Trueposition's motion to amend the complaint, which was filed on May 31, 2002 in accordance with the deadline set by the court. Trueposition seeks to add claims of infringement regarding four additional Trueposition patents. The four newly asserted patents also disclose technology for locating cellular phones. Allen contends that the motion should be denied because Trueposition has acted in bad faith and Allen will be prejudiced by the amendment. The court finds that Trueposition has not acted in bad faith and Allen will not be prejudiced by the proposed amendment. Therefore, the court will grant Trueposition's motion to amend the complaint.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) provides that a party may amend its complaint "by leave of court ... and leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Although the trial court has discretion to grant or deny leave to amend, leave should be freely granted in accordance with Rule 15(a) unless there is an apparent or declared reason for denial. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997). Sufficient reasons include undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, and futility of amendment. *Foman,* 371 U.S. at 182.

## III. DISCUSSION

Allen argues that leave to amend the complaint should be denied because Trueposition is acting in bad faith, and that granting leave to amend would be highly prejudicial to Allen. [1] The court will now address each of these assertions in turn.

### A. Bad Faith

**[1]  [2]**    Allen argues that Trueposition has acted in bad faith for two reasons. First, Allen claims that Trueposition filed its initial complaint with the knowledge that the asserted patents were invalid. Second, Allen alleges that Trueposition sought discovery of accused products in connection with patents that were not mentioned in the complaint. Regardless of whether these allegations are true, they are not relevant to the court's determination of whether leave to amend should be granted.

**\*2**    Allen has misconstrued the meaning of "bad faith," as it was contextualized in *Foman.* When considering a motion for leave to amend, the court should grant leave unless "the *motion* is being made in bad faith." *U.S. ex rel. B & R, Inc. v. Donald Lake Const .,* 19 F.Supp.2d 217, 220 (D.Del.1998) (emphasis added). The scope of the court's inquiry is therefore limited to whether the motion to amend *itself* is being made in bad faith, not whether the original complaint was filed in bad faith or whether conduct outside the motion to amend amounts to bad faith. *See J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 614 (3d Cir.1987) ("[T]he question ... of bad faith, requires that we focus on the plaintiff's motives for not amending their complaint earlier"). *See also Foman,* 371 U.S. at 182. (coupling "bad faith" together with "dilatory motive").

Allen has presented no evidence which would support the claim that Trueposition's motion to amend was made in bad faith or with dilatory motive. To the contrary, the record indicates that Trueposition filed its motion to amend in compliance with the May 31 deadline imposed by the court. Therefore, the court will not deny the motion to amend on the basis of bad faith.

### B. Prejudice

**[3]**    Allen argues that the addition of four patents to this action will increase the complexity of this action and unnecessarily delay its conclusion to the prejudice of Allen's business relationships. These vague and mild assertions of prejudice do not amount to the level of prejudice necessary under current law. To show undue prejudice, Allen must demonstrate that it will be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence" unless leave to amend is denied. *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir.1989).

Since discovery is in its earliest stages, amendment of the complaint will not deprive Allen of the opportunity to present

2002 WL 1558531

facts or evidence or otherwise prepare and present its case. In fact, since the patents which Trueposition seeks to add are substantially similar to the patents contained in the original complaint, it would be economically beneficial to the parties to resolve all the issues in a single proceeding. Allen has thus failed to demonstrate that it will be unduly prejudiced by Trueposition's proposed amendments.

Moreover, granting leave to amend will benefit the court. Where the additional patents are closely related to the already asserted patents and the patents involve similar technology, it is clearly in the interest of judicial economy to dispose of all of the claims between the parties in one proceeding. *See Jenn– Air Products Co. v.. Penn Ventilator, Inc.,* 283 F.Supp. 591, 594 (E.D.Pa.1968). Since the accused products are the same, the technology is the same, and the parties remain the same, the facts and the issues will substantially overlap. Granting the motion to amend will therefore enable the court to address all of these related issues simultaneously. Conversely, if the motion to amend were denied, Trueposition could institute a second action against Allen for infringement of the additional patents. The court, therefore, finds that judicial economy weighs in favor of granting the motion to amend.

## IV. CONCLUSION

 **\*3** The court concludes that Trueposition has not acted in bad faith in bringing this motion. The court further finds that since discovery is still in its earliest stages and the newly asserted patents relate to the same accused products and technology as the originally asserted patents, Allen will not be unduly prejudiced if Trueposition's motion to amend is granted.

For the foregoing reasons, IT IS HEREBY ORDERED that:

> 1. Trueposition's motion seeking leave to file an amended complaint (D.I.37) is GRANTED.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 1558531

## Footnotes

1    Allen has not made any argument suggesting that either undue delay or futility would support denial of the motion. Furthermore, the record reveals no basis for such contentions. Therefore, the court will not consider these factors.

End of Document            © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:22-cv-04143-MAS-TJB Document 85-4 Filed 07/26/24 Page 5 of 18 PageID: 1534

Volpe v. Abacus Software Systems Corporation, Not Reported in Fed. Supp. (2021)

2021 WL 2451968
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey,
Camden Vicinage.

Michael VOLPE, Plaintiff,
v.
ABACUS SOFTWARE SYSTEMS
CORPORATION, Defendant.

Civil No. 20-10108 (RMB/KMW)
|
Signed 06/16/2021

**Attorneys and Law Firms**

Hinman, Howard & Kattell, LLP, By: Daniel Harris Roseman, Esq., 707 Westchester Ave, Suite 407, White Plains, NY 10604, Attorney for Plaintiff.

Archer & Greiner PC, By: Michael S. Horn, Esq., Court Plaza South, West Wing, 21 Main Street, Suite 353, Hackensack, NJ 07081, Attorney for Defendants.

**OPINION**

BUMB, UNITED STATES DISTRICT JUDGE:

**\*1**  Before the Court is Defendant Abacus Software Systems Corporation's ("Defendant" or "Abacus") Motion to Dismiss Plaintiff Michael Volpe's ("Plaintiff" or "Volpe") Complaint. For the reasons set forth herein, the Court will deny this motion.

## I. BACKGROUND

In October 2011, Plaintiff began working for Defendant as an information technology salesperson. [Docket No. 1, at ¶ 8]. At this time, both parties signed an Employment Agreement. [Id. at ¶ 9]. According to the Complaint, Defendant breached this agreement in 2016 by "unilaterally, and without justification or notice, reduc[ing] Plaintiff's salary from $72,000.00 to $50,000.00 per year." [Id. at ¶ 16]. Plaintiff alleges that Defendant breached the agreement because the agreement purportedly required any salary reduction to be in writing and agreed to by both parties, which did not happen. [Id. at ¶¶ 17-18]. Volpe also claims that he repeatedly objected to his salary reduction, and that those objections went unanswered. [Id. at ¶20].

Plaintiff's relationship with his employer then continued to deteriorate. In late 2018, Defendant allegedly stopped reimbursing Plaintiff for certain business expenses. [Id. at ¶ 21]. Previously, Defendant had allegedly reimbursed Plaintiff for all expenses incurred in connection with his employment. [Id. at ¶ 22].

About one year later, in October 2019, Defendant informed Plaintiff that he would be terminated. [Id. at ¶ 24]. Plaintiff alleges that, shortly after this meeting and without notice, Defendant remotely accessed Plaintiff's personal smart phone and erased "all of the data." [Id. at ¶¶ 25-26].

Defendant allegedly accessed Plaintiff's personal iPhone using a feature called "find my iPhone." [Id. at ¶ 26]. This feature allows a user to remotely delete data from a phone affiliated with their "Apple ID." [Id.]. Although Defendant did not have access to Plaintiff's Apple ID password, Plaintiff alleges that Defendant was able to reset the password using his employer-provided e-mail address, and then delete his personal data. [Id.]. According to Plaintiff, the erased data included "(1) Contacts, (2) Pictures and videos, (3) Data, (4) Applications, (5) Purchases, (6) E-mails, and (7) Settings." [Id. at ¶ 27]. Plaintiff's attempts to recover this data were unsuccessful. [Id. at ¶ 28].

Volpe asserts six causes of action. Plaintiff alleges that Defendant breached his contract by both reducing his pay (Count One) and by refusing to reimburse his business expenses (Count Two). Similarly, Plaintiff alleges that Defendant's actions constitute a breach of the Covenant of Good Faith and Fair Dealing (Count Three). Moreover, Plaintiff claims that Defendant's unilateral reduction of his pay violates N.J.S.A. § 34:11-4.6(b), which requires employers to provide advance notice of changes to employee pay (Count Four). The final two counts arise from Defendant's purportedly improper access to Plaintiff's phone, which led to the deletion of Plaintiff's data. Volpe claims that this action constitutes a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count Five) and the New Jersey Computer Related Offenses Act, N.J.S.A. § 2A:38A-3 (Count Six).

**\*2**  Defendant now moves to dismiss Plaintiff's fifth count, the Computer Fraud and Abuse Act claim. Without this claim, Defendant argues, Plaintiff asserts only state law claims totaling less than $75,000. Moreover, Defendant contends that, after dismissing Plaintiff's only federal claim, the Court should decline to exercise supplemental jurisdiction, and

instead dismiss the entire action for lack of jurisdiction. Thus, the Court turns its analysis to Plaintiff's fifth count.

## II. STANDARD OF REVIEW

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 662, 129 S.Ct. 1937. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678, 129 S.Ct. 1937. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (quoting Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012). The Court may consider only the allegations in the complaint, and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing Chester Cnty. Intermediate Unit v. Penn. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).

In addition, Defendant also argues that the Court should dismiss Plaintiff's Computer Fraud and Abuse Act claim pursuant to Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." See Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977). A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." Const. Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014). In contrast, a factual attack "is an argument that there is no

subject matter jurisdiction because the facts of the case... do not support the asserted jurisdiction." Id. Stated differently, "a facial attack contests the sufficiency of the pleadings, whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." Id. (cleaned-up).

When a motion to dismiss presents a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." In re Schering Plough Corp., 678 F.3d 235, 243 (3d Cir. 2012). In other words, the Court applies "the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party[,]" when reviewing a facial attack. Const. Party of Pennsylvania, 757 F.3d at 358. But in reviewing a factual attack, the Court "may consider evidence outside the pleadings." Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).

## III. ANALYSIS

**\*3** Defendant argues that Plaintiff failed to state a claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. The CFAA was designed to create a cause of action against computer hackers. Dresser-Rand Co. v. Jones, 957 F. Supp. 2d 610, 613 (E.D. Pa. 2013). Although the CFAA was originally exclusively a criminal statute, it has been amended to include a civil cause of action. See Computer Abuse Amendments Act of 1994, Pub.L. No. 103–322, § 290001(d), 108 Stat. 1796 (codified at 18 U.S.C. § 1030(g)).

To state a civil CFAA claim, a plaintiff must establish that defendant (1) has accessed a "protected computer;" (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so "knowingly" and with "intent to defraud"; and (4) as a result has "further[ed] the intended fraud and obtain[ed] anything of value." P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC., 428 F.3d 504, 508 (3d Cir 2005) (quoting 18 U.S.C. § 1030(a)(4)).

The CFAA further provides that:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil

action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i).

18 U.S.C. § 1030(g). As relevant here, Plaintiff contends that he has satisfied this requirement by identifying "loss to 1 or more persons during any 1–year period ... aggregating at least $5,000 in value," in violation of § 1030(c)(4)(A)(i)(I). [See Docket No. 13, at 8].

### A. Protected Computer

The CFAA defines a protected computer, as relevant here, as a computer "used in or affecting interstate or foreign commerce or communication." § 1030(e)(2)(B). Defendant argues that Plaintiff has not sufficiently alleged that his iPhone was a "protected computer" under this definition. The Court disagrees. Plaintiff has established that his phone was a "smart device" [Docket No. 1, at ¶ 53] capable of accessing the internet. [Id. at ¶¶ 26-27] Moreover, the very nature of Plaintiff's claim concerns remote access of information, via the internet, on his communications device. See United States v. MacEwan, 445 F.3d 237, 245 (3d Cir. 2006) ("the Internet is an instrumentality and channel of interstate commerce.") At this stage in the litigation, Plaintiff's contention is sufficient to establish that the iPhone in question is a protected computer under the meaning of the CFAA.

### B. Authorization

"The touchstone of a CFAA claim is the 'unauthorized' access of computers." Christie v. Nat'l Inst. for Newman Stud., No. 16-6572 (FLW), 2019 WL 1916204, at *5 (D.N.J. Apr. 30, 2019). A plaintiff must show that a defendant "accessed the computer either 'without authorization' or that [it] 'exceeded authorized access [1] .' " Synthes, Inc. v. Emerge Med., Inc., No. CIV.A. 11-1566, 2012 WL 4205476, at *16 (E.D. Pa. Sept. 19, 2012).

**\*4** Defendant argues that it was authorized to access Plaintiff's smart phone because "Plaintiff specifically gave [Defendant] authority to access his phone," [Docket No. 9-1, at 6] as set forth in the Employee Handbook. According to Defendant, this Handbook states that "[a]ll e-mail and voice mail passwords must be made available to the company at all times." [Id. at 6-7]. In addition, Defendant refers to Plaintiff's Employment Agreement, which requires that its information must be returned whenever Plaintiff's employment terminates.

In response, Plaintiff contends that Defendant's authority to access his smart phone, to the extent that authority ever existed, terminated once his employment ended. So, because Plaintiff was no longer an employee of Defendant at the time of the access to his smart phone, that access was unauthorized.

As an initial matter, the Court cannot consider the Employee Handbook at this juncture because it is an extraneous document to the Complaint. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."). But Plaintiff's Employment Agreement is a "document integral to or explicitly relied upon in the complaint," which the Court may consider. Id.

Here, whether Plaintiff was obligated to return certain business data stored on his smart phone is irrelevant to his CFAA claim. This claim concerns authorization to access. Possession of another's property is not authorization for the property-owner to reclaim possession by any means necessary.

Moreover, Plaintiff clearly alleges that Defendant lacked authorization to access his iPhone, which Defendant has not sufficiently disputed. Defendant's arguments generally pertain to Plaintiff's employer-provided e-mail address. But that is not in dispute. Stated differently, Plaintiff does not allege an unauthorized access of his e-mail address, he alleges that Defendant, without authorization, accessed his smart phone, "which was [Plaintiff's] personal property and not issued or owned by [Defendant.]" [Docket No. 1, at ¶ 25]. Although Defendant may establish that Plaintiff consented to access, Plaintiff has sufficiently alleged that Defendant's access, at this juncture, was done without authorization.

### C. Knowingly and with Intent to Defraud

As noted above, a plaintiff must establish that the defendant accessed his computer "knowingly" and with "intent to defraud." P.C. Yonkers, Inc., 428 F.3d at 508. Although Defendant seemingly argues that it did not access Plaintiff's smart phone "knowingly," [Docket No. 9-1, at 4] ["The Plaintiff has failed to allege that the Defendant 'knowingly' ... undertook the conduct complaint of."], the Court dismisses such argument. Defendant's brief raises no argument that it accessed Plaintiff's phone negligently or accidentally, and it fails to provide any other argument showing that its access was made unknowingly.

As to the "intent to defraud" element, Defendant likewise argues that Plaintiff has failed to allege any facts that satisfy this criterion. Plaintiff responds that Defendant used fraud and deceit to access his smart phone. More specifically, Plaintiff alleges that Defendant accessed his phone by using "an e-mail [account] associated with Plaintiff's Apple ID to reset Plaintiff's password to Plaintiff's 'find my iPhone' account in order to access such account for the purpose of deleting data from Plaintiff's iPhone." [Docket No. 13, at 10]. This, Plaintiff contends, was an intent to defraud because Defendant deceived "Apple, Inc. into believing that it was Plaintiff attempting to access the account." [Id.].

**\*5** "Intent to defraud," as relevant here raises two questions: (1) what constitutes "intent to defraud" under the CFAA, and (2) does the CFAA require the plaintiff to be the victim of fraud. Some courts have explained that "defraud," as used in CFAA § 1030(a)(4), means " 'wronging one in his property rights by dishonest methods or schemes.' " Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc., 119 F. Supp. 2d 1121, 1125 (W.D. Wash. 2000). For example, in Shurgard, the Western District of Washington held that "the CFAA's use of 'fraud' simply means wrongdoing and not proof of the common law elements of fraud." Id. at 1126.

The Third Circuit has neither adopted nor rejected this definition. But it has been widely adopted by district courts across the country. See e.g., SMH Enterprises, L.L.C. v. Krispy Krunchy Foods, L.L.C., No. CV 20-2970, 2021 WL 1226411, at \*5 (E.D. La. Apr. 1, 2021); TracFone Wireless, Inc. v. Cabrera, 883 F. Supp. 2d 1220, 1227 n.2 (S.D. Fla. 2012); Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc., 556 F. Supp. 2d 1122, 1131 (E.D. Cal. 2008); NCMIC Fin. Corp. v. Artino, 638 F. Supp. 2d 1042, 1062 (S.D. Iowa 2009). Moreover, and as recognized by the First Circuit in United States v. Czubinski, 106 F.3d 1069 (1st Cir. 1997), Congress used § 1030(a)(4)'s "intent to defraud"

language synonymously with "wrongfully." Czubinski, 106 F.3d at 1078 (citing 132 Cong. Rec. 7128, 7129, 99th Cong., 2d. Sess. (1986) and S. Rep. No. 432, 99th Cong., 2d Sess., reprinted in 1986 U.S.C.C.A.N. 2479, 2488.) Therefore, the Court will apply the Shurgard definition of fraud.

As alleged in the Complaint, Defendant purportedly used dishonest means to reset Plaintiff's Apple ID password and access his account. That Plaintiff has not alleged common law fraud is irrelevant. Under Shurgard, Plaintiff has sufficiently alleged that Defendant acted with "intent to defraud" pursuant to the CFAA.

As noted above, there is also a question of whether the CFAA requires Plaintiff to be the victim of Defendant's purported fraud. The parties have identified no caselaw establishing that a plaintiff cannot maintain a CFAA claim when the defrauded-party was a third-party to the litigation. In addition, the CFAA does not explicitly state that Plaintiff must be the victim of such fraud. See § 1030(a)(4) ("whoever ... knowingly and with intent to defraud ..."). The Court notes, however, that the CFAA is primarily a criminal statute, so this information was largely unnecessary until the addition of subsection (g).

Nevertheless, § 1030(g) does not require the plaintiff to be the fraud victim. Instead, subsection (g) only requires the plaintiff to suffer "damage or loss" due to the defendant's violation of the CFAA. A plain reading of the statute permits a plaintiff to bring a CFAA action, regardless of who the defrauded-party may be, so long as that plaintiff sufficiently alleges damage or loss. Thus, Plaintiff's argument that Defendant committed fraud, under the CFAA, by deceiving Apple and impermissibly accessing his Apple ID is sufficient to establish this element of the CFAA.

### D. Furthered the Fraud and Obtained Anything of Value

The next element of the CFAA requires Plaintiff to show that Defendant further the intended fraud and obtained anything of value. P.C. Yonkers, Inc., 428 F.3d at 508.

In a typical CFAA case, particularly one related to employment, this element is rarely in dispute. In these cases, a plaintiff-employer usually alleges that an employee or former employee downloaded certain files, see e.g., Dresser-Rand Co., 957 F. Supp. 2d at 611, or acquired trade secrets and other confidential information. See e.g., Teva Pharms. USA, Inc. v. Sandhu, 291 F. Supp. 3d 659, 667 (E.D. Pa. 2018).

**\*6** But this is not a typical CFAA case, and this element is disputed. For Plaintiff to satisfy this element, he must establish that Defendant engaged in conduct to further its alleged fraud, that it "obtained" something, and that what it obtained has some "value."

As a preliminary matter, the Court notes that Defendant has not argued this specific point. Instead, Defendant primarily contends that Plaintiff has not suffered damage or loss under the CFAA, and that it had authorization to access Plaintiff's iPhone. Nevertheless, the Court finds that Defendant has broadly challenged Plaintiff's entire CFAA claim and that there is significant interplay between Defendant's arguments and this element, such that it is appropriate to consider this issue now.

As alleged in the Complaint, Defendant-- after it deceived Apple into providing Plaintiff's Apple ID-- used Plaintiff's login information to access his iPhone and to gain the necessary permissions to remotely delete Plaintiff's data. At this stage in the case, Plaintiff has satisfied this element of the CFAA.

Plaintiff clearly alleges that Defendant used the information it gained through deceit to access his phone. Defendant then allegedly obtained the ability to remotely delete Plaintiff's data. Although there may be a question of whether the ability to delete data is something "of value," discussed more thoroughly below, this ability was "obtained" through Defendant's alleged fraud. Therefore, Plaintiff satisfies both the "further the fraud" and "obtained" factors of this element.

Finally, the ability to remotely delete data constitutes something of "value." Both the First and Tenth Circuits define "anything of value" as: "relative to one's needs and objectives." Triad Consultants, Inc. v. Wiggins, 249 F. App'x 38, 41 (10th Cir. 2007); Czubinski, 106 F.3d at 1078. The Court will adopt this definition. Given Plaintiff's allegations that Defendant obtained the ability to remotely delete his data and that Defendant's goal was to delete data, the Court finds that, relative to Defendant's purported objective, Plaintiff has alleged that Defendant obtained something of value.

## E. Damage or Loss in Excess of $5,000

A plaintiff must allege that the defendant's actions, in violating the CFAA, "caused damage or loss to the plaintiff in

excess of $5,000 in a one-year period." Teva Pharms. USA, Inc., 291 F. Supp. 3d at 668 (quoting 18 U.S.C. § 1030(a)(4)). "Loss," under the CFAA, refers to "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." § 1030(e)(11). "Numerous district court decisions in the Third Circuit have held that to fall within this definition of 'loss,' the 'alleged loss must be related to the impairment or damage to a computer or computer system.' " Sealord Holdings, Inc. v. Radler, No. CIV.A. 11-6125, 2012 WL 707075, at \*4 (E.D. Pa. Mar. 6, 2012) (collecting cases).

So, a compensable loss under the CFAA is generally either "the cost of remedial measures taken to investigate or repair the damage to the computer, or ... the amount of lost revenue resulting from a plaintiff's inability to utilize the computer while it was inoperable because of a defendant's misfeasance." Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio, No. CIV.A. 09-2751, 2011 WL 6088611, at \*5 (E.D. Pa. Dec. 7, 2011). Stated differently, the "loss" must generally be "in some way related to functionality of the protected computer at issue." Id.

**\*7** The CFAA also permits a Plaintiff to recover for "damage." The CFAA defines damage as "any impairment to the integrity or availability of data, a program, a system, or information." § 1030(e)(8). Indeed, some courts have held that "[p]ermanent deletion of files from a laptop computer without authorization ... may constitute 'damage' under the CFAA." Calkins v. IPD Analytics, L.L.C., No. 08-23188-CIV-MORE, 2009 U.S. Dist. LEXIS 85702, at \*17 (S.D. Fla. Apr. 16, 2009).

Here, Plaintiff argues that the "business interruption and the loss of [ ] data and records result[ed] in monetary damages valued at more than $10,000.00." [Docket No. 1, at ¶ 54]. Defendant responds that Plaintiff has not suffered a cognizable "loss" or "damage," and that Plaintiff's alleged loss of personal data cannot meet the CFAA's "in excess of $5,000" requirement.

Defendant's arguments are unpersuasive. Plaintiff has clearly alleged "damage" under the CFAA. Due to Defendant's alleged actions, Plaintiff argues that his data and information is no longer available, which satisfies the CFAA definition. In addition, the CFAA establishes that "loss" includes

Case 3:22-cv-04143-MAS-TJB   Document 85-4   Filed 07/26/24   Page 10 of 18 PageID: 1539

*Volpe v. Abacus Software Systems Corporation, Not Reported in Fed. Supp. (2021)*

"responding to an offense ... and restoring the data, program, system, or information to its condition prior to the offense. § 1030(e)(11). As stated in the Complaint, Plaintiff alleges that he has attempted to retrieve and recover the lost data. [Docket No. 1, at ¶ 28]. Moreover, the Court is also satisfied that Plaintiff's smart phone suffered a loss of functionality. To the extent that Plaintiff used his phone as a storage device for his pictures and videos, and as a contact list for phone numbers, Plaintiff has alleged a loss of functionality. Therefore, Plaintiff has claimed both "loss" and "damages" under the CFAA.

The final issue concerns the monetary loss of Plaintiff's claim. When reviewing a challenge to a plaintiff's asserted damages amount, the Court "consult[s] the face of the complaint and accept[s] the plaintiff's good faith allegations." *Vasvari v. Hartung*, No. 16-6461-BRM-TJB, 2017 WL 6417633, at *2 (D.N.J. Dec. 15, 2017) (citing *Frederico v. Home Depot*, 507 F.3d 188, 194 (3d Cir. 2007)). "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997) (citation omitted). The Court will dismiss an action for failure to meet the jurisdictional amount if the Court "is certain that the jurisdictional amount cannot be met." *Id.* (citing *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir.1995)). This is often described as the legal certainty test. *Id.* Similarly, the Third Circuit has also held that that courts should dismiss for lack of jurisdiction in federal question cases when claims are "insubstantial on their face." *See id.* (citing *Lunderstadt v. Colafella*, 885 F.2d 66, 69–70 (3d Cir.1989)).

Under both the "legal certainty" test and the "insubstantial on [its] face" test, the Court is satisfied that Plaintiff has alleged more than $5,000 in damages. Some of Plaintiff's allegedly lost data may be easier to quantify than others-- for example, Plaintiff's lost "purchased apps" [Docket No. 13, at 10] are far easier to assess than Plaintiff's lost pictures and videos. In any event, Plaintiff's claim of $10,000 in lost data is not unreasonable on its face, and the Court cannot infer bad faith or insubstantiality. Defendant has also failed to offer any substantive challenges to Plaintiff's claim. At most, Defendant's argument is simply that it believes Plaintiff assess his lost data too highly. This is insufficient. Thus, the Court finds that Plaintiff has stated a claim under the CFAA.

### F. Supplemental Jurisdiction

 **\*8**  Having found that Plaintiff has stated a claim under the CFAA, the Court will not dismiss Plaintiff's remaining claims for lack of subject matter jurisdiction. In addition, the Court will exercise jurisdiction over Plaintiff's related state law claims.

### IV. CONCLUSION

Thus, for the foregoing reasons, the Court will DENY Defendant's Motion to Dismiss [Docket No. 9]. An appropriate Order accompanies this Opinion.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 2451968

---

### Footnotes

1  The CFAA's "exceeded authorized access" provision is inapplicable in this matter. *See* *Van Buren v. United States*, ―― U.S. ――, 141 S.Ct. 1648, ―― L.Ed.2d ――, 2021 WL 2229206, at *12, No. 19-783 (U.S. June 3, 2021) ("In sum, an individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases —that are off limits to him.") Although the Supreme Court addressed "exceeds authorized access" in the § 1030(a)(2) context, the Court finds no reason to apply a different interpretation to Plaintiff's § 1030(a)(4) claim. Here, the parties' arguments do not concern exceeding authorized access-- Defendant claims that it was fully entitled to access Plaintiff's phone, and Plaintiff argues that Defendant had no authorization whatsoever. If discovery reveals contradictory information, Defendant may raise this argument again in a future motion.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   6

Case 3:22-cv-04143-MAS-TJB   Document 85-4   Filed 07/26/24   Page 11 of 18 PageID: 1540

Volpe v. Abacus Software Systems Corporation, Not Reported in Fed. Supp. (2021)

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 2691417

**NOT FOR PUBLICATION**

United States District Court, D. New Jersey.

FIDELITY EATONTOWN, LLC and
Quickchek Corporation, Plaintiffs,

v.

EXCELLENCY ENTERPRISE, LLC,
Kennedy Auto Service, Inc., and Gas
of Eatontown, Inc., et al., Defendants.

Civil Action No. 3:16-cv-3899-BRM-LHG
|
Signed 06/22/2017

**Attorneys and Law Firms**

Joshua S. Bauchner, Michael H. Ansell, Ansell Grimm & Aaron PC, Woodland Park, NJ, for Plaintiffs.

Philip L. Guarino, Guarino & Co. Law Firm, LLC, Montclair, NJ, R. William Potter, Potter and Dickson, Princeton, NJ, Anthony X. Arturi, Jr., Arturi, D'Argenio, Guaglardi & Meliti LLP, Rochelle Park, NJ, for Defendants.

**OPINION**

HON. BRIAN R. MARTINOTTI, United States District Judge

**\*1** Before this Court are the following motions: (1) Defendant Excellency Enterprise's ("Excellency") Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 13-1); and (2) Plaintiffs Fidelity Eatontown ("Fidelity") and QuickChek Corporation's ("QuickChek") (collectively, "Plaintiffs") Motion to Dismiss Defendant Kennedy Auto Service's ("Kennedy") Counterclaim, pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 16). Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument.[1] For the reasons set forth herein, Excellency's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Plaintiffs' Motion to Dismiss is **GRANTED**.

**I. BACKGROUND**

For the purpose of Excellency's Motion to Dismiss, the Court accepts the factual allegations in the Complaint (ECF No. 1)

as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny,* 515 F.3d 224, 228 (3d Cir. 2008). For the purpose of Plaintiffs' Motion to Dismiss Kennedy's Counterclaim, the Court accepts the factual allegations in the Answer (ECF No. 12) as true and draws all inferences in the light most favorable to Kennedy. *See id.*

Plaintiffs allege Excellency, Kennedy, and Gas of Eatontown, Inc. ("Gas of Eatontown") (collectively, "Defendants") conducted an illegal scheme of sham litigation and anticompetitive acts to interfere with Plaintiffs' respective development projects in the Borough of Eatontown, New Jersey ("Eatontown"), which would compete with Defendants' businesses, also located in Eatontown. (ECF No. 1 ¶ 1.) Fidelity is a New Jersey limited liability company and real estate developer. (*Id.* ¶¶ 1, 8.) Fidelity's proposed development (the "Fidelity Project") would include a Wawa convenience store/gas station and a Chick-Fil-A fast food restaurant on roughly six acres of land at the intersection of State Highway 35 and Wyckoff Road. (*Id.* ¶¶ 23, 25.) QuickChek is a New Jersey corporation that operates convenience store/gas station locations. (*Id.* ¶¶ 1, 9.). QuickChek's proposed development (the "QuickChek Project") would consist of a food store and eight fuel pumps on the southbound side of State Highway 35 near the former South Street right of way. (*Id.* ¶¶ 31, 33.) Defendants each own and/or operate a gas station within a mile of the sites of Plaintiffs' proposed developments. (*Id.* ¶¶ 34-36.)

**A. Defendants' Challenges to the Fidelity Project**

On or about November 2012, Fidelity applied to the Eatontown Planning Board ("Planning Board") for Preliminary and Final Major Site Plan approval of a Wawa convenience store/gas station. (*Id.* ¶ 37.) On or about December 16, 2013, after several hearings, the Planning Board approved the variances Fidelity sought and granted Preliminary and Final Site Plan Approval. (*Id.* ¶¶ 38-39.) On February 24, 2014, Defendants filed an action in lieu of prerogative writs in the Superior Court of New Jersey, Monmouth County, alleging the Planning Board's decision was improper because, *inter alia*: the variances constituted "rezoning by variance"; the Planning Board violated Defendants' due process rights to be heard; and the approval was arbitrary, capricious, and unreasonable. (*Id.* ¶¶ 40-41.) The action in lieu of prerogative writs began a series of challenges which led to roughly a dozen hearings, filings, and decisions before the Planning Board, the Eatontown Zoning Board of Adjustment ("Zoning Board"), and in the

2017 WL 2691417, 2017-1 Trade Cases P 80,038

Superior Court over the course of twenty-three months. (*Id.* ¶¶ 42-75.) Each of Defendants' challenges has been unsuccessful. (*Id.*) Defendants' appeal of the Superior Court's dismissal of their prerogative writs action is ongoing and has included several requests for extensions and motions that have delayed the appeal. (*Id.* ¶¶ 109-13.)

### B. Defendants' Challenges to the QuickChek Project

**\*2**  On or about October 15, 2014, QuickChek applied to the Planning Board for Preliminary and Final Major Site Plan approval of a QuickChek store. (*Id.* ¶ 76.) The Board Engineer determined the project's proposed use was permitted in the zone, and it identified the bulk variances and waivers required for the project. (*Id.* ¶¶ 77-78.) On or about December 9, 2014, QuickChek filed a revised site plan with the Zoning Officer. (*Id.* ¶ 79.) QuickChek appeared before the Planning Board on December 22, 2014, March 16, 2015, and July 6, 2015, Excellency's counsel attended the hearings to challenge the application. (*Id.* ¶¶ 81-82.) On May 13, 2015, while QuickChek's application was pending before the Planning Board, the Eatontown Borough Council (the "Council") passed Ordinance 07-2015 (the "Ordinance") that gave the Planning Board jurisdiction to hear applications for relief from parties seeking bulk variances. (*Id.* ¶¶ 68, 83.) On or about August 3, 2015, the Planning Board approved QuickChek's application for Preliminary and Final Major Site Plan approval. (*Id.* ¶ 84.) On or about September 11, 2015, Excellency filed a second action in lieu of prerogative writs, alleging the Planning Board's decision was improper because, *inter alia*: the Planning Board lacked sufficient credible evidence to grant variances with respect to an Eatontown ordinance governing the distances a gas station must be from other gas stations and from residential property; the Planning Board lacked sufficient information to determine the safety of traffic circulation on the site; and the approval was arbitrary, capricious, and unreasonable. (*Id.* ¶¶ 85-86.) Plaintiffs allege Defendants engaged in a series of tactics during the second prerogative writs action that delayed the action for months, such as submitting a proposed case management order that disregarded the terms the parties discussed at a case management conference and seeking to delay the trial. (*Id.* ¶¶ 88-92.) The trial in the action in lieu of prerogative writs has yet to be scheduled. (*Id.* ¶ 93.)

### C. Defendants' Challenge to the Ordinance

On June 12, 2015, Excellency commenced an action in lieu of prerogative writs challenging the Ordinance on several grounds, including: (1) the adoption of the Ordinance was

arbitrary, capricious, and unreasonable; (2) the Ordinance constitutes an amendment of Eatontown's Master Plan; and (3) the Ordinance constitutes rezoning of the property it affects. (*Id.* ¶¶ 97-98.) On or about August 28, 2015, and September 15, 2015, QuickChek and Fidelity, respectively, moved to intervene in the action to protect and enforce their rights. (*Id.* ¶ 100.) In January 2016, QuickChek and Fidelity sent separate letters to Defendants advising them the action violated New Jersey Rule of Court 1:4-8 and New Jersey's Frivolous Litigation Act, N.J.S.A. § 2A:15-59. (*Id.* ¶¶ 102-03.) Defendants did not respond to either letter. (*Id.* ¶ 105.)

On June 29, 2016, Plaintiffs filed their Complaint in this action asserting claims for: (1) violations of Section 2 of the Sherman Act, 15 U.S.C. § 2, including monopolization, attempted monopolization, and conspiracy to monopolize (*id.* ¶¶ 114-25); violations of the New Jersey Antitrust Act, N.J.S.A. § 56:9-1, *et seq.* (*id.* ¶¶ 126-37); (3) tortious interference with prospective economic advantage (*id.* ¶¶ 138-42); (4) tortious interference with contract (*id.* ¶¶ 143-47); and (5) civil conspiracy (*id.* ¶¶ 148-51).

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a ... motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This

2017 WL 2691417, 2017-1 Trade Cases P 80,038

"plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.' " *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation' " must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

**\*3** "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DECISION—EXCELLENCY'S MOTION TO DISMISS [2]

#### A. Monopolization Claim [3]  (Count One)

A claim for monopolization pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2, consists of (1) the possession of monopoly power and (2) "willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 481 (1992) (citation omitted). "Monopoly power is the ability to control prices and exclude competition in a given market." *Broadcom Corp.*, 501 F.3d at 307 (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). The second element of a claim for monopolization—willful acquisition or maintenance of monopoly power—requires the possession of monopoly power to be "accompanied by some anticompetitive conduct on the part of the possessor." *Id.* (citing *Verizon Commcn's Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004)).

Excellency argues Plaintiffs' claim for monopolization should be dismissed, because Plaintiffs have not pled Defendants possess monopoly power. (ECF No. 13-1 at 7-8.) Plaintiffs effectively concede their failure to properly plead a claim for monopolization, arguing they do not need to allege Defendants have a monopoly in order to plead there is an attempt to monopolize. (ECF No. 15 at 5.)

Therefore, Excellency's Motion to Dismiss Plaintiffs' claim for monopolization is **GRANTED.**

#### B. Attempted Monopolization Claim (Count One)

A plaintiff asserting a claim for attempted monopolization pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2, must allege: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993) (citation omitted). To show a dangerous probability of achieving monopoly power, a plaintiff must define "the relevant market and examin[e] ... market power." *Id.* at 455. The relevant market includes products that are "reasonably interchangeable," which "implies that one product is roughly equivalent to another for the use to which it is put." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.* 124 F.3d 430, 437 (3d Cir. 1997) (citation omitted). "A predominant share of the market, or a lesser market share combined with other relevant factors, may suffice to demonstrate monopoly power." *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 201 (3d Cir. 1992) (citing *Weiss v. York Hosp.*, 745 F.2d 786, 827 n.72 (3d Cir. 1984)).

**\*4** Excellency concedes Plaintiffs have pled anticompetitive conduct, but it argues Plaintiffs have not met the pleading standard for an attempted monopolization claim because they "failed to plead *any* facts at all going to whether Excellency has any monopoly or power at all in the alleged market." (ECF No. 17 at 3.) A plaintiff can plead a claim for attempted monopoly, however, without identifying defendant's specific share of the market. *Broadcom Corp.*, 501 F.3d at 319 (denying a motion to dismiss despite plaintiff's failure to allege defendant's market share). A plaintiff can demonstrate "anticompetitive practices, barriers to entry, the strength of competition, the probable development of the industry, and the elasticity of consumer demand ..." *Id.* at 318 (citation omitted).

Here, Plaintiffs allege a variety of factors that could demonstrate Defendants have a dangerous probability of achieving a monopoly. Plaintiffs allege numerous examples of Defendants' anticompetitive conduct. (ECF No. 1 ¶¶ 40-41, 44, 47-50, 54, 63-64, 66-67, 99, 109-110, 112.) Plaintiffs allege in detail that the barriers for gas stations to enter the market in Eatontown are high, noting factors such as "the need for available, properly zoned property" and "significant financial costs associated with the development of a gas stations convenience store." (*Id.* ¶ 22.) Finally, Plaintiffs

2017 WL 2691417, 2017-1 Trade Cases P 80,038

allege Defendants have a "dominant position in the relevant market" and allege an "absence of other competitors." (*Id.* ¶ 119.) Plaintiffs need not allege Defendants possess a specific percentage of the market share, but there must be an allegation of market share. *See Fineman*, 980 F.2d at 201 (citing *Weiss*, 745 F.2d at 827 n.72). Further, dismissal is not appropriate unless it is "clear on the face of the complaint that the 'dangerous probability' standard cannot be met as a matter of law." *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 877 (3d. Cir. 1995).

Excellency also argues Plaintiffs' attempted monopolization claim should be dismissed because Plaintiffs failed to allege they suffered an "antitrust injury" of the sort the Sherman Act is meant to prevent. (ECF No. 13-1 at 7 (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).) Excellency claims Plaintiffs have alleged only personal financial loss, and it argues this is not the sort of injury antitrust laws are meant to prevent. (*Id.* at 8 (citing *Broadcom Corp.*, 501 F.3d at 308 ("Conduct that merely harms competitors ... while not harming the competitive process itself, is not anticompetitive.")).)

The Third Circuit has stated "[a]s a general matter, the class of plaintiffs capable of satisfying the antitrust-injury requirement is limited to consumers and competitors in the restrained market ... and to those whose injuries are the means by which the defendants seek to achieve their anticompetitive ends." *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 172 (3d Cir. 2015) (quoting *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 102 (3d Cir. 2010)). The pivotal distinction between an injury that qualifies as an antitrust injury and one that does not is whether the "harm was the essential component of [d]efendants' anticompetitive scheme as opposed to an ancillary byproduct of it." *Id.* at 173. In *Hanover*, the Third Circuit determined a plaintiff sustained an antitrust injury in facts similar to those in this case. *Id.* at 173-74. The defendants, a ShopRite supermarket and its subsidiary, sought to prevent the plaintiff, a property developer, from obtaining planning approvals for land the plaintiff would lease to a Wegmans supermarket. *Id.* at 166. Although the defendants' anticompetitive actions were ultimately aimed at the Wegmans, the court found the developer's injuries, i.e., the costs of contesting the challenges to its application for approval, were a necessary part of the defendants' plan. *Id.* at 174. Here, Plaintiffs have alleged Excellency and the other Defendants have inflicted injuries through the allegedly baseless challenges to Plaintiffs' planning applications. (ECF No. 1 ¶ 125.) As in *Hanover*,

the injuries, as alleged in the Complaint, represent a key component of Defendants' efforts to discourage competition in violation of the Sherman Act and therefore constitute antitrust injuries.

**\*5** Therefore, Excellency's Motion to Dismiss Plaintiffs' claim for attempted monopolization is **DENIED**.

### C. Conspiracy to Monopolize Claim (Count One)

A plaintiff asserting a claim for conspiracy to monopolize "must establish the existence of an agreement, sometimes also referred to as a 'conspiracy' or 'concerted action.' " *W. Penn Allegheny Health Sys., Inc.* 627 F.3d at 99 (citations omitted). An agreement consists of "a unity of purpose, a common design and understanding, a meeting of the minds, or a conscious commitment to a common scheme." *Id.* (citation omitted). A plaintiff can plead an antitrust conspiracy by alleging direct or circumstantial evidence. *Id.*

Here, Plaintiffs allege all three Defendants jointly challenged Plaintiffs' applications through a series of sham and baseless appeals before municipal bodies and the Superior Court. (ECF No. 1 ¶¶ 40-41, 44, 47-50, 54, 63-64, 66-67, 99, 109-110, 112.) Further, Plaintiffs allege Defendants retained the same expert witness and the same counsel. (*Id.* ¶¶ 63, 102-03.) These allegations of circumstantial evidence are sufficient to support a claim that Defendants possessed "a unity of purpose, a common design and understanding, a meeting of the minds, or a conscious commitment to a common scheme" to interfere with Plaintiffs' applications. *See W. Penn Allegheny Health Sys., Inc.*, 627 F.3d at 99.

Therefore, Excellency's Motion to Dismiss Plaintiffs' claim for conspiracy to monopolize is **DENIED**.

### D. New Jersey State Antitrust Claim (Count Two)

The Third Circuit has observed "the New Jersey [Antitrust] Act itself mandates that it 'shall be construed in harmony with the ruling judicial interpretations of comparable Federal antitrust statutes and to effectuate ... a uniformity of those states which enact it.' " *St. Clair v. Citizens Fin. Grp.*, 340 Fed.Appx. 62, 65 n.2 (3d Cir. 2009) (quoting N.J.S.A. § 56:9-18). Thus, insofar as Plaintiffs have successfully alleged claims under the New Jersey Antitrust Act for attempted monopolization and conspiracy to monopolize, Excellency's motion is **DENIED**.

2017 WL 2691417, 2017-1 Trade Cases P 80,038

### E. Tortious Interference with Prospective Economic Advantage Claim (Count Three)

The four elements of a claim for tortious interference with prospective economic advantage under New Jersey law are: "(1) a reasonable expectation of economic advantage to plaintiff, (2) interference done intentionally and with 'malice,' (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages." *Varrallo v. Hammond Inc.* 94 F.3d 842, 848 (3d Cir. 1996) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739 (1989)). Defendants argue Plaintiffs cannot meet the pleading requirements of tortious interference with prospective economic advantage because Plaintiffs have not pled facts to show a connection between alleged interference and the loss of a prospective gain. (ECF No. 13-1 at 13.) Excellency states New Jersey is among a minority of jurisdictions that observe the "new business rule." (*Id.* (citing *RSB Lab. Servs., Inc. v. BSI Corp.*, 368 N.J. Super. 540 (App. Div. 2004)).) Under the new business rule, the prospective profits of a new business are deemed too remote and speculative to meet the legal standard of legal certainty. *In re Merritt Logan, Inc.*, 901 F.2d 349, 356 (3d Cir. 1990) (citing *Weiss v. Revenue Bldg. & Loan Ass'n.*, 116 N.J.L. 208 (1936)).

**\*6** Plaintiffs argue neither Wawa nor QuickChek is a new business, because each is part of a national chain. (ECF No. 15 at 18.) Plaintiffs cite a New Jersey Tax Court case that found a new business that is part of a large chain is considered integrated with those other businesses. (*Id.* at 17 (citing *Mayer & Schweitzer, Inc. v. Dir., Div. of Taxation*, 20 N.J. Tax 217, 227 (Tax 2002)).) This case has no bearing, though, on the new business rule in the context of contract law.

On the other hand, New Jersey courts have found the new business rule does not apply in cases where the business operator has experience in the sort of enterprise that alleges lost prospective profits. *RSB Lab. Servs., Inc.*, 368 N.J. Super. at 560-61. In *RSB Laboratory Services*, the Appellate Division determined the new business rule did not bar a claim for prospective profits when a plaintiff who ran a facility that drew blood from patients and sent the blood to outside labs opened its own facility to do the laboratory work itself. *Id.* The court distinguished this from two earlier cases in which the new business rule applied. In the first case, the new business rule applied to a plaintiff who transitioned from operating a rooming house to running a fifty-six room residential building. *Id.* at 561 (citing *Weiss*, 116 N.J.L. at 209). The new business rule also applied to a marine salvage company that sought to expand its operation to include a 100-ton-capacity-floating crane *Id.* at 561-62 (citing *Seaman v. U.S. Steel Corp.*, 166 N.J. Super. 467, 469 (App. Div.), *certif. denied*, 81 N.J. 282 (1979)). In contrast to the court in *RSB Laboratory Services*, the courts in *Seaman* and *Weiss* decided the new business rule applied and prospective profits could not be assumed, because the plaintiffs did not have experience operating businesses of such scale. *Id.* The court in *RSB Laboratory Services* distinguished those facts from the plaintiff's expansion of its blood drawing business to include lab analysis, which the court determined was related and not a "new business." *Id.*

Here, the facts more closely resemble those in *RSB Laboratory Services*. This Court takes judicial notice of the fact that both Wawa and QuickChek are chains that operate widely. Wawa operates more than five hundred retail locations with gas stations (About Us—Wawa, https://www.wawa.com/about (last visited June 21, 2017)), while QuickChek has 140 locations in New York and New Jersey (QuickChek—History, http://quickchek.com/History (last visited June 21, 2017)). Given the extensive history Wawa and QuickChek have with operating businesses of the sort they propose to operate in Eatontown, Plaintiffs' prospective profits are not too remote in light of this history. The Court finds the new business rule does not apply to this case.

As Excellency does not argue Plaintiffs have failed to adequately plead the remaining elements for tortious interference with prospective economic advantage, Excellency's Motion to Dismiss the claim is **DENIED**.

### F. Tortious Interference with Contract (Count Four)

Plaintiffs allege Defendants tortuously interfered with Fidelity's contract with Wawa related to the Fidelity Project. (ECF No. 1 ¶¶ 144-47.) "To establish [tortious interference with an existing contract], a plaintiff must prove: (1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference. *DiGiorgio Bros. v. Mendez & Co., Inc.*, 230 F. Supp. 2d 552, 558 (D.N.J. 2002) (citing *Printing Mart-Morristown*, 116 N.J. at 751-52). Defendants challenge only the sufficiency of Plaintiffs' pleading of the second of the four elements, specifically, whether Defendants' alleged interference was intentional. (ECF No. 13-1 at 14.) Excellency challenges Plaintiffs' pleading of the second element and argues Plaintiffs do not

2017 WL 2691417, 2017-1 Trade Cases P 80,038

allege Excellency desired to interfere with the agreement between Fidelity and Wawa, nor whether Excellency was even aware of the agreement. (*Id.*)

**\*7** "Interference is *intentional* when 'the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.' " *Cargill Global Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 575-76 (D.N.J. 2010) (quoting *Dello Russo v. Nagel*, 358 N.J. Super 254, 268 (App. Div. 2003) (quoting Restatement (Second) of Torts, § 766A, comment e (1977))). A party acts with malice when there is no "justification or excuse" for the interference. *Id.* at 576 (citing *Singer v. Beach Trading Co.*, 379 N.J. Super. 63, 82 (App. Div. 2005) (quoting *Mandel v. UBS/PaineWebber, Inc.*, 373 N.J. Super. 55, 79-80 (App. Div. 2004))).

Here, Plaintiffs allege Defendants mounted baseless, bad-faith challenges to Fidelity's application for approval of a Wawa convenience store and gas station. (ECF No. 1 ¶¶ 37-41.) Because Fidelity, the applicant, sought approval to develop the property on behalf of Wawa, the prospective tenant, the Court infers Excellency was aware of an agreement between the parties whose development Defendants challenged. Plaintiffs allege throughout the Complaint Defendants acted intentionally to delay Plaintiffs' projects in an effort to prevent them from entering the market. (*Id.* ¶¶ 2, 4, 115, 123-24, 127, 129, 134-35, 141, 146.) Plaintiffs' recount Defendants' unsuccessful efforts to challenge the Fidelity Project in particular. (*Id.* ¶¶ 37-75.) The Court finds Plaintiffs pled sufficient facts to support their claim, Excellency intended to interfere with Fidelity and Wawa's contract, and that the interference was with malice. *DiGiorgio Corp. v*, 230 F. Supp. 2d at 558 (citing *Printing Mart-Morristown*, 116 N.J. at 751-52).

Therefore, Excellency's Motion to Dismiss the claim for tortious interference with contract is **DENIED**.

### G. Civil Conspiracy (Count Five)

Plaintiffs assert a claim against Excellency and its fellow Defendants for civil conspiracy. (ECF No. 1 ¶¶ 149-51.) Under New Jersey law, a plaintiff alleging civil conspiracy must prove "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular, N.A. v. Gandi*, 184 N.J. 161, 177

(2005) (citation omitted). Excellency argues Plaintiffs have not alleged any facts to support their civil conspiracy claim. (ECF No. 13-1 at 15.)

Plaintiffs allege all three Defendants jointly challenged Plaintiffs' applications in bad faith, thereby tortuously interfering with Plaintiffs' prospective economic advantage and contract. (ECF No. 1 ¶¶ 2, 4, 115, 123-24, 127, 129, 134-35, 141, 146.) Further, Plaintiffs allege Defendants retained the same expert witness and the same counsel. (*Id.* ¶¶ 63, 102-03.) At this stage of the proceedings, these allegations are sufficient to support a claim that Excellency and the other Defendants acted in concert to commit an unlawful act, i.e. to violate antitrust law by opposing Plaintiffs' applications through sham litigations, and by tortuously interfering with Plaintiffs' prospective economic advantage and contract.

Therefore, Excellency's Motion to Dismiss Plaintiff's claim for civil conspiracy is **DENIED.**

## IV. DECISION—PLAINTIFFS' MOTION TO DISMISS

### A. Kennedy's Counterclaim for Malicious Use of Process

**\*8** Kennedy asserts a counterclaim for malicious use of process, alleging the "Complaint is motivated by malice" because Defendants merely sought to exercise their constitutional rights by challenging Plaintiffs' applications by way of "the constitutionally protected avenues of judicial and governmental redress." (ECF No. 12 ¶¶ 7-8.)

To assert a claim for malicious use of process, a plaintiff "must allege 'that the original suit (1) was instituted without reasonable or probable cause; (2) was motivated by malice; (3) terminated favorably to [the plaintiff]; and (4) resulted in a "special grievance" to the plaintiff.' " *Hassoun v. Cimmino*, 126 F. Supp. 353, 369 (D.N.J. 2000) (quoting *Giri v. Rutgers Cas. Ins. Co.*, 273 N.J. Super. 340, 347 (App. Div. 1988)). As to the first element—probable cause—the Supreme Court of New Jersey has stated "[p]robable cause is a matter of law to be determined by the court, and it is only submitted to the jury if the facts giving rise to probable cause are themselves in dispute." *LoBiondo v. Schwartz*, 199 N.J. 62, 93 (2009) (citation omitted). A court should apply a reasonable person standard to determine whether a plaintiff had an "honest belief" in the allegations asserted in the lawsuit. *Id.* (citations omitted).

2017 WL 2691417, 2017-1 Trade Cases P 80,038

Here, neither Kennedy nor Plaintiffs argue the facts giving rise to probable cause are in dispute, so based on the undisputed facts the Court has determined Plaintiffs properly alleged there was probable cause to assert their claims. Specifically, the Court has determined Plaintiffs have properly alleged claims for attempted monopolization, conspiracy to monopolize, tortious interference with prospective economic advantage, and tortious interference with contract. Whether Plaintiffs prosecute their claims successfully is a question that will bide discovery and later stages of litigation. But insofar as Plaintiffs have stated plausible claims for relief, the Court finds a reasonable party confronted with the facts of this lawsuit would have had an honest belief in the allegations asserted in the Complaint. *Id.* As the Court finds Plaintiffs' had probable cause to bring the lawsuit, Kennedy is unable to meet the first element of malicious use of process and it is not necessary to analyze the remaining elements.

Therefore, Plaintiffs' Motion to Dismiss Kennedy's counterclaim for malicious use of process is **GRANTED**.

### V. CONCLUSION

For the reasons set forth above, Excellency's Motion to Dismiss (ECF No. 13-1) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claim for monopolization pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2, and their claim for monopolization pursuant to the New Jersey Antitrust Act, N.J.S.A. § 56:9-1, *et seq.*, are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs' Motion to Dismiss (ECF No. 16) is **GRANTED**. Kennedy's Counterclaim for malicious use of process is **DISMISSED WITH PREJUDICE**. An appropriate Order will follow.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2691417, 2017-1 Trade Cases P 80,038

### Footnotes

1   On January 5, 2017, the parties appeared before the Court for a settlement conference and were directed to discuss a settlement. (ECF No. 23.) The parties did not reach a settlement.

2   The Court reviewed and considered the parties' letters to the Court regarding *Inserra Supermarkets, Inc. v. Stop & Shop Supermarket, Co., LLC*, No. 16-01697, 2017 WL 773876 (D.N.J. Feb. 28, 2017) and *Sumas v. Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, Docket No. A-3238-15T3, (N.J. Super. Ct. App. Div. April 12, 2017). (ECF Nos. 25-27.) The Court finds the cases instructive but not dispositive, particularly in light of the fact-intensive nature of an antitrust claim. *See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 318 (3d Cir. 2007).

3   Plaintiffs assert claims for monopolization, attempted monopolization, and conspiracy to monopolize pursuant to Section 2 of the Sherman Act in the First Count of the Complaint. (ECF No. 1 ¶¶ 114-25.) As the elements differ for each claim, the Court will analyze them separately even though they were pled together as a single count.

---

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.