## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CC FORD GROUP WEST, LLC, | |
|    Plaintiff/Counter-Defendant, | |
|     v. | |
| JENNIFER JOHNSON, CARRIE BICKING, BETH WEILER, PROJECT VELOCITY, INC., and JOHN DOES 1-10, | Case No. 3:22-cv-04143 |
|    Defendants/Counterclaimants. | |
| JENNIFER JOHNSON and PROJECT VELOCITY, INC., | |
|    Third-Party Plaintiffs, | |
|     v. | |
| JOHN STUDDIFORD, | |
|    Third-Party Defendant. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................. ii

PRELIMINARY STATEMENT.............................................................................................1

STATEMENT OF FACTS  ....................................................................................................2

PROCEDURAL HISTORY ................................................................................................. 3

ARGUMENT ........................................................................................................................9

    I.    STANDARD FOR GRANTING A MOTION FOR LEAVE TO FILE A SECOND
          AMENDED COMPLAINT ........................................................................................9

    II.    THE INSTANT MOTION PRESENTS NO UNDUE PREJUDICE, UNDUE DELAY,
           BAD FAITH OR DILATORY MOTIVE……………………………………………11

    III.   DEFENDANTS CANNOT DEMONSTRATE THAT THE SUPPLEMENTAL
           CLAIMS ARE FUTILE BASED ON NEWLY DISCOVERED EVIDENCE............12

        A.  RICO AND NJ RICO .......................................................................................13

        B.  NEW JERSEY COMPUTER RELATED OFFENSE ACT AND FEDERAL
            COMPUTER GRAUD AND ABUSE ACT CLAIMS ARE NOT FUTILE............15

        C.  THE FEDERAL DEFEND TRADE SECRETS ACT ("DTSA") CLAIMS ARE
            NOT FUTILE……………………………………………………………………16

        D.  THE TORTIOUS INTEREFERENCE CLAIMS AS TO JOHNSON, PVO, PEC
            AND MANNING ARE NOT FUTILE……………………………………………17

        E.  THE MISAPPROPRIATION AND FRAUD CLAIMS AGAINST ORNELAS-KUH
            ARE NOT FUTILE…………………………………………………...…………18

        F.  THE UNJUST ENRICHMENT CLAIMS ARE NOT FUTILE……………….....19

    IV.   THE INSTANT MOTION TO AMEND IS TIMELY FILED AND DOES NOT
           ALTER THE CASE SCHEDULE: AS SUCH RULE (16B) (4) IS NOT
           APPLICABLE………………………………………………………….....…19

CONCLUSION....................................................................................................................21

4890-6703-1507, v. 1

## <u>TABLE OF AUTHORITIES</u>

*Adams v. Gould, Inc.*,
    739 F.2d 858 (3d Cir. 1984)……………………………………..……………………11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ………...…….…………………………..……….………… 13, 15

*Avaya Inc., RP v. Telecon Labs, Inc.*,
    838 F.3d 354 (3d Cir. 2016)…………………………………….….…..………18
.

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)……………………………………………………..………….13

*Chancellor v. Pottsgrove Sch. Dist.*,
    501 F.Supp.2d 695 (E.D. Pa. 2007)……………………………………….….…..11

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
    252 F.3d 267 (3d Cir. 2001) ....................................................................................10

*Dole v. Arco Chem. Co.*,
    921 F.2d 484 (3d Cir. 1990)) ..............................................................................9, 10

*Fidelity Eatontown, LLC v. Excellency Enterprise, LLC*,
    No. 3:16-cv-3899-BRM-LHG, 2017 WL 2691417 (D.N.J. June 22,2017)……………..…...17

*Foman v. Davis*
    371 U.S. 178 (1962).................................................................................................10

*Glenside West Corp. v. Exxon Co., U.S.A.*,
    761 F.Supp. 1118 (D.N.J. 1991)...............................................................................9

*Hassoum v. Cimmino*,
    126 F. Supp. 2d 353 (D.N.J. 2000) .....................................................................9, 10

*In re Bristol-Myers Squibb Sec. Litig.*,
    228 F.R.D. 221 (D.N.J. 2005) ..............................................................................9, 10

*Long v. Wilson*
    423 N.J. Super. 259 (App. Div. 2011) ...................................................................10

*Lorenz v. CSX Corp.*,
    1 F.3d 1406 (3d Cir.1993)......................................................................................10

*Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173 (3d Cir. 2004) ....................................... 10

*New Skies Satellites, B.V. v. Home2US Comms., Inc.*,
    9 F. Supp. 3d 459 (D.N.J. 2014)……………..………………………………17

*Salinas v. U.S.*,
    522 U.S. 52 (1997)…………………….…………………………….. 14

*Shane v. Fauver*,
    213 F.3d 113 (3d Cir. 2000)……………….…………………………………11

*Sharp v. Kean Univ.*,
    153 F. Supp. 3d 669 (D.N.J. 2013)……………………………………13, 14

*Snyder v. Farnam Co., Inc.*,
    792 F. Supp. 2d 712 (D.N.J. 2011……………………...………………….……19

*State v. Ball*,
    141 N.J. 142 (1995)…………………………………………...……………………13

*Teva Pharm. USA. Inc. v. Snadhu*,
    291 F. Supp. 3d 659 (E.D. Pa. 2018)…………………….………………………15

*Trueposition, Inc. v. Allen Telecom, Inc.*,
    2002 WL 1558531 (D. Del. July 16, 2002)………………………...………....10

*U.S. v. Savage*,
    8 F.4th 102 (2023)………………………………………………..……………13

*Volpe v. Abacus Software Syst. Corp.*,
    No. 20-10108, 2021 WL 2451986 (D.N.J. June 16, 2021) ……………………...…15

**Statutes**

18 U.S.C. § 371……………………………………………………………………15

18 U.S.C. § 1341…………………………………………………………………15

18 U.S.C. § 1343…………………………………………………………………15

18 U.S.C. § 1832(a)………………………………………………………………15

18 U.S.C. § 1962(c)……………………………………………………………11, 13

18 U.S.C. § 1962(d)…………………………………………………………11, 13, 15

N.J.S.A. 2C:5-2……………………………………………………………………15

4890-6703-1507, v. 1

N.J.S.A. 2C:20-3(b); ..................................................................................................................15

N.J.S.A. 2C:20-4 ........................................................................................................................15

N.J.S.A. 2C:20-25 ......................................................................................................................15

N.J.S.A. 2C:41-2(c), .............................................................................................................11, 13

N.J.S.A. 2C:41-2(d) .........................................................................................................11,13, 15

**Rules**

FRCP 9 .................................................................................................................................13, 14

FRCP 12 ......................................................................................................................................12

FRCP 15 ...............................................................................................................................1, 9,  19

FRCP 16……………………………………………………………………….………2, 19, 20

## PRELIMINARY STATEMENT

Plaintiff CC Ford Group West, LLC ("CCFW" or "Plaintiff") hereby refiles its motion for leave to file a Second Amended Complaint ("SAC") pursuant to Rule 15 of the Federal Rules of Civil Procedure ("FRCP"). The Court terminated the earlier motion to allow the parties time to engage in private mediation that ultimately proved unsuccessful.  This motion differs slightly from the first based upon additional, powerful evidence discovered by Plaintiff since the previous filing.

The proposed SAC adds four (4) Defendants to the growing confederation of co-conspirators in this matter – Project Velocity Partners LLC ("PVP"), former CCFW Vice President Matthew Ornelas-Kuh ("Ornelas-Kuh"), former CCFW client PharmaEssentia USA Corp. ("PEC"), and PEC's former President of the Americas, Meredith Manning ("Manning").

Since filing the First Amended Complaint (the "FAC"), Plaintiff received  some discovery from the original named Defendants, Jennifer Johnson ("Johnson"), Carrie Bicking ("Bicking"), Beth Weiler ("Weiler") and Project Velocity, Inc. ("PVI") (collectively, "Defendants"), as well as from PEC and Manning, which has served not only to bolster Plaintiff's existing claims, but also disclosed strong and irrefutable evidence that PEC, Manning and Ornelas-Kuh were also involved in the conspiracy to steal confidential and proprietary information and trade secrets belonging to CCFW; breach and/or tortiously interfere with contractual agreements; undermine or terminate CCFW client relationships; divert profits; and commit other acts of sabotage against CCFW and criminality supporting federal and state RICO claims. Though they were not named in the FAC, PEC and Manning have long been involved in this action – Plaintiff  sent them litigation hold notices, served them with third-party subpoenas for depositions and documents and PEC and Manning even participated in mediation.

Accordingly, the Court can "freely give leave" to file the SAC without any concern of prejudice. PEC and Manning have had notice of this litigation for some time and, based upon their relationship with Defendants, probably since the lawsuit was originally filed. This litigation also does not come as a surprise to Ornelas-Kuh because CCFW's counsel wrote to him months ago after CCFW discovered that he stole almost $100,000 by fraudulently submitting personal (and lavish) expenses for reimbursement, claiming they were business-related, and he quickly retained the Gibbons law firm as defense counsel. In addition, the proposed amendments are based on new information obtained over the course of discovery that revealed new and compelling facts and provided substantial grounds to assert new claims. This has included the discovery of PVP, a shell company created for the purpose of hiding the connection between Ornelas-Kuh and PVI.

No depositions have yet been taken in this matter. Moreover, not long ago the Court allowed Johnson to incorporate her specious claims from a separate but related matter in the instant action and, therefore, assert Third-Party claims against Plaintiff's owner John Studdiford ("Studdiford"). That discovery also is not far along. Finally, the initial motion was timely filed within the time set forth in the Court's January 23, 2023 Scheduling Order, ECF No. 42, and similarly, the instant motion was timely filed in accordance with the Court's June 17, 2024 directive – thus the "good cause" standard for modifying a schedule under FRCP 16(b)(4) is inapplicable here.

Based on the foregoing, Plaintiff respectfully requests that the Court grant its motion for leave to file the SAC.

## STATEMENT OF FACTS

In the interest of brevity, the Court is respectfully referred to the proposed SAC. It sets forth in detail the egregious breaches of the duty of loyalty of the original defendants, their

breaches of various confidentiality and restrictive covenant agreements and their blatant theft of CCFW's confidential and proprietary information and trade secrets.  The new facts in the SAC document not only Ornelas-Kuh's stealing from CCFW, but a conspiracy among all defendants to commit, and the actual commission of, numerous acts of racketeering supporting federal and state RICO claims that will ultimately result in, among other things, a huge damage award, treble damages and counsel fees.

## **PROCEDURAL HISTORY**

The instant action was commenced by way of Complaint filed by Plaintiffs against Johnson, Bicking, Weiler and PVI in the Superior Court of New Jersey, Somerset County, on May 16, 2022, and removed to the United States District Court, District of New Jersey, on June 17, 2022. As set forth therein, Plaintiff sought damages for breach of contract *inter alia* from its former employee Johnson, who is alleged to have conspired to steal clients, divert profits and otherwise sabotage Plaintiff, all with the aid of her Co-Defendants. On September 20, 2022, Plaintiff filed the FAC. On September 29, 2022, pursuant to a Court Order, Johnson returned her Company-issued laptop to Plaintiff, which subsequently engaged a forensic expert to review the data. Upon Plaintiff's prompt review, it was discovered that Johnson had deleted CCFW confidential and proprietary files, and had viewed hundreds of confidential and proprietary documents on external devices in March and May 2022.

On January 23, 2023, the Court entered a Scheduling Order providing that fact discovery was to be completed by September 29, 2023, and that "[a]ny motion for leave to amend the pleadings or add parties must be timely made and in any event within 60 days of receipt of responses to the parties' initial written discovery requests." In mid-February 2023, the current

parties served discovery demands on each other, and Plaintiff also served third-party discovery demands on Plaintiff's former client PEC, and PEC's former President of the Americas Manning.

On April 4, 2023, Johnson and PVI filed objections and scant or no responses to most of Plaintiff's discovery demands. Specifically, Plaintiff's Interrogatory 4 requested information on work conducted for CCFW's former clients from January 1, 2022 and requested production of contracts and other documents reflecting same. Johnson and PVI's April 2023 response to this Interrogatory was primarily a general objection that Defendants disputed the validity of Johnson's non-compete agreement and then a statement that, subject to resolving objections, "the response to this Interrogatory will be found in Defendants' document production…" Interrogatory 17 requested information regarding conversations between Johnson and Manning regarding transferring PEC work which was being performed by CCFW to PVI or new PEC work given directly to PVI. After similar objections, Defendants unbelievably responded that Johnson "could not recall the conversations" and that they "may be evidenced by document search and production but are not otherwise specifically recalled by Defendants." The only document Defendants produced in April 2023 was PVI's certificate of incorporation.

CCFW, therefore, sent a deficiency letter to defense counsel on April 25, 2023, to which Defendants did not respond until May 22, 2023, but still only provided limited additional information.  The parties held two meet-and-confer conferences on May 5 and May 11 of 2023 and negotiated search terms for electronic discovery. Plaintiff responded to Defendants' May 22 letter on June 6, 2023, with a detailed response to Defendants' continuing objections and provided modifications to some of Plaintiff's discovery requests.

On June 6, 2023, the parties also participated in a case management conference with Magistrate Judge Arpert, during which Plaintiff indicated its intention to file a SAC to add

Manning and PEC as additional defendants and to add additional claims. Plaintiff made its first production on June 20, 2023, producing six (6) years' worth of QuickBooks files for CCFW. On June 30, 2023, after an additional meet-and-confer conference with Defendants' counsel, defense counsel sent Plaintiff's counsel an email confirming electronic search terms and indicating that, while both sides had agreed to an initial production of emails by July 15, based on Defendants' team's vacation schedules, Defendants would need to change the date to July 21. Plaintiff consented.

On or about July 13, 2023, Defendants produced only three pages of a financial statement related to PVI.  Even as to that document, it was incomplete. On July 20, 2023, Plaintiff requested a short extension to July 25 for both parties to make their first production of emails and Defendants agreed.  Until July 25, 2023, Johnson and PVI had produced only a handful of documents and even they were incomplete.

As to PEC and Manning, CCFW sent document preservation letters to them on or about September 22, 2022, and as noted above, served subpoenas on them on February 10, 2023 to produce documents and appear for their depositions. The subpoenas scheduled the depositions, as place holders, for March 15, 2023, but were adjourned pending document production. Manning and PEC agreed to produce a subset of the requested documents on a rolling basis.

PEC and Manning began producing documents on a rolling basis on April 18, 2023, including invoices, together with supporting documents from PVI and associated payment authorizations by PEC, over dates ranging from approximately April 2022 to March 2023. On May 2, 2023, Manning and PEC produced a March 29, 2022 Master Services Agreement ("MSA") between PEC and PVI, and a related Statement of Work ("SOW"). On May 4, 2023, Manning and PEC produced additional SOWs relating to the March 29, 2022 MSA. On May 19, 2023, Manning

and PEC produced additional documents, including emails relating to PEC budgets and forecasts for PVI work. On July 12, 2023, Manning and PEC produced another SOW.

By joint letter, dated on or about July 26, 2023, Plaintiff notified the Court that Defendants were improperly limiting and, in fact, placing a roadblock on discovery.  Plaintiff notified the Court that Johnson and PVI were refusing to produce any documents that related to any time period after July 2022, when Johnson's Consulting Agreement expired, even though what work she performed after that date, and what she and PVI were paid after that date, were highly relevant both to show the work stolen from CCFW as well as relating to its damages.  Moreover, Plaintiff clearly had also asserted other claims (such as tortious interference and unfair competition) to which those later documents were highly relevant.

On July 27, 2023, months before the close of fact discovery and well prior to the cutoff date to add parties to this litigation, Plaintiff filed its initial motion for leave to file the SAC, seeking *inter alia* to add PEC and Manning to the litigation. Thus, despite receiving virtually no paper discovery from Defendants until July 25, 2023, just two days later Plaintiffs filed this motion to for leave to file the SAC.  Accordingly, Plaintiff acted with due diligence to pursue these additional claims.  Considering that very limited discovery has occurred so far—with the Parties just beginning to exchange paper discovery, having recently worked out search terms for electronic discovery and no depositions having yet been taken—there will be no hardship by permitting Plaintiff to file the SAC.

As they did in opposition to Plaintiff's initial motion to amend filed in July 2023, Defendants may try to fault Plaintiff for delaying that motion to amend to add Manning and PEC claiming Plaintiff should have done so when it first raised the issue in 2022. Such argument has no merit. Had Plaintiff moved to do so at that time, surely Defendants would have claimed there

-6-

was no such evidence and would have threatened Plaintiff with a Rule 11 violation (which they did anyway after Plaintiff filed the initial motion to amend, despite such a motion itself being frivolous).  While Plaintiff believed Manning and PEC may have been involved in assisting Defendants to breach their agreements when it amended the complaint in September 2022, it did not have sufficient proof at that time.  That documentation was only obtained thereafter primarily from PEC's and Manning's responses to third-party subpoenas.

Moreover, the statutory claims CCFW asserted, involving Johnson's destruction of CCFW documents and her misappropriation of CCFW's confidential information and trade secrets, had only recently discovered by CCFW analyzing Johnson's company-issued laptop (returned after Plaintiff filed the FAC and only after Court order). As opposed to delay, CCFW acted diligently to discover the claims asserted in the July 2023 motion for leave to amend.

As noted *supra*, on August 4, 2023, and August 9, 2023, Plaintiff received letters from counsel for Manning and PEC and from counsel for Defendants, respectively, indicating they intended to seek Rule 11 sanctions if the proposed SAC were filed. CCFW vehemently disputed that there was any basis for such letters and notes that no formal Rule 11 motion was ever filed by any of the Defendants.

In a December 6, 2023 joint letter to Magistrate Judge Arpert presenting various discovery disputes, Plaintiff informed the Court that it had recently learned that PVI hired a former CCFW employee, Matthew Ornelas-Kuh, who had a non-compete agreement. CCFW sent to Defendants a proposed Third Amended Complaint with those additional facts to determine if they would consent to this supplemental pleading. No new claims were added; just additional facts relating to a tortious interference claim already pled in the Complaint.  Defendants would not agree to the inclusion of these supplementary facts and, considering that Plaintiff already had a motion pending

to file a proposed Second Amended Complaint, Plaintiffs asked the Court's guidance as to how to best present the issue.

In the December 6 joint letter, the Parties informed Magistrate Judge Arpert that (1) Plaintiff and all Defendants agreed to participate in private mediation before the Hon. James DeLuca, J.S.C. (Ret.)  which was set to take place on December 14, 2023, (2) Plaintiff then sought to add to the proposed Second Amended Complaint, PEC and Manning, but they also agreed to participate in the mediation, and (3) it was the Parties' understanding that Manning and others at PEC were no longer employed there and that, as a result, counsel for PEC and Manning informed Plaintiff and Judge DeLuca that the mediation would have to be put off for about a month, so that PEC could determine which executives with authority would participate.

On December 11, 2023, "for reasons of judicial economy and to conserve the resources of the parties," the Court ordered a stay of the proceedings and terminated the initial motion to file a SAC, as the Parties (together with Manning and PEC) were then in the process of scheduling a mediation. The Order also provided that, rather than potentially reinstate the motion to file the SAC if mediation proved unsuccessful, "Plaintiff may re-file its motion with its updated proposed pleading" upon the lifting of the stay.

Thereafter, Plaintiff learned of additional facts that implicated at least one other party that needed to be brought into the case as a defendant.  In a February 20, 2024 joint status letter to the Magistrate Judge Arpert regarding delays in mediation, Plaintiff reiterated to the Court that it had reason to believe Johnson hired Ornelas-Kuh despite her knowledge of his agreements with CCFW and while the parties were in the midst of this suit, and that the information now supported adding Ornelas-Kuh as a defendant for his breaches of his non-competition and confidentiality agreements with Plaintiff, theft of CCFW and its clients' confidential documents and trade secrets, and

-8-

damaging CCFW through fraudulently passing onto CCFW and one of its major clients the cost of extravagant personal expenses.

Most recently, Plaintiff learned that in July 2023, Johnson and/or Ornelas-Kuh started a new limited liability company, Project Velocity Partners LLC ("PVP"), which is registered in Delaware. Plaintiff also learned that Ornelas-Kuh, in his marketing communications as part of the PVI team, uses an email address of mornelas-Kuh@projectvelocitypartners.com, likely to hide from public view his and PVP's association with Johnson and PVI.[1] The Parties, Manning and PEC ultimately were unable to reach settlement at mediation, and on June 17, 2024, the Court gave Plaintiff leave to file the instant motion to amend.

## **ARGUMENT**

### I.     **The Standard for Granting a Motion for Leave to File a Second Amended Complaint.**

"It has been the accepted and encouraged policy that courts should liberally grant leave to amend pleadings, when justice so requires." *In re Bristol-Myers Squibb Sec. Litig.*, 228 F.R.D. 221, 228 (D.N.J. 2005) (citing FRCP 15(a)); *see also Dole v. Arco Chem. Co.*, 921 F.2d 484 (3d Cir. 1990). Similar to FRCP 15(a), motions to file supplemental pleadings are granted with liberality which "serves judicial economy, avoids multiplicity of litigation, and promotes 'as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed.'" *Hassoum v. Cimmino*, 126 F. Supp. 2d 353, 360 (D.N.J. 2000) (quoting *Glenside West Corp. v. Exxon Co., U.S.A.*, 761 F.Supp. 1118, 1134 (D.N.J. 1991) (citations omitted)). "Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason

---

[1] As we assert that PVP is not a separate entity, but is in fact a shadow company formed only to hide Ornelas-Kuh's association with PVI, hereinafter "PVI" shall refer to PVI and PVP collectively.

appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Therefore, courts are encouraged to use a "liberal approach" in considering motions to amend pleadings, as "[t]his approach ensures that a particular claim will be decided on the merits rather than on technicalities." *Dole*, *supra*, 921 F.2d at 487.

Courts have held that "absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless denial can be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (quoting *Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173 (3d Cir. 1994)) (internal quotations and alterations omitted); *see also Hassoum*, *supra*, 126 F. Supp. 2d at 360 (the same grounds for denial are applicable to a motion to supplement pleadings). But "merely claiming prejudice" is insufficient to defeat an application for leave to amend; rather, the nonmoving party must demonstrate a "serious impairment of [its] ability to present its case" such as lack of fair notice or opportunity to engage in discovery or motion practice. *Bristol Myers*, *supra*, 228 F.R.D. at 228. Delay is also insufficient grounds for denying a motion to amend where the movant had no earlier opportunity to make the proposed amendments. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir.1993).

A finding of bad faith turns "not [on] whether the original complaint was filed in bad faith or whether conduct outside the motion to amend amounts to bad faith," but on whether the motion to amend *itself* is being filed in bad faith, *Trueposition, Inc. v. Allen Telecom, Inc.*, 2002 WL 1558531, at *2 (D. Del. July 16, 2002), which is the same as having "dilatory motive." *Foman*, *supra*, 371 U.S. at 182. And an amendment is futile if the amended pleading would not cure prior

-10-

deficiencies or survive a motion to dismiss for failure to state a claim. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Nonetheless, the courts are still bound to apply a liberal standard in considering a motion to amend, *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984), and it falls to the non-moving party to prove that any of the above grounds for denial are present as to that particular case. *Chancellor v. Pottsgrove Sch. Dist.*, 501 F.Supp.2d 695, 700 (E.D. Pa. 2007).  As set forth below, no such grounds exist to deny Plaintiff the right to pursue the parties and claims in the SAC.

## II.     The Instant Motion Presents No Undue Prejudice, Undue Delay, Bad Faith or Dilatory Motive.

In this case, Defendants cannot claim either undue prejudice or undue delay. The proposed SAC adds factual allegations and claims, and Manning, PEC and Ornelas-Kuh as Defendants; asserts separate causes of action for RICO Enterprise, 18 U.S.C. § 1962(c), N.J.S.A. 2C:41-2(c), and RICO Conspiracy, 18 U.S.C. § 1962(d), N.J.S.A. 2C:41-2(d); adds new causes of action for misappropriation and fraud, and unjust enrichment; and otherwise amends and/or supplements previously existing counts. These changes arise out of new information and/or documents obtained over the course of the limited discovery produced by Defendants since the filing of the FAC, which includes documents produced pursuant to the third-party subpoenas served upon Manning and PEC. And it was those documents—an MSA, SOWs, invoices and purchase orders, budgeting plans, and emails exchanged between the named and proposed Defendants—that provide significant, compelling evidence supporting CCFW's claims against the proposed new parties, Manning, PEC and Ornelas-Kuh.

These amendments could not have been pursued earlier, before Defendants finally turned over their sparse production to date.  It was only once Plaintiff reviewed that production and the documents produced by PEC and Manning that Plaintiff confirmed the need and substantial factual

support to warrant amending the pleadings. In addition, the Court stayed proceedings in the matter on December 11, 2023 while the parties, Manning and PEC were pursuing mediation, and permitted Plaintiff to re-file its motion to amend on June 17, 2024. Furthermore, prior to entering the stay of proceedings, Johnson was permitted to add third-party claims against CCFW's owner John Studdiford. Manning, PEC and Ornelas-Kuh are similarly familiar with the matter, and Manning and PEC have already engaged in the discovery process in responding to Plaintiff's third-party subpoenas and participating in the mediation; and Manning, PEC and Ornelas-Kuh received litigation hold notices when this law firm was first substituted into this case. Ornelas-Kuh is also a current PVI employee and was fired from CCFW as a consequence of his fraudulently billing CCFW and its clients for his personal expenses—the basis for adding the new count for misappropriation and fraud. Therefore, Manning, PEC and Ornelas-Kuh have not only been aware of this lawsuit, likely since the original Complaint was first filed, but PEC and Manning have been active participants in the lawsuit.

Thus, there is no undue prejudice to the original or new Defendants, nor any undue delay in moving to amend the complaint. Nor can Defendants demonstrate any bad faith or dilatory motive in making these amendments, as they are well aware of the history of this case and the discovery exchanged so far.

### III.  Defendants Cannot Demonstrate that the Supplemental Claims are Futile based on Newly Discovered Evidence.

Finally, Defendants have no basis to argue that any of the proposed changes or new claims are futile, as many of the causes of action simply include supplemental facts gathered from newly obtained evidence, the RICO and fraud claims are pled with specificity, and all of the claims in the SAC are adequately pled such that they would survive a motion pursuant to FRCP 12(b)(6). For a claim to be cognizable, it must "state a claim to relief that is plausible on its face," meaning the

pleading contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). In addition, all fraud claims must be pled with specificity pursuant to the heightened pleading standard set forth in Rule 9(b).  Here, the proposed SAC sets forth facts "in spades" confirming Defendants, PEC, Manning and Ornelas-Kuh have liability for the misconduct alleged.

### A.  RICO and NJ RICO

The proposed SAC pleads facts sufficient to sustain claims under state and federal Racketeer Influenced and Corrupt Organizations Acts ("NJ RICO" and "RICO," respectively), for conducting a RICO Enterprise, 18 U.S.C. § 1962(c); N.J.S.A. 2C:41-2(c), and engaging in a RICO Conspiracy, 18 U.S.C. § 1962(d); N.J.S.A. 2C:41-2(d). Specifically, NJ RICO Enterprise requires a showing of "(1) the existence of an enterprise; (2) that the enterprise engaged in activities that affected trade or commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that the defendant participated in the conduct of the affairs of the enterprise; (5) that the defendant participated through a pattern of racketeering activity; and (6) that the plaintiff was injured as a result of the conspiracy." *Sharp v. Kean Univ.*, 153 F. Supp. 3d 669, 674 (D.N.J. 2013) (quoting N.J.S.A. 2C:41-2(c)) (internal quotations omitted). The elements of NJ RICO Enterprise are inclusive of the elements of RICO Enterprise. *Id.* (federal RICO requires showing of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity).

And in this case, both RICO and NJ RICO conspiracy claims require "only proof of an agreement to assist the RICO enterprise in its criminal objectives." *U.S. v. Savage*, 8 F.4th 102, 136 (2023); *State v. Ball*, 141 N.J. 142, 177 (1995) (NJ RICO Conspiracy requires agreement to participate in enterprise "with the knowledge and intent that someone associated with the

-13-

enterprise will commit at least two predicate acts."); *see also Salinas v. U.S.*, 522 U.S. 52, 64 (1997) ("If [RICO] conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.").

The proposed SAC contains myriad factual allegations sufficient to sustain RICO claims against all Defendants, as well as PVP, Ornelas-Kuh, Manning and PEC. It alleges in painstaking detail how Johnson misappropriated CCFW's confidential and proprietary information, both on her own, and with the aid of Bicking, Weiler and Ornelas-Kuh. It alleges how Defendants used CCFW's computer systems to obtain, steal and/or delete Plaintiff's confidential information, without authorization or in excess of their authorization. Johnson also worked with Manning, Bicking and Weiler to utilize CCFW's resources to service PEC, while diverting the profits for said services to her new company PVI. This was accomplished by executing a MSA between PVI and PEC, allowing PVI to be compensated for services that were in fact rendered by CCFW. In addition, even after being informed of fraudulent conspiracy, PEC continued to receive services from the other Defendants. These facts in the SAC are drawn from specific documents, including email communications and agreements, which provide specific dates, contexts and participants for all of these alleged offenses – and thereby satisfy the heightened pleading requirements for the underlying fraud claims, pursuant to FRCP 9(b).

All of the originally-named, and proposed, Defendants, worked in concert and with the shared purpose of funding and eventually launching the new enterprise, PVI. Therefore, both PVI and/or the association-in-fact of individuals and entities constitute a RICO "enterprise." *Sharp*, *supra*, 153 F. Supp. 3d at 674-75 (enterprise is an ongoing organization of various associates functioning as a continuing unit). The SAC further details the individuals' and entities' schemes to steal Plaintiff's trade secrets and divert its assets *inter alia*, which amount to various predicate

-14-

criminal acts, including but not limited to theft of trade secrets, information and data, N.J.S.A.
2C:20-3(b); 18 U.S.C. § 1832(a), computer crimes, N.J.S.A. 2C:20-25, theft by deception, N.J.S.A.
2C:20-4, mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and conspiring to commit
any of the aforementioned offenses, 18 U.S.C. § 371; N.J.S.A. 2C:5-2. Based on this same
evidence, the original and newly-proposed Defendants undoubtedly agreed or conspired with each
other to conduct or participate in a RICO Enterprise, in violation of RICO, 18 U.S.C. § 1962(d),
and NJ RICO, N.J.S.A. 2C:41-2(d). But that is for another day. For purposes of this motion, all
Plaintiff must demonstrate under *Iqbal* there is a reasonable inference that Defendants are liable
for the alleged misconduct. As such, when construing all facts and reasonable inferences in a light
most favorable to Plaintiff, this Court must permit the filing of the RICO and other claims as
sufficiently pled, and cannot find that they are futile.

### B. New Jersey Computer Related Offense Act and Federal Computer Fraud and Abuse Act Claims are Not Futile.

Similarly, Plaintiff has adequately pled causes of action for computer-related offenses. "To
state a claim under the federal CFAA claim, a plaintiff must show that defendant: (1) accessed a
'protected computer,' (2) without authorization or exceeded authorized access; (3) knowingly and
with an intent to defraud; (4) obtained something of value; and (5) caused damage or loss to the
plaintiff in excess of $5,000 in a one-year period." *Teva Pharm. USA. Inc. v. Snadhu*, 291 F. Supp.
3d 659, 668 (E.D. Pa. 2018). Further, "direct costs of responding to a violation or assessing the
damage done are recoverable even without an interruption in service." *Id.* at 674. And permanent
deletion of files from a laptop computer may constitute damage under the CFAA. *See Volpe v.
Abacus Software Syst. Corp.*, No. 20-10108, 2021 WL 2451986, at *7 (D.N.J. June 16, 2021).

As set forth in the SAC, numerous documents obtained in discovery disclose how
Defendants and Ornelas-Kuh accessed CFFW's confidential and proprietary information, either

without authorization or in excess of same, and used the information to help launch PVI. Johnson, in addition to stealing the information herself, also used Bicking, Weiler and Ornelas-Kuh to email her confidential and proprietary documents, and CCFW's trade secrets. The stolen information and data were stored in and taken from CCFW's computer systems, including the laptop it had issued to Johnson while it still employed her. Forensic analysis also determined that Johnson had deleted over 1,000 CCFW documents from the laptop without authority. Moreover, that Johnson, Bicking and Weiler had access to company information while employed at CCFW has no bearing on whether they acted beyond the scope of their authorization in accessing, transferring and deleting certain information.

As set forth in the SAC, Plaintiff incurred significant costs in investigating the unauthorized access and misappropriation of its data, and deletion of same, and, therefore, anticipates damages to significantly exceed the threshold set forth in 18 U.S.C. § 1030(a)(4). In considering futility, these allegations must also be accepted as true and construed in a light most favorable to Plaintiff, in which case they are clearly and sufficiently pled, and would certainly withstand a motion to dismiss.

### C.  The Federal Defend Trade Secrets Act ("DTSA") Claims are Not Futile

The SAC also alleges facts sufficient to establish a claim under the DTSA. Specifically, the SAC details how Johnson, Bicking, Weiler and Ornelas-Kuh obtained and misappropriated CCFW's confidential information and trade secrets to help launch PVI, and to steal CCFW's clients – including PEC – for PVI.

As with the other counts, in accepting these allegations as true and construed in a light most favorable to Plaintiff, the DTSA claim is sufficiently detailed so as to withstand a motion to dismiss and surely cannot be considered futile.

**D.  The Tortious Interference Claims as to Johnson, PVI, PEC and Manning are not Futile.**

The SAC also alleges that Johnson and PVI tortiously interfered with Plaintiff's agreements with other parties, which requires showing "(1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference." *Fidelity Eatontown, LLC v. Excellency Enterprise, LLC*, No. 3:16-cv-3899-BRM-LHG, 2017 WL 2691417, at *6 (D.N.J. June 22, 2017). Specifically, it alleges that Johnson and PVI induced Bicking, Weiler and Ornelas-Kuh to breach their duty of undivided loyalty to Plaintiff by *inter alia* misappropriating its confidential information and/or trade secrets, using its resources to service PEC while diverting the profits from said work to PVI, and by later joining PVI as employees and servicing Plaintiff's former clients in violation of their agreements. The SAC also directly quotes the employment agreements at issue in this case and, as such, provides sufficient detail in support of the tortious interference claims so as to withstand a potential motion to dismiss.

Similarly, the SAC pleads tortious interference with contract and prospective economic advantage against PEC and Manning, which requires showing the elements of interference with a contract as detailed above, and/or interference with prospective economic advantage, meaning "(1) a reasonable expectation of economic advantage from a prospective contractual or economic relationship; (2) the defendant intentionally and maliciously interfered with the relationship; (3) the interference caused the loss of the expected advantage; and (4) actual damages resulted." *New Skies Satellites, B.V. v. Home2US Comms., Inc.*, 9 F. Supp. 3d 459, 472 (D.N.J. 2014). As to this court, the SAC alleges that Manning and/or PEC advised Johnson and helped facilitate her efforts to steal information and trade secrets from CCFW; to use Bicking and Weiler to work on PEC projects while still employed by CCFW; to divert payments for said work away from CCFW and

-17-

toward PVI; and to later hire Bicking, Weiler and Ornelas-Kuh in violation of their agreements with Plaintiff *inter alia.* Again, these allegations are pled in great detail and are more than adequate to support claim of tortious interference with prospective economic advantage such as would withstand a motion to dismiss.

### E.   The Misappropriation and Fraud Claims against Ornelas-Kuh are not Futile.

The SAC also adds claims for Misappropriation and Fraud as to Ornelas-Kuh, based on his charging personal expenses to CCFW and/or its clients while falsely claiming they are legitimate business expenses. A claim of fraud requires a showing of "(1) a material misrepresentation by the defendant of a presently existing fact or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intent that the plaintiff rely on the statement; (4) reasonable reliance by the plaintiff; (5) and resulting damages to the plaintiff." *Avaya Inc., RP v. Telecon Labs, Inc.*, 838 F.3d 354, 388 (3d Cir. 2016) (New Jersey common law fraud). And again, under FRCP 9(b), fraud must be led with particularity.

In this case, the SAC sets forth that following an internal audit in early 2023, Plaintiff discovered approximately $85,000 worth of fraudulent charges by Ornelas-Kuh, that were passed on to CCFW client Janssen.  While these charges were coded as pass-through expenses for Janssen projects, they were in fact personal expenses for Ornelas-Kuh, including (1) extravagant meals for himself and at times others; (2) throwing himself a birthday party; (3) personal items; (4) gifts for subordinates; (5) gift cards for personal use; and (6) plane/train tickets for personal trips. The SAC contains specific dates and details as to the fraudulent charges sufficient to meet the heightened pleading standards of FRCP 9(b), and as would undoubtedly withstand a motion to dismiss.

-18-

**F.  The Unjust Enrichment Claims are not Futile.**

Finally, the SAC pleads unjust enrichment against all Defendants, which requires a showing "that (1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Snyder v. Farnam Co., Inc.*, 792 F. Supp. 2d 712, 723-24 (D.N.J. 2011). As detailed in the SAC, Defendants received benefits from Plaintiff including, *inter alia*, income and COBRA payments, access to CCFW's documents including client and vendor lists and proprietary pricing and marketing information, and thus were unjustly enriched. Allowing Defendants to retain these benefits without paying would clearly be unjust.

As this claim encompasses the entire history of the parties set forth throughout the Complaint, including the fraudulent theft and misappropriation of Plaintiff's trade secrets and confidential information, the interference and breach of its contractual and economic relationships, and myriad acts of sabotage committed by Defendants, Manning, PEC and Ornelas-Kuh, *inter alia*, there are clearly sufficient details to support a claim of unjust enrichment as would withstand a motion to dismiss. The unjust enrichment claim is not futile.

**IV.  The Instant Motion to Amend is Timely Filed and Does Not Alter the Case Schedule; as Such Rule 16(b)(4) is Not Applicable.**

Rule 16(b)(4) requires a finding of "good cause" before the court grants leave to file an amended pleading made after the expiration of a time set by the Court. Because neither the first motion for leave to file an amended complaint filed in July 2023, nor the current motion, require modification of a scheduling order, Rule 16(b)(4) is inapplicable. Even if it were applicable, Plaintiff would easily establish good cause. Here, all Plaintiff must show is that it satisfied Rule 15(a) and therefore the interests of justice would be served by permitting the amendment, which it undeniably will as set forth in Point III, *supra*.

First, Plaintiff filed its initial motion to amend the pleadings well prior to the expiration of the time to amend set forth by this Court in the January 2023 Scheduling Order ("[a]ny motion for leave to amend the pleadings or add parties must be timely made and in any event within 60 days of receipt of responses to the parties' initial written discovery requests." [ECF 42].   Specifically, at the time the first motion to amend was filed on July 27, 2023, the deadline in the January 23, 2023 Scheduling Order had not passed.

Plaintiff filed the initial motion to amend just two days after getting any meaningful discovery from Defendants. Moreover, the certificate of incorporation produced in April, 2023, the *only* information provided at that time, cannot be considered to have started the 60-day period contemplated in paragraph 1.1. of the January 23, 2023 Scheduling Order. The next production, of just three pages of limited financial information, was not made until July 13, 2023, and it is undisputed that Plaintiff first moved to amend just two weeks later, well before the deadline in the Scheduling Order.

Further leaving no room for doubt, the instant motion for leave to file a SAC is timely filed in accordance with the Court's June 17, 2024 directive permitting Plaintiff to do so. In other words, this motion does not modify the schedule but was included in the schedule by the Court. Therefore, Rule 16(b)(4) is inapplicable to this motion.

**<u>CONCLUSION</u>**

Based on the foregoing, Plaintiff respectfully requests that the Court grant this motion for leave to file a SAC.

Date: July 26, 2024                              MANDELBAUM BARRETT, P.C.
                                                 *Attorneys for Plaintiff/Counter-Defendant and*
                                                 *Third-Party Defendant*


                                                  s/Steven I. Adler
                                                 Steven I. Adler, Esq.

                                                 3 Becker Farm Road, Suite 105
                                                 Roseland, New Jersey 07068
                                                 T: (973) 736-4600
                                                 F: (973) 736-4670
                                                 sadler@mblawfirm.com

-21-