Steven I. Adler
Todd Nosher
**MANDELBAUM BARRETT PC**
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
sadler@mblawfirm.com
tnosher@mblawfirm.com
Phone: 973-736-4600
Fax: 973-325-7467

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CC FORD GROUP WEST, LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>JENNIFER JOHNSON, CARRIE BICKING, )<br>BETH WEILER, PROJECT VELOCITY, INC., )<br>PROJECT VELOCITY PARTNERS, LLC, )<br>MEREDITH MANNING, PHARMAESSENTIA )<br>USA CORP., MATTHEW ORNELAS-KUH, and )<br>JOHN DOES 1-10, )<br><br>Defendants. )<br> ) | CASE NO. 3:22-cv-04143<br><br>*DOCUMENT ELECTRONICALLY FILED VIA CM/ECF*<br><br>**L. CIV. R. 78.1 MOTION DAY MAY 5, 2025** |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DEEM DEFENDANT SERVED UNDER FED. R. CIV. P. 4(e) AND (e) OR TO EXTEND TIME TO SERVE DEFENDANT AND APPROVE <u>SERVICE BY ALTERNATE MEANS</u>

1

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND FACTUAL BACKROUND.................................................................. 1

RELEVANT PROCEDURAL HISTORY ............................................................................. 4

LEGAL AUTHORITY ...................................................................................................... 4

    A.   Service under Fed. R. Civ. P. 4(e) .......................................................... 4

    B.   Refusal to Waive Service ......................................................................... 5

    C.   Good Cause for Extensions to Serve ....................................................... 5

    D.   Discretionary Extensions ......................................................................... 6

    E.   Service by Alternate Means ...................................................................... 6

ARGUMENT .................................................................................................................... 7

    A.   Plaintiff Served Defendant ....................................................................... 7

    B.   Good Cause Supports Plaintiff's Request ................................................ 7

        1. Plaintiff has made reasonable efforts to serve Defendant................... 8

        2. Defendant will suffer no prejudice ..................................................... 12

        3. A Post-date Motion is inconsequential ............................................... 15

    C.   A Discretionary Extension is Also Appropriate ...................................... 16

        1. Defendant received notice and there is no prejudice. .......................... 16

        2. Defendant's conduct supports a discretionary extension..................... 16

    D.   Alternate Service is Appropriate as Needed ............................................ 18

    E.   Costs and Fees are Warranted.................................................................. 19

CONCLUSION................................................................................................................. 20

4920-6448-4148, v. 2

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beautyman v. Laurent*,
   829 F. App'x 581 (3d Cir. 2020) ............................................................5

*Boley v. Kaymark*,
   123 F.3d 756 (3d Cir. 1997).....................................................................5

*Celgene Corp. v. Blanche L*td.,
   No. CV16501SDWLDW, 2017 WL 1282200 (D.N.J. Mar. 10, 2017) ...................6

*Chiang v. U.S. Small Bus. Admin*.,
   331 F. App'x 113 (3d Cir. 2009)...........................................................6, 16

*Chiang v. U.S. Small Bus. Admin*.,
   331 Fed. Appx. 113 (3d Cir. 2009)...........................................................15

*Cunningham v. New Jersey*,
   230 F.R.D. 391 (D.N.J. 2005)....................................................................15

*EOI Corp. v. Med. Mktg. Ltd*.,
   172 F.R.D. 133 (D.N.J.1997)......................................................................14

*Est. of King v. City of Jersey City*,
   2018 WL 3201793 (D.N.J. June 29, 2018) ................................................10

*First Response v. New Jersey*,
   No. CV 21-1458, 2023 WL 3043633 (D.N.J. Apr. 21, 2023) ...............5, 8, 16

*Gonzalez v. Thomas Built Buses, Inc*.,
   268 F.R.D. 521 (M.D.Pa. 2010)................................................................15

*Green v. Humphrey Elevator & Truck Co*.,
   816 F.2d 877 (3d Cir. 1987).....................................................................5, 7

*Guardian Life Ins. Co. of Am. v. Est. of Walter Matesic*,
   No. 2:16-00643 (WJM), 2016 WL 3763340 (D.N.J. July 14, 2016)..................18

*In the Estate of Virginia F. Kuh Trust*,
   Case No. 516,760 (Probate Court No. 3, Harris County, Texas, June 6, 2023) ...............16

*John Wiley & Sons, Inc. v. Rivadeneyra*,
   No. CIV. 13-1085 FSH JBC, 2013 WL 6816369 (D.N.J. Dec. 20, 2013)................14

4920-6448-4148, v. 2

*Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*,
    No. CV 16-7720 (KM), 2017 WL 4074284 (D.N.J. Sept. 14, 2017) ...............................10, 15

*Mathies v. Silver*,
    450 Fed. Appx. 219 (3d Cir. 2011).......................................................................................6, 16

*Mazure v. Remington Arms Co., Inc.*,
    No. 2:22-CV-02854 (WJM), 2022 WL 2439196 (D.N.J. July 5, 2022)..................................10

*Mercedes-Benz Fin. Servs. USA LLC v. Chandler*,
    No. 19-CV-15716-ES-ESK, 2020 WL 3892360 (D.N.J. July 2, 2020)...................................18

*Salaam v. Merlin*,
    No. CIV 08-1248 (JBS), 2009 WL 2230925 (D.N.J. July 22, 2009) ..........................6, 11, 14

*U.S. Secs. and Exchange Commission v. Vuuzle Media Corp.*,
    No. 21-1226, 2021 WL 1731947 (D.N.J. May 3, 2021).......................................................6, 18

*W. Funding, Inc. v. S. Shore Towing, Inc.*,
    2021 WL 1399798 (D.N.J. Apr. 14, 2021) .............................................................................19

*Witasick v. Estes*,
    No. CIV.A. 11-3895-NLH, 2012 WL 3075988 (D.N.J. July 30, 2012) ................................14

*Yannul v. Universal Dentistry, P.C. et al.*,
    No. CV 24-10792, 2025 WL 900474 (D.N.J. Mar. 24, 2025)...................................5, 9, 10, 15

**Other Authorities**

Fed. R. Civ. P 4(d)(1)..................................................................................................................10

Fed. R. Civ. P. 4(d)(2)(B) .............................................................................................................3

Fed. R. Civ. P. 4(e) .......................................................................................................................4

Fed. R. Civ. P. 4(e)2(B).................................................................................................................7

Fed. R. Civ. P. 4(e) and (m).........................................................................................................1

Fed. R. Civ. P. 4(f)(3) ..............................................................................................................6, 18

Fed. R. Civ. P. 4(m)..............................................................................................................4, 5, 7

iv

Plaintiff CC Ford Group West, LLC ("Plaintiff," "CC Ford" or "CCFW"), by and through its undersigned counsel, Mandelbaum Barrett P.C., respectfully submits this brief in support of Plaintiff's motion ("Motion") to deem Defendant Matthew Ornelas-Kuh ("Defendant") served under Fed. R. Civ. P. 4(e) and (m). Alternatively, Plaintiff respectfully requests an extension of time to serve Defendant by alternate means. Lastly, Plaintiff seeks an award of fees and costs associated with this Motion after Defendant refused to waive service under Rule 4(d).

## INTRODUCTION AND FACTUAL BACKROUND

There are eight named Defendants in this Action. All have been served *without issue*—save one defendant—Matthew Ornelas-Kuh, who has opted to thumb his nose at Plaintiff and this Court by evading service and rotating <u>attorneys who repeatedly refuse to accept service of papers in this Action on his behalf</u>. Even after Plaintiff eventually served Defendant, he continues to dispute his service. We believe this Court should rule otherwise.

Plaintiff has now spent significant time and resources attempting to locate and serve Defendant as the result of his less than subtle efforts to evade the very service his counsel has forced. This is not surprising in light of the allegations against Defendant in the Second Amended Complaint ("SAC"), reproduced in part below:

> At or about the time of Ornelas-Kuh's resignation notice, the Company performed an internal audit of Ornelas-Kuh's pass-through expenses to Janssen, one of CCFW's most important clients. As a result of the audit, CCFW determined that Ornelas-Kuh stole approximately $85,000 for his personal benefit that he had inappropriately and fraudulently claimed were business expenses attributable to work on the Janssen account. Ornelas Kuh's theft consisted of, but were not limited to, using his CCFW American Express card and coding the charges as pass-through expenses to Janssen project codes for: (1) extravagant meals for himself and at times others; (2) throwing himself a birthday party; (3) personal items; (4) gifts for subordinates; (5) gift cards for personal use; and (6) plane/train tickets for personal trips.

*See, e.g.*, SAC at ¶ 81-82.

1

To be clear, and well before Defendant was ever added as a party to this Action, <u>he received and acknowledged notice of this litigation on numerous occasions</u>. In fact, Plaintiff sent Defendant no less <u>than three (3) letters, five (5) emails, a subpoena ("Subpoena") and a Litigation Hold Letter,</u> through his attorney at the time, Susan Nardone, Esq. *See* Nosher Declaration **Exhibit 1**;[1] Plaintiff's May 11, 2023 Litigation Hold Letter to Defendant ("Litigation Hold"); **Exhibit 2** (select correspondence between Plaintiff and Ms. Nardone). Each communication was confirmed as received. The Litigation Hold letter, for example, clearly sets forth Plaintiff's intent to bring Defendant into this case thereby giving him undisputed notice of the Action. Nosher Declaration **Exhibit 1** at 1 ("The purpose of this letter is to place your client <u>on notice that litigation may be filed against him</u> and the Company believes that he has information, documentation, and/or data that will be needed and/or used during the course of this litigation.") (emphasis added).

Regrettably, Defendant's counsel refused to accept service of the Subpoena for reasons unknown and unstated, despite telling Plaintiff's counsel that "[i]f you share the subpoena with me, I will discuss it with my client and get back to you on whether we are authorized to accept service." Nosher Declaration **Exhibit 2**. Counsel eventually refused service, beginning a trend of Defendant's evasive acts in this case. *See* Nosher Declaration **Exhibit 3**; November 10, 2023 S. Nardone Letter to S. Adler ("I am not authorized to accept service of the Subpoena Duces Tecum forwarded by Ms. Matton via email on November 8, 2023 on Mr. Ornelas-Kuh's behalf.").

Shortly after filing the SAC, Plaintiff's counsel also wrote twice to Defendant Johnson's counsel, Mr. Slarskey, who Plaintiff then believed was representing Defendant at that time. Plaintiff specifically requested that Defendant waive service. *See* Nosher Declaration **Exhibit 4**;

---

[1] Plaintiff submits the Declaration of Todd Nosher ("Nosher Declaration"), and Exhibits 1-12 thereto, in support of this Motion.

September 22, 2024 email from J. Matton to D. Slarskey ("…will you accept service on behalf of Matthew Ornelas-Kuh?"); **Exhibit 5**; September 24, 2024 email from J. Matton to D. Slarskey ("David, following up on the below. Please advise if you will accept service for Matthew Ornelas-Kuh."). Rather than expressly confirm or deny his representation, Johnson's counsel elusively responded "I don't have an answer for you yet." *See* Nosher Declaration **Exhibit 6**; September 24, 2024 email from D. Slarskey to J. Matton. Counsel never did provide his answer.[2]

This prompted Plaintiff to proceed with formal service, whereby Plaintiff attempted to find and personally serve Defendant no less than <u>seven times</u> through at least three different process servers at multiple locations. Even more, Plaintiff retained multiple investigators to locate and eventually serve Defendant, all at a significant cost of time and resources. To be clear, Plaintiff successfully served Defendant under Fed. R. Civ. P. 4(d)(2)(B) on March 1, 2025, albeit after the 90-day window of Rule 4. *See* Nosher Declaration **Exhibit 7**; Proof of Service.

Soon after his March 1, 2025 service, Defendant resurfaced *with* new counsel, W. O'Conner, Esq., who despite acknowledging his client's receipt of the pleading and summons, feigned procedural defects. *See* Nosher Declaration **Exhibit 8**; March 24, 2025 Letter from W. O'Conner to S. Adler. When asked to waive service, to the extent it was even needed,[3] and to avoid wasting the parties' and Court's time with unnecessary motion practice, <u>new counsel ignored Plaintiff's request</u>. *See* Nosher Declaration **Exhibit 9**; April 2, 2025 Letter from T. Nosher to W. O'Conner (which Mr. O'Conner never responded to).

---

[2] Notably, it appears there may be some effort by defendants to shield and protect Kuh from this Action. And now, Kuh has resurfaced with the same attorney that currently represents defendants Carrie Bicking ("Bicking") and Beth Weiler ("Weiler"). Any coordinated efforts by defendants to shield Kuh would not be surprising given his key role in working with Johnson on the formation of Defendant PVP and her misappropriation of CC Ford's materials as alleged in the SAC.

[3] Plaintiff again believes that service was proper, and that good cause and discretionary reasons support any additional time that may be required to deem Defendant now served.

This is a text-book example of the service gamesmanship that courts frown upon. Defendant should not be rewarded for his conduct and instead should be sanctioned. Accordingly, Plaintiff respectfully requests that its Motion for the Court to deem him served pursuant to Fed. R. Civ. P. 4 be granted or, in the alternate, for good cause shown or at the Court's discretion, extend the time for him to be served and approve service by alternate means.

## RELEVANT PROCEDURAL HISTORY

This Action began on May 16, 2022 in state court and was removed to this Court on June 17, 2022. The now operative pleading, the SAC, was filed on September 6, 2024. Plaintiff and the named defendants, save Mr. Kuh, agreed to a briefing schedule for defendants' motion to dismiss which is now fully briefed.  The Court has stayed discovery pending adjudication of that motion.

## LEGAL AUTHORITY

Under Federal Rule of Civil Procedure 4(m), a plaintiff shall serve the summons and complaint on a defendant within 90 days of filing the pleading. As an alternative to personal service, a plaintiff may ask the defendant to waive service of process under Rule 4(d). Importantly, Rule 4(d)(2) imposes a duty on defendants to avoid unnecessary expenses of serving the summons.

### A.  Service under Fed. R. Civ. P. 4(e).

Under Rule 4(e), when serving an individual within a judicial district of the United States, service may be made by: "(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process."

B. **Refusal to Waive Service.**

If a defendant refuses to waive service, he or she will be required to pay the expenses of service, unless the defendant shows "good cause" for the failure to waive service. Fed. R. Civ. P. 4(d)(2). "Defendants that magnify costs of service by requiring expensive service not necessary to achieve full notice of an action brought against them are required to bear the wasteful costs." Fed. R. Civ. P. 4 Advisory Committee's Notes (1993 amendments).

C. **Good Cause for Extensions to Serve.**

If a plaintiff who is unable to serve a defendant within 90 days "shows good cause for the failure, the court <u>must extend the time for service</u>." Fed. R. Civ. P. 4(m) (emphasis added); *see also First Response v. New Jersey,* No. CV 21-1458, 2023 WL 3043633, at *2 (D.N.J. Apr. 21, 2023). The test for whether to extend time under Rule 4(m) involves a two-step inquiry. *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997). First, "if the plaintiff shows good cause for the failure" to serve within the time limit, a court is <u>required</u> to extend the time for service "for an appropriate period." Fed. R. Civ. P. 4(m); *See also Yannul v. Universal Dentistry, P.C. et al.*, No. CV 24-10792 (KMW/SAK), 2025 WL 900474, at *1 (D.N.J. Mar. 24, 2025) (emphasis added). If good cause does not exist, the court must then consider whether to grant a discretionary extension.

The good cause requirement of Rule 4(m) protects "diligent plaintiffs who, though making every effort to comply with the dictates of the rule, nonetheless exceed [the limit for service of process]." *Green v. Humphrey Elevator & Truck Co*., 816 F.2d 877, 880 (3d Cir. 1987). Factors that may demonstrate good cause include without limitation: the reasonableness of the plaintiffs' efforts to serve; prejudice to the defendants by lack of timely service; and whether the plaintiffs timely moved for an extension of time. *Beautyman v. Laurent*, 829 F. App'x 581, 583 (3d Cir. 2020) (citation omitted); *Yannul*, 2025 WL 900474, at *1). Most importantly, Defendant's notice

of the action provides automatic good cause. *Salaam v. Merlin*, No. CIV 08-1248 (JBS), 2009 WL 2230925, at *2 (D.N.J. July 22, 2009) ("where Defendant had actual notice of the litigation through service of a crossclaim by a co-defendant, no prejudice existed and good cause was <u>automatic</u>.") (emphasis added). To be clear, Courts in this Circuit "lean toward extending time for service where there is a reasonable prospect of service, and in fact here, Defendant has already been served." *Id*.

### D. <u>Discretionary Extensions.</u>

Even when good cause is not shown, a court may nonetheless use its discretion to allow an extension of time. In making this decision, a court may consider and balance several factors, including (1) actual notice of the action, (2) prejudice to the defendant, (3) statute of limitations, (4) conduct of the defendant, (5) whether the plaintiff is represented by counsel and (6) any other relevant factor(s). *Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 116 (3d Cir. 2009). Other relevant factors include whether the defendant attempted to evade service and other equitable considerations. *Mathies v. Silver*, 450 Fed. Appx. 219, 222 (3d Cir. 2011).

### E. <u>Service by Alternate Means.</u>

Lastly, district courts have broad discretion to permit alternative service of process pursuant to Fed. R. Civ. P. 4(f)(3) where "(a) there is no international agreement prohibiting service by the proposed method; (b) the proposed method of service is reasonably calculated to provide the defendant notice; and (c) [plaintiff has] made a good faith effort to locate and serve defendants by traditional means." *U.S. Secs. and Exchange Commission v. Vuuzle Media Corp.*, No. 21-1226, 2021 WL 1731947, at *1 (D.N.J. May 3, 2021). Under this authority, courts allow service by alternate means including email. *Celgene Corp. v. Blanche L*td., No. CV16501SDWLDW, 2017 WL 1282200, at *3 (D.N.J. Mar. 10, 2017) ("Plaintiff's proposed alternative method of service, by email, appears reasonably calculated to provide actual notice to

6

[defendant] and thus comports with due process of law…Plaintiff's sending of emails to the addresses associated with [defendant] without receiving notifications that such emails were undeliverable makes a prima facie showing that the email addresses are themselves at least valid.") (internal citations omitted).

## **ARGUMENT**

### **A.  Plaintiff Has Served Defendant.**

Plaintiff served Defendant in accordance with Fed. R. Civ. P. 4(e)2(B) by "leaving a copy of [the pleading and summons] each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." The Service Processor's Proof of Service confirms this. *See* Nosher Declaration **Exhibit 7** reproduced in part below.



Defendants' apparent challenge to his service is unavailing and does not change this fact as explained below. Accordingly, the Court should, respectfully, order that Defendant file his answer or response to the SAC, if any, within twenty-one (21) days of its order granting this Motion.

### **B.  Good Cause Supports Plaintiff's Request**

Notwithstanding and to the extent required, Plaintiff's Motion is supported by good cause. Plaintiff has far exceeded the threshold reasonable efforts to serve Defendant. Moreover, there is absolutely no prejudice to Defendant for the relief sought. Indeed, the good cause requirement of Rule 4(m) is designed specifically for cases like this where "diligent plaintiffs who, though making every effort to comply with the dictates of the rule, nonetheless exceed [the limit for service of process]." *Green*, 816 F.2d at 880.

4920-6448-4148, v. 2

1.  <u>Plaintiff has made reasonable efforts to serve Defendant.</u>

Plaintiff's efforts to serve Defendant have been more than reasonable.

*First*, Plaintiff requested that counsel, who Plaintiff believed to be representing Defendant at the time, accept service of the SAC and summons on Defendant's behalf immediately after filing the SAC. *See* Nosher Declaration **Exhibit 4**; September 22, 2024 email from J. Matton to D. Slarskey ("…will you accept service on behalf of Matthew Ornelas-Kuh?"); **Exhibit 5**; September 24, 2024 email from J. Matton to D. Slarskey ("David, Following up on the below. Please advise if you will accept service for Matthew Ornelas-Kuh."). Counsel neither confirmed nor denied his representation, instead providing an ambiguous response. Indeed, rather than affirmatively deny his representation, Mr. Slarskey responded "I don't have an answer for you yet." *See* Nosher Declaration **Exhibit 6**; September 24, 2024 email from D. Slarskey to J. Matton. Tellingly, counsel never did respond with an answer thus prompting Plaintiff to formally serve Defendant.

*Second*, in view of, among other things, the foregoing correspondence and believing he was now an unrepresented party, Plaintiff included Defendant in a service email providing notice of a Third Party Subpoena to the Qral Group which enclosed the SAC in its entirety. *See* Nosher Declaration **Exhibit 10**; October 3, 2024 J. Matton service email to counsel of record and unrepresented parties. Notably, Plaintiff used Defendant's same Gmail account that Defendant previously confirmed was his active email account in past court proceedings. Simply put, Defendant received the SAC on October 3, 2024.

*Third*, Plaintiff has attempted to find and personally serve Defendant using multiple process servers and investigators no less than seven times at multiple locations throughout the country. Specifically, Plaintiff attempted to personally serve Defendant, or otherwise performed

research and investigation into Defendant's whereabouts, on at least the following dates and locations:

- September 22, 2024 at 78694 Como Court, La Quinta, CA 92253

- September 24, 2024 at 78694 Como Court, La Quinta, CA 92253

- September 25, 2024 at 78694 Como Court, La Quinta, CA 92253

- September 28, 2024 at 78694 Como Court, La Quinta, CA 92253.

- September 30, 2024 at 78694 Como Court, La Quinta, CA 92253.

- October 2024 Plaintiff retains first investigator to find Defendant.

- October 8, 2024 first investigator research confirms 78694 Como Court, La Quinta, CA 92253 as Defendant's current address.

- From October through December 2024 Plaintiff further investigates and researches other potential addresses for Defendant.

- December 2024 Plaintiff retains new investigator.

- January 2024 new investigator performs additional investigation into Defendant's whereabouts.

- February 9, 2025 at 78694 Como Court, La Quinta, CA 92253.

- March 1, 2025 at 78694 Como Court, La Quinta, CA 92253; Formal service made.

Notably, on the September 30, 2024 service attempt, a 57-year old resident of the location—who based on Plaintiff's subsequent investigation—was Edward Jellison Lowell, Defendant's Stepfather, told the process server that he did not know Defendant despite being his stepfather.

Beyond the numerous attempts to serve the SAC, Plaintiff has also sent and/or requested waivers of service from Defendant regarding subpoenas in this case which enclosed the operative

pleadings at those times. *See, e.g.*, Nosher Declaration **Exhibits 2-3**. Below is a representative list of those correspondence which provided Defendant even further notice of the Action:

- Plaintiff's May 11, 2023 Litigation Hold Letter to Defendant's then-counsel S. Nardone advising that Plaintiff is likely to add Defendant as a party to the Action.

- October 17, 2023 Letter to Defendant's then-counsel Susan Nardone, Esq. requesting waiver of service of subpoena which was ultimately rejected by counsel.

- October 17 and 26, 2023 emails from Plaintiff's counsel to Susan Nardone, Esq. requesting waiver of service of subpoena to which Ms. Nardone responded on November 7, 2023 "I am waiting on feedback from my client on the response, which I expect today. If you share the subpoena with me, I will discuss it with my client and get back to you on whether we are authorized to accept service.  I am not currently authorized to do so." Nosher Declaration at **Exhibit 2** (emphasis added).

- November 7 and 8, 2023 emails from Plaintiff's counsel to Susan Nardone, Esq.

- November 13, 2023 Letter to Defendant enclosing subpoena and operative pleading.

- October 3, 2024 J. Matton service email to counsel of record and unrepresented parties attaching Qral subpoena and SAC.

*Fourth*, Plaintiff retained multiple investigators to search for and serve Defendant at a significant cost of time and resources. Defendant was ultimately served on March 1, 2025, based in part on the information gathered by Plaintiff's investigators. *Yannul*, 2025 WL 900474, at *1 ("courts in this Circuit lean toward extending time for service where there is a reasonable prospect of service, and in fact here, Defendant has already been served.").

And *fifth*, after resurfacing through new counsel, who happens to be the same attorney representing Mr. Kuh's co Defendants, friends and ostensible co-workers at Defendant PVI, Bicking and Weiler, Plaintiff requested again that service be waived.  But despite Defendant's duty under 4(d)(1) to avoid unnecessary expenses of service, Defendant's new counsel W. O'Conner, Esq., ignored Plaintiff's request. *See, e.g.*, Fed. R. Civ. P. 4(d)(2). Fed. R. Civ. P 4(d)(1) ("An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons."); Fed. R. Civ. P. 4 Advisory Committee's Notes (1993 amendments) ("Defendants that magnify costs of service by requiring expensive service not necessary to achieve full notice of an action brought against them are required to bear the wasteful costs.").

Courts in this district have found lesser efforts to be reasonable. *See, e.g., Yannul*, 2025 WL 900474, at *1 ("Plaintiff made reasonable and good faith efforts to timely serve Dr. Einstein. The 90-day period to serve Defendants expired on February 25, 2025. Prior to this date, Plaintiff attempted to personally serve Dr. Eisenstein on three occasions at three different locations. Plaintiff also sought to ascertain Dr. Eisenstein's current mailing address from the New Jersey State Board of Dentistry. These reasonable efforts support a finding of good cause."); *Est. of King v. City of Jersey City*, 2018 WL 3201793, at *3 (D.N.J. June 29, 2018) ("The Estate has shown reasonable efforts to serve defendant. The Estate attempted to serve Mr. Cowan through Jersey City, which used to employ him. The City allegedly did not, or at least did not immediately, inform the Estate that Mr. Cowan had retired and the City could not accept service on his behalf. Once the Estate learned this, it attempted to serve Mr. Cowan at his address several times."); *Mazure v. Remington Arms Co., Inc*., No. 2:22-CV-02854 (WJM), 2022 WL 2439196, at *2 (D.N.J. July 5, 2022) ("Notwithstanding that Plaintiff's service was untimely, Plaintiff appears to have made

reasonable efforts to effectuate service and Dick's has not argued that it has been prejudiced by lack of timely service."); *see also Jones v. Pi Kappa Alpha Int'l Fraternity, Inc*., No. CV 16-7720 (KM), 2017 WL 4074284, at *4 (D.N.J. Sept. 14, 2017).

Plaintiff's efforts were beyond reasonable here.

2.  <u>Defendant will suffer no prejudice.</u>

Defendant will also suffer no prejudice by the requested relief. Defendant has long known about and has had full notice of this Action and the likelihood he would be added as a party. This fact is dispositive and provides <u>automatic good cause</u>. *Salaam v. Merlin*, No. CIV 08-1248 (JBS), 2009 WL 2230925, at *2 (D.N.J. July 22, 2009) ("where Defendant had actual notice of the litigation through service of a crossclaim by a co-defendant, no prejudice existed and good cause was <u>automatic</u>") (emphasis added) (citing *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1312 (3d Cir.1995)). Again, prior to becoming a party to the Action, Plaintiff sent Defendant, through his prior-counsel Ms. Nardone, <u>no less than three (3) letters,[4] five (5) emails, a subpoena and a Litigation Hold Letter</u>. Defendant cannot reasonably deny knowledge of the Action.

Indeed, these letters and emails, which were received and responded to by counsel, gave clear notice that Plaintiff intended to add Defendant as a party and gave him notice of the claims in the case. By way of example, in Plaintiff's October 17, 2023 letter to Defendant, Plaintiff made clear that "[s]hould your client not confirm by the close of business this coming Monday that he has left PVI's employ, <u>we intend to add him as a defendant to litigation</u> currently pending between the Company, PVI and others. Moreover, we also intend to <u>assert additional claims</u> against PVI and Ms. Jennifer Johnson ("Johnson") relating to their tortious interference with the Company's

---

[4] Letters were sent to Ms. Nardone on at least April 28, 2023, May 11, 2023 and October 17, 2023. This in addition to the numerous emails listed on page 10 *supra*.

various agreements with your client.") (emphasis added). Moreover, in Plaintiff's May 11, 2023 letter to counsel, Plaintiff also "place[d] [Defendant] on notice that litigation may be filed against him and the Company believes that he has information, documentation, and/or data that will be needed and/or used during the course of this litigation." And in a November 8, 2023 email, Plaintiff's counsel stated "please be advised that if we do not receive a prompt response to our October 17, 2023 letter, our only option will be to bring suit against Mr. Ornelas-Kuh." Nosher Declaration Exhibit 2.

After the SAC was filed, and after requesting service waivers from those believed to be Defendant's new counsel to no avail, Plaintiff included Defendant on an email notice of Third-Party Subpoena to the Qral Group to all parties in the Action. That notice included the SAC in its entirety and was sent using an email that Defendant has used in other court proceedings. And beyond the many direct communications to defense counsel, Defendant is also well aware of this Action given the fact that he is apparently working at co-Defendant Project Velocity Inc. ("PVI") as an employee or consultant and regularly works with the other defendants in this matter including Johnson. For example, in a recent Instagram post by PVI, there is a photo, reproduced below, of Defendant attending a company retreat and business conference with several of the PVI employees and directors. *See* Nosher Declaration **Exhibit 11**.



In yet another social media post from Johnson's Instagram account, Defendant is found in several photos appearing alongside Johnson and Bicking on what appears to be a PVI company retreat in Mykonos Greece.





*See* Nosher Declaration **Exhibit 11**; Select Social Media Posts.

14

Courts routinely find no prejudice in cases like this where a defendant has plain notice of the Action. *See, e.g.*, *Witasick v. Estes*, No. CIV.A. 11-3895-NLH, 2012 WL 3075988, at *5 (D.N.J. July 30, 2012) ("In addition, defendants had actual notice of the action and there is no prejudice due to the untimely service."); *Salaam v. Merlin*, No. CIV 08-1248 (JBS), 2009 WL 2230925, at *2 (D.N.J. July 22, 2009); *John Wiley & Sons, Inc. v. Rivadeneyra*, No. CIV. 13-1085 FSH JBC, 2013 WL 6816369, at *9 (D.N.J. Dec. 20, 2013) ("there is no prejudice to Defendant Inversiones because it has actual notice."); *EOI Corp. v. Med. Mktg. Ltd*., 172 F.R.D. 133, 143 (D.N.J.1997).

Moreover, Defendant will suffer no prejudice from the relief sought because nothing has happened in this case since the SAC was filed. As previously stated, Defendants moved to dismiss the SAC through a briefing schedule agreed to by the parties—before the pleading was even filed—and the Court has stayed discovery pending adjudication of that motion. Defendant cannot argue prejudice when he is in no different position now than he would have been if he had accepted service in September.

3.  A Post-date Motion is inconsequential.

Defendant may argue, if he responds at all, that the filing date of this Motion weighs against a good cause finding. Such argument is unavailing and has been previously rejected by courts in this District. *See, e.g., Yannul*, 2025 WL 900474, at *1; *Gonzalez v. Thomas Built Buses, Inc*., 268 F.R.D. 521, 529 (M.D.Pa. 2010) (recognizing the Third Circuit's preference "to decide a case on its merits than on a procedural technicality"). In fact, courts have found good cause even when plaintiff files no motion to extend time.  *See, e.g., Cunningham v. New Jersey*, 230 F.R.D. 391, 394 (D.N.J. 2005) ("this Court concludes that despite her failure to file a motion to extend the time for service, Plaintiff acted in a fashion that was eminently reasonable and diligent.") *compare with*

15

*Chiang v. U.S. Small Bus. Admin*., 331 Fed. Appx. 113, 116 (3d Cir. 2009) (affirming the district court's order dismissing the amended complaint for failure to timely effect service, noting that the appellants failed to explain their four-year delay in seeking an extension of time); *see also Jones v. Pi Kappa Alpha Int'l Fraternity, Inc*., No. CV 16-7720 (KM), 2017 WL 4074284, at *5 (D.N.J. Sept. 14, 2017) ("Courts in this Circuit have found that failure to request an enlargement of time certainly is not by itself fatal to a plaintiff's efforts to establish good cause and that this third factor can be viewed as a subset of the first factor, which considers the diligence and reasonableness of plaintiff's efforts. Therefore, given that Plaintiff made other diligent efforts to serve Rainone, this third factor does not weigh favorably or unfavorably to the application.") (internal citations and quotations omitted).

### C. **A Discretionary Extension is Also Appropriate.**

Notwithstanding the manifest good cause, a discretionary extension is also appropriate here. In considering discretionary extensions, the court may consider and balance several factors, such as (1) actual notice of the action, (2) prejudice to the defendant, (3) statute of limitations, (4) conduct of the defendant, (5) whether plaintiff is represented by counsel, and (6) other relevant factors including if defendant attempted to evade service. *Chiang v. U.S. Small Bus. Admin*., 331 F. App'x 113, 116 (3d Cir. 2009); *Mathies v. Silver*, 450 Fed. Appx. 219, 222 (3d Cir. 2011).

1. Defendant received notice and there is no prejudice.

As explained *supra*, Defendant has had and continues to have notice and there is, therefore, no prejudice here. Plaintiff need not belabor this point any further.

2. Defendant's conduct supports a discretionary extension.

Defendant's conduct also supports a discretionary extension. *First*, Defendant has refused to waive service despite surfacing with counsel.

*Second*, Defendant seems to have a history of trying to be untraceable. Indeed, parties in other actions have had equal difficulty locating Defendant. One example of this was in a Texas state trust matter captioned *In the Estate of Virginia F. Kuh Trust*; Case No. 516,760; filed on June 6, 2023 in Probate Court No. 3 Harris County, Texas. Pursuant to the terms of a trust agreement, the petitioner bank was required to provide notice to all descendants of Phyllis J. Welter, Defendant's great-grandmother. *See* Nosher Declaration **Exhibit 12**; Select Materials from Kuh-related Probate Matter.

According to the filings, the petitioner had substantial difficulty locating Defendant as explain in her affidavit reproduced in part below.

> "Interested party, MATTHEW S. ORNELAS-KUH ("MATTHEW"), is absent from the state. The residence of MATTHEW is known to me. I made contact with MATTHEW via LinkedIn, and I had regular email correspondence with him, a copy of which is attached. In our email correspondence, MATTHEW gave me his mailing address. A copy of the Petition was sent via certified mail, return receipt requested and regular mail on or about June 7, 2023, to the address he provided: 2116 Chestnut Street #3120, Philadelphia, Pennsylvania 19103. The certified mail package was returned as "unclaimed". A copy of returned certified mail package is attached is attached. The regular mail package has not been returned. In my email correspondence with MATTHEW, I also requested the addresses or any contact information for the other interested parties but only received an email address for his brother, DANIEL G. KUH.

> I have exercised due diligence in attempting to locate the whereabouts of MATTHEW and have been unable to do so."

*See* Nosher Declaration **Exhibit 12**; Select Materials from Kuh-related Probate Matter.

*Third*, Defendant has shuffled through multiple attorneys—each having refused service of papers in this case.

*And fourth*, a discretionary extension is warranted in view of the totality of Defendant's actions in this case—and his continued attempts to multiply the proceedings despite having full and prior knowledge of the case.

### D.  <u>Alternate Service is Appropriate as Needed.</u>

In the event the Court grants Plaintiff's request for additional time to serve but does not deem Defendant served by way the March 1, 2025 service, Plaintiff respectfully requests an order allowing service by alternate means to avoid further unnecessary lost costs and resources.

Under Fed. R. Civ. P. 4(f)(3), district courts have broad discretion to permit alternative service of process where "(a) there is no international agreement prohibiting service by the proposed method; (b) the proposed method of service is <u>reasonably calculated to provide the defendant notice</u>; and (c) [plaintiff has] made <u>a good faith effort to locate and serve</u> defendants by traditional means." *U.S. Secs. and Exchange Commission v. Vuuzle Media Corp.*, No. 21-1226, 2021 WL 1731947, at *1 (D.N.J. May 3, 2021). Indeed, courts routinely allow service by alternate means including email in situations like this.

Here, there is no international agreement prohibiting service by the proposed method—Defendant is a U.S. citizen and resident working in New York.  The proposed method of service, email, is reasonably calculated to provide Defendant notice. In fact, Defendant has previously communicated with parties in other court proceedings using his email address. *See* Nosher Declaration **Exhibit 12**; Select Materials from Kuh-related Probate Matter. And Plaintiff has made more than a good faith effort to locate and serve Defendant by traditional means as explained in detail above. An order allowing service by alternate means is thus warranted in the event the Court does not deem Defendant currently served with Plaintiff being allowed to serve Defendant by email within thirty (30) days of such order.

4920-6448-4148, v. 2

**E.  Costs and Fees Should be Awarded to Plaintiff.**

When a defendant refuses to waive service of process, he will be required to pay the expenses of service, unless the defendant shows "good cause" for his failure to waive. Fed. R. Civ. P. 4(d)(2). "Defendants that magnify costs of service by requiring expensive service not necessary to achieve full notice of an action brought against them are required to bear the wasteful costs." Fed. R. Civ. P. 4 Advisory Committee's Notes (1993 amendments); *Mercedes-Benz Fin. Servs. USA LLC v. Chandler*, No. 19-CV-15716-ES-ESK, 2020 WL 3892360, at *3 (D.N.J. July 2, 2020); *Guardian Life Ins. Co. of Am. v. Est. of Walter Matesic*, No. 2:16-00643 (WJM), 2016 WL 3763340, at *3 (D.N.J. July 14, 2016) ("where a plaintiff submits a written waiver of service to a defendant, and the defendant, without good cause, refuses to sign the waiver, the court must require the defendant to compensate the plaintiff for the expenses later incurred in affecting service."); *see also W. Funding, Inc. v. S. Shore Towing, Inc*., 2021 WL 1399798, at *1 (D.N.J. Apr. 14, 2021) ("Judge Bongiovanni imposed costs and fees because Defendants refused to waive service but did not explain why they had cause to do so. Although it is improper to attempt to appeal the award in a dismissal motion, I would uphold her decision.").

Defendant has recently resurfaced with new counsel in this Action who has refused to waive service. That refusal has necessitated this Motion. Plaintiff respectfully requests that the Court order Defendant to pay Plaintiff for its costs and fees for having to bring this Motion pursuant to Fed. R. Civ. P. 4(d)(2), Fed. R. Civ. P. 37 and/or all other applicable rules, authority and discretionary powers of the Court. To date, such relevant costs and fees well-exceed $10,000, and Plaintiff will submit a declaration setting forth the exact costs and fees upon the completion of brief and/or any hearing on this Motion.

19

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion and deem Defendant served under Fed. R. Civ. P. 4(e) and (m). Alternatively, Plaintiff respectfully requests an extension of time to serve Defendant by alternate means. Lastly, Plaintiff seeks an award of fees and costs associated with this Motion after Defendant refused to waive service under Rule 4(d).

Dated April 10, 2025                                      Respectfully submitted,

                                                         /s/ *Steven I. Adler*

                                                         Steven I. Adler
                                                         Todd Nosher
                                                         **MANDELBAUM BARRETT PC**
                                                         3 Becker Farm Road, Suite 105
                                                         Roseland, New Jersey 07068
                                                         sadler@mblawfirm.com
                                                         tnosher@mblawfirm.com
                                                         Phone: 973-736-4600
                                                         Fax: 973-325-7467

                                                         *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of Plaintiff's Notice of Motion, Memorandum

of Law in Support of the Motion and all accompanying documents and materials in support of the

Motion, including the supporting Declaration and Exhibits, were served on all counsel of record

as well as the below-listed counsel for Defendant via CM/ECF and/or electronic mail on this 10th

day of April 2025:

### Counsel for Defendant

William O'Conner, Jr.
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
woconnor@mdmc-law.com

Dated April 10, 2025

*/s/ Steven I. Adler*

Steven I. Adler
Todd Nosher
**MANDELBAUM BARRETT PC**
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
sadler@mblawfirm.com
tnosher@mblawfirm.com
Phone: 973-736-4600
Fax: 973-325-7467

*Counsel for Plaintiff*