**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CC FORD GROUP WEST, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JENNIFER JOHNSON, *et al.*,<br><br>Defendants. | Civil Action No. 22-4143 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on several motions to dismiss Plaintiff CC Ford Group West, LLC's ("Plaintiff" or "CCFW") Third Amended Complaint ("TAC"). (ECF No. 151.) Defendants PharmaEssentia USA Corporation ("PEC") and Meredith Manning ("Manning" and together with PEC, the "PEC Defendants") filed two motions to dismiss. (ECF Nos. 162, 163.) Defendants Jennifer Johnson ("Johnson"), Project Velocity Inc. ("PVI"), and Project Velocity Partners, LLC ("PVP") filed a motion to dismiss. (ECF No. 164.) Defendants Carrie Bicking ("Bicking") and Beth Weiler ("Weiler" and together with Bicking, Johnson, PVI, PVP, and Matthew Ornelas-Kuh ("Kuh") the "PVI Defendants" and together with both the PEC Defendants and PVI Defendants, collectively "Defendants") moved to join the arguments asserted by Johnson, PVI, and PVP (ECF No. 166), as did Kuh (ECF No. 170). Plaintiff opposed the PVI Defendants' motions (ECF No. 171) and the PEC Defendants' motions (ECF No. 172). Plaintiff also opposed Kuh's motion. (ECF No. 177.) The PVI Defendants and the PEC Defendants replied. (ECF Nos. 178, 179, 180.)

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated below, the Court grants in part and denies in part Defendants' motions to dismiss.

## I.    BACKGROUND[1]

### A.    Factual Background

The instant action arises out of Plaintiff's allegations of an unlawful scheme to misappropriate confidential information, solicit clients and employees, and unfairly compete with CCFW by several of its former employees, as well as an executive at one of its largest clients, PEC. (*See generally* TAC, ECF No. 151.) The Court previously detailed the facts of this case in its June 30, 2025, Memorandum Opinion (the "2025 Opinion"). (*See* Mem. Op. 2-13, ECF No. 150.) The facts of the case are well known to the parties, and the Court includes only the factual allegations necessary to decide the instant motions in its analysis and directs the parties to the 2025 Opinion for a detailed recitation of the facts. (*See generally id.*)

### B.    Procedural Background

This case has a long, protracted procedural history which the Court detailed in the 2025 Opinion. (*See id.* at 13-15.) The Court therefore only details the procedural history necessary to decide the instant motions.

CCFW originally filed this action in New Jersey state court, solely against Johnson who removed the action to this Court. (*See* Notice of Removal, ECF No. 1.) Plaintiff thereafter filed its First Amended Complaint ("FAC") which added claims against Bicking, Weiler, and PVI. (*See generally* FAC, ECF No. 9.) After the Court granted CCFW's second motion to amend its

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the TAC as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Complaint, CCFW filed the Second Amended Complaint ("SAC") which added, among other things, claims against PEC, Kuh, and PVP. (*See generally* SAC, ECF No. 92.) Defendants moved to dismiss the SAC (ECF Nos. 115, 116, 118, 119), Plaintiff opposed (ECF Nos. 124, 125), and Defendants replied (ECF Nos. 128, 129). This Court granted the PEC Defendants' motion to dismiss and granted in part and denied in part the PVI Defendants' motion to dismiss. (Order, ECF No. 149; *see generally* Mem. Op.) As to the PVI Defendants, the Court dismissed Plaintiff's Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO") and N.J. Stat. Ann. § 2C:41 ("NJRICO"), RICO conspiracy, Computer Fraud and Abuse Act ("CFAA"), tortious interference, conversion, unfair competition, and unjust enrichment claims, as well as fraud claims against PVP and Kuh. (*See generally* Mem. Op.) The Court also ordered Plaintiff to file a RICO case statement should it file another amended complaint. (*Id.* at 22-23.)

Plaintiff filed the TAC on July 30, 2025, asserting fourteen causes of action: (1) RICO and NJRICO Enterprise against all Defendants ("Count One"); (2) RICO and NJRICO conspiracy against all Defendants ("Count Two"); (3) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") and misappropriation of trade secrets under the New Jersey Trade Secrets Act ("NJTSA") against all Defendants ("Count Three"); (4) violations of the New Jersey Computer Related Offenses Act ("CROA") and CFAA against all Defendants ("Count Four"); (5) breach of contract against Johnson, Bicking, Weiler, and Kuh ("Count Five"); (6) breach of fiduciary duty against Johnson ("Count Six"); (7) breach of duty of loyalty and violations of the faithless servant doctrine against Johnson, Bicking, Weiler, and Kuh ("Count Seven"); (8) tortious interference with contractual relationships, economic advantage, and existing business relationships against all Defendants ("Count Eight"); (9) tortious interference with prospective economic advantage against all Defendants ("Count Nine"); (10) unfair competition against all

3

Defendants ("Count Ten"); (11) theft of trade secrets and misappropriation of confidential information against all Defendants ("Count Eleven"); (12) tortious interference against Johnson, PVI, and PVP ("Count Twelve"); (13) tortious interference with contract and prospective economic advantage against PEC and Manning ("Count Thirteen"); and (14) misappropriation and fraud against Kuh and PVP ("Count Fourteen"). (*See* TAC ¶¶ 296-595.) Plaintiff also filed a RICO Case Statement (RICO Statement, ECF No. 151-3), and Appendix to the TAC which includes twenty-four additional paragraphs of predicate-act-specific allegations (App'x A to TAC ("App'x"), ECF No. 151-1).

The PEC Defendants filed a motion to dismiss (PEC Defs.' Mot. to Dismiss, ECF No. 162; Manning Mot. to Dismiss, ECF No. 163), as did the PVI Defendants (PVI Defs.' Mot. to Dismiss, ECF No. 164; Bicking Mot. to Dismiss, ECF No. 166; Kuh Mot. to Dismiss, ECF No. 170). Plaintiff opposed all Defendants' motions. (Pl.'s Opp'n Br. to PVI Defs.' Mot. to Dismiss ("Pl.'s Opp'n Br. to PVI"), ECF No. 171; Pl.'s Opp'n Br. to PEC Defs.' Mot. to Dismiss ("Pl.'s Opp'n Br. to PEC"), ECF No. 172; Pl.'s Opp'n Br. to Kuh's Mot. to Dismiss ("Pl.'s Opp'n Br. to Kuh"), ECF No. 177.) The PVI Defendants and the PEC Defendants replied, respectively. (PVI Defs.' Reply Br., ECF No. 178; PEC Defs.' Reply Br., ECF No. 179; Bicking, Kuh & Weiler Reply Br., ECF No. 180).

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure[2] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    DISCUSSION

Defendants move to dismiss the TAC with prejudice in its entirety. (*See generally* PEC Defs.' Moving Br., ECF No. 162-1; *see generally* PVI Defs.' Moving Br., ECF No 164-1.) The Court addresses each count below.

### A.    Count One: Section 1962(c) RICO and NJRICO—Enterprise

The RICO Act provides "civil damages for 'any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962].'" *Tabas v. Tabas*, 47 F.3d 1280, 1289 (3d Cir. 1995) (quoting 18 U.S.C. § 1964(c)). Under the RICO Act, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c); *see Dongelewicz v. PNC Bank Nat'l Ass'n*, 104 F. App'x 811, 816-17 (3d Cir. 2004) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Under 18 U.S.C. § 1962(a), it is "unlawful for any person [to] receive[] any income derived, directly or indirectly," from a violation of § 1962(c). Moreover, under 18 U.S.C. § 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a) . . . or (c) of this section."

To plead a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege: "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity."[3] *D'Ambly v. Exoo*, No. 20-12880, 2021 WL 5083816, at *3 (D.N.J. Nov. 1, 2021) (quoting *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 173 (D.N.J. 1998)). "Moreover, where the plaintiff presents a fraud-based RICO claim, he must plead with particularity the circumstances of the alleged fraud." *Mierzwa v. Safe & Secure Self Storage, LLC*, 493 F. App'x 273, 276 (3d Cir. 2012) (citations omitted). To satisfy the "enterprise" element, the plaintiff must show "a 'structure,' that is, a common 'purpose, relationships among those associated with the enterprise, and longevity

_____

[3] The federal and NJRICO statutes are substantively similar. *Sharp v. Kean Univ.*, 153 F. Supp. 3d 669, 674 (D.N.J. 2015).

sufficient to permit these associates to pursue the enterprise's purpose.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 368 (3d Cir. 2010) (citation omitted).

In an association-in-fact enterprise, entities act together "for a common purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (citation omitted). An association-in-fact therefore must share: "[(1)] a purpose, [(2)] relationships among those associated with the enterprise, and [(3)] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.*; *see also Fleetwood Servs., LLC v. Complete Bus. Sols. Grp., Inc.*, 374 F. Supp. 3d 361, 373 (E.D. Pa. 2019).

"The Third Circuit has made clear that normal business relationships, without more, are insufficient to support an association-in-fact enterprise." *Zakheim v. Curb Mobility LLC*, No. 22-4594, 2023 WL 5339606, at *3 (E.D. Pa. Aug. 18, 2023) (citations omitted). Plaintiff therefore must allege that Defendants constitute "an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

The PEC Defendants argue that Plaintiff failed to adequately allege a RICO claim against them. (PEC Defs.' Moving Br. 5-21.) The PEC Defendants argue, among other things, that: (1) the TAC alleges that PVI is the RICO enterprise and fails to allege the requisite structural features of an association-in-fact enterprise (*id.* at 5-12); and (2) Plaintiff fails to plausibly allege that PEC and Manning participated in the enterprise's operation and management (*id.* at 12-14). The PVI Defendants argue that Plaintiff failed to sufficiently allege: (1) the existence of a RICO enterprise; and (2) that the PVI Defendants committed two predicate acts. (PVI Defs.' Moving Br. 19-23.)

This Court determined, as explained in the 2025 Opinion, that the SAC was deficient because, among other things, it lacked "connective tissue plausibly alleging an 'enterprise structure' tying together the various actors." (Mem. Op. 22-23.) Plaintiff argues that it cured such

7

deficiencies "in the TAC's introductory paragraphs." (Pl.'s Opp'n to PEC Defs. 38 (citing TAC ¶¶ 40-59); Pl.'s Opp'n to PVI Defs. 26 (citing TAC ¶¶ 40-59).) The introductory paragraphs Plaintiff cites as curing such deficiencies in the TAC, however, are nearly identical to paragraphs ten through twenty-eight of the SAC. (*Compare* TAC ¶¶ 40-59, *with* SAC ¶¶ 10-28.) For the same reasons as discussed in the 2025 Opinion, Plaintiff has failed to adequately allege that a RICO enterprise exists. Because Plaintiff failed to correct the deficiencies the Court found in the SAC, the Court again finds that the TAC "is bereft of connective tissue plausibly alleging an 'enterprise structure' tying together the various actors—that is, 'something more than the fact that individuals were all engaged in the same type of illicit conduct during the same time period[.]'" (Mem. Op. 22 (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 370).)

Because Plaintiff failed to adequately allege that a RICO enterprise exists, the Court dismisses Count One of the TAC.

### B.    Count Two: Section 1962(d) and NJRICO—Conspiracy

To plead a claim for RICO conspiracy under § 1962(d), a plaintiff must allege that the defendant "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." *Smith v. Berg*, 247 F.3d 532, 538 (3d Cir. 2001). If, however, a plaintiff's substantive RICO § 1962(c) claim is dismissed, any RICO conspiracy claim necessarily fails. *Irish v. Ferguson*, 970 F. Supp. 2d 317, 362 (M.D. Pa. 2013) ("[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails." (citation omitted)). Here, because the Court finds that the TAC fails to state a substantive RICO claim, the Court also finds that Plaintiff fails to allege a RICO conspiracy claim. *See id.* The Court, accordingly, dismisses Count Two of the TAC.

8

### C.    Counts Three and Eleven: Trade Secret Misappropriation

In Counts Three and Eleven, the TAC asserts DTSA and NJTSA claims ("Trade Secret Claims") against Defendants, which are premised on the claim that Defendants misappropriated Plaintiff's trade secrets. (*See* TAC ¶ 341 (alleging for Count Three that Defendants misappropriated Plaintiff's "budgets, client and vendor lists, [statements of work ('SOW')], and confidential work product performed for CCFW clients"); *id.* ¶ 560 (alleging for Count Eleven that Defendants improperly used "business data compilations, methods, techniques, designs, plans, procedures and processes").) The Court previously held that Plaintiff's Trade Secret Claims against the PVI Defendants were sufficiently pled. (Mem. Op. 28.) The Court therefore only addresses Plaintiff's Trade Secret Claims as to the PEC Defendants.

Because "[c]ourts in this district 'fold' the DTSA analysis into the NJTSA review[,]" the Court considers the two claims together. *Corp. Synergies Grp., LLC v. Andrews*, No. 18-13381, 2019 WL 3780098, at *3 (D.N.J. Aug. 12, 2019) (quoting *Scherer Design Grp., LLC v. Schwartz*, No. 18-3540, 2018 WL 3613421, at *4 (D.N.J. July 26, 2018), *aff'd sub nom.*, *Scherer Design Grp., LLC v. Ahead Eng'g LLC*, 764 F. App'x 147 (3d Cir. 2019)). There is, notably, no heightened pleading standard for a misappropriation of trade secrets claim. *See IDT Corp. v. Unlimited Recharge, Inc.*, No. 11-4992, 2012 WL 4050298, at *7 (D.N.J. Sep. 13, 2012); *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 913 (3d Cir. 2021).

To survive a motion to dismiss under both the DTSA and NJTSA, a plaintiff must adequately allege: (1) "the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret[;]" (2) that the trade secret is "related to a product or service used in, or intended for use in, interstate or foreign commerce[;]" and (3) "the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret." *Oakwood Lab'ys LLC*, 999 F.3d

9

at 905; *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 355 (D.N.J. 2019) (explaining that the "NJTSA contains virtually identical definitions of trade secret, misappropriation, and improper means" as the DTSA).

The PEC Defendants argue that Plaintiff does not adequately allege that the materials sent to Manning contained trade secrets or that the PEC Defendants knowingly improperly acquired or used such trade secrets. (PEC Defs.' Moving Br. 22-27.) The PEC Defendants also argue that Plaintiff does not have standing to bring its Trade Secrets Claims regarding CCFW's clients' trade secrets. (*Id.* at 27-28.) In the 2025 Opinion, this Court found that Plaintiff adequately alleged: (1) the existence of trade secrets (2) that were related to services used in interstate commerce. (Mem. Op. 25-26.) The Court therefore only addresses whether the TAC sufficiently alleges that the PEC Defendants misappropriated those trade secrets. (*See id.*)

One of three independent ways to misappropriate trade secrets is by "improper acquisition." *Oakwood Lab'ys LLC*, 999 F.3d at 907-08 (citing 18 U.S.C. § 1839(5)). An improper acquisition occurs when a trade secret of another is acquired "by a person who *knows or has reason to know* that the trade secret was acquired by improper means." 18 U.S.C. § 1839(5)(A) (emphasis added).

The TAC specifically alleges that Johnson sent to Manning, as PEC's General Manager: (1) "presentations and other sensitive documents" belonging to CCFW clients; (2) "CCFW's budget and project related estimates for the work [it] would be performing for PEC in 2022 as well as internal and confidential pricing and budgeting documents" which included "CCFW Financials and related analyses including the anticipated CCFW profits for that specific client and fiscal year and other financial data and analysis"; and (3) a "highly sensitive Power Point presentation relating to" another client of Plaintiff. (TAC ¶¶ 347, 358-59, 364.) The TAC also alleges that "Manning . . .

10

directed Johnson to steal confidential CCFW files and data . . . [which] included sensitive financial data[,] client information[,] client and vendor lists[,] and corporate know-how[.]" (*Id.* ¶ 365.)

Here, construing these allegations in a light most favorable to Plaintiff, the Court finds that the TAC adequately alleges that the PEC Defendants knew or had reason to know that these trade secrets were acquired by improper means. *See Am. Int'l Grp., Inc. v. Dell Wood Ins. Grp., LLC*, No. 24-4456, 2025 WL 937745, at *8 (D.N.J. Mar. 28, 2025). The TAC's specific allegations that "Manning . . . directed Johnson to steal confidential CCFW files and data . . . [which] included sensitive financial data[,] client information[,] client and vendor lists[,]" as well as acquiring "CCFW financials and related analyses including the anticipated CCFW profits . . . and other financial data and analysis" gives rise to the plausible inference that the PEC Defendants knew or had reason to know that this information was acquired by improper means, which is sufficient to state a claim. (TAC ¶ 359, 365); *Genentech, Inc. v. JHL Biotech, Inc.*, No. 18-6582, 2019 WL 1045911, at *12 (N.D. Cal. Mar. 5, 2019) (finding that defendant "at least had reason to know that the document contained alleged trade secrets, [and] that it was obtained through improper means"); *JTH Tax LLC v. Cortorreal*, No. 23-355, 2024 WL 3928884, at *7 (E.D. Va. Aug. 23, 2024) (finding that the complaint supported an inference that defendants knew or had reason to know that plaintiff's trade secrets were disclosed through improper means where plaintiff alleged that, among other things, defendants disclosed plaintiff's confidential information without permission or authorization).

The Court, accordingly, denies the PEC Defendants' Motion to Dismiss Counts Three and Eleven.

11

### D.   Counts Six and Seven: Breach of Fiduciary Duty, Breach of Duty of Loyalty, and Faithless Servant Doctrine

In Count Six, Plaintiff alleges breach of fiduciary duty against Johnson. (TAC ¶¶ 479-87.) In Count Seven, Plaintiff alleges breaches of duty of loyalty and violations of the faithless servant doctrine against Johnson, Weiler, Bicking, and Kuh. (*Id.* ¶¶ 488-502.) In the 2025 Opinion, the Court found that Plaintiff sufficiently stated a breach of fiduciary duty claim against Johnson, Bicking, and Weiler. (Mem. Op. 34.)[4] The Court dismissed Plaintiff's faithless servant and undivided loyalty claims because Plaintiff did not provide any case law or dispute the PVI Defendants' argument that New Jersey does not recognize a "faithless servant" claim separate from a duty of loyalty claim. (Mem. Op. 34 n.17.)

The PVI Defendants argue that the Court should again dismiss Plaintiff's faithless servant/duty of loyalty claim because: (1) New Jersey does not recognize a "faithless servant" claim separate from a duty of loyalty claim; (2) it is now barred under the law-of-the-case doctrine; and (3) Plaintiff did not argue that New Jersey recognizes a faithless servant claim before the 2025 Opinion and any argument made on that point now is thus procedurally improper. (PVI Defs.' Moving Br. 28-29.) In opposition, Plaintiff argues that New Jersey does recognize a faithless servant doctrine claim and that it adequately pleads such a claim. (Pls.' Opp'n Br. to PVI Defs.' 23-25.)

---

[4] Because Kuh did not move to dismiss, the Court did not address Plaintiff's claims as to Kuh. (*See* Mem. Op. 4 n.7.) Here, while Kuh generally joins the PVI Defendants' arguments, the PVI Defendants do not make any specific arguments related to Kuh regarding this claim. (*See* Kuh Mot. to Dismiss; PVI Defs.' Moving Br.) Moreover, because the Court found that Plaintiff adequately pled a breach of fiduciary duty claim against Johnson in the 2025 Opinion, and the TAC makes the same allegations, it need not analyze that claim here. (Mem. Op. 34.) The Court also notes that throughout its briefing, Plaintiff argues that Kuh's motion must be denied because the PVI Defendants' brief cannot seek to dismiss claims on his behalf. Plaintiff is incorrect. Contrary to Plaintiff's arguments that Kuh did not file a motion to dismiss, Kuh did file such a motion, and in that motion, he adopted the arguments contained in the PVI Defendants' moving brief. (*See* Kuh Mot. to Dismiss.)

The faithless servant doctrine states that an agent is not entitled to compensation "for conduct which is disobedient or which [constitutes] a breach of his duty of loyalty." Restatement Second of Agency § 469 (1958). New Jersey courts apply a duty of loyalty analysis to determine whether one acted as a faithless servant. *All Granite & Marble Corp. v. Deja*, No. A-1071-18T1, 2019 WL 7169131, at *3 (N.J. Super. Ct. App. Div. Dec. 24, 2019). The Court, accordingly, analyzes Plaintiff's breach of loyalty and faithless servant claims together.

Three elements comprise a breach of duty of loyalty claim under New Jersey law: "(1) the existence of an employer-employee relationship[;] (2) breach of . . . [the] duty of loyalty[;] and (3) resulting harm to the plaintiff." *Tiger Supplies Inc. v. MAV Assocs. LLC*, No. 20-15566, 2022 WL 1830796, at *10 (D.N.J. June 3, 2022) (quoting *Canon Fin. Servs., Inc. v. Bray*, No. 14-3829, 2015 WL 851816, at *4 (D.N.J. Feb. 26, 2015)). "An employee[, moreover,] may breach the duty of loyalty by actions that do not rise to the level of direct competition. Merely acting contrary to the employer's interests constitutes a breach of the duty of loyalty." *Goydos v. Rutgers, State Univ.*, No. 19-8966, 2024 WL 1329253, at *2 (D.N.J. Mar. 28, 2024) (citing *Vibra-Tech Eng'rs, Inc. v. Kavalek*, 849 F. Supp. 2d 462, 489 (D.N.J. 2012)). "For example, employees can breach the duty of loyalty by engaging in self-dealing or by taking or using legally protected information to benefit [themselves]." *Id.* (citing *Vibra-Tech*, 849 F. Supp. 2d at 489).

Here, Plaintiff has sufficiently pled all three elements. *First*, the TAC alleges that Johnson, Weiler, Bicking, and Kuh were employees of CCFW. (TAC ¶¶ 5, 7-9, 489-90.) *Second*, the TAC alleges that: (1) Johnson "t[ook] or us[ed] . . . CCFW's [c]onfidential [i]nformation to benefit herself" (*id.* ¶ 494); (2) Johnson, Weiler, Bicking, and Kuh "compete[d] with CCFW while still employed by CCFW" (*id.* ¶¶ 494-97); and (3) "Johnson, Weiler, Bicking, and []Kuh were . . . stealing CCFW's customers, interfering with its relationships with vendors and suppliers,

13

and exploiting CCFW's substantial investments in customer cultivation, market testing and promotion" (*id.* ¶ 477). *Third*, the TAC alleges that the PVI Defendants' actions harmed Plaintiff. (*See* TAC ¶¶ 158, 404-05, 485, 498, 501.) Plaintiff, accordingly, has sufficiently pled breach of duty of loyalty and faithless servant doctrine claims against Johnson, Weiler, Bicking, and Kuh. *Liberty Mut. Ins. Co. v. Gemma*, 301 F. Supp. 3d 523, 536-37 (W.D. Pa. 2018) (finding that plaintiff stated a breach of duty of loyalty claim where plaintiff alleged that defendant solicited customers for a new, competing company, "engaged in efforts to promote the new" company while still employed with plaintiff, and sent documents and information that belonged to plaintiff to the new company via email); *Bramshill Invs., LLC v. Pullen*, No. 19-18288, 2020 WL 4581827, at *7 (D.N.J. Aug. 10, 2020) (finding that plaintiff stated a breach of duty of loyalty claim where defendants used plaintiff's confidential information, files, and data, while still employed and after their employment ended to compete with their plaintiff employer).

The Court therefore denies the PVI Defendants' Motion to Dismiss Counts Six and Seven.

### E.    Count Four: Computer Fraud Claims

The Court previously found that the SAC sufficiently pled CROA claims against Johnson, PVI, and PVP. (Mem. Op. 38-39.) Because the allegations in the TAC are essentially identical, the Court only addresses Plaintiff's CFAA claims and CROA claims against the PEC Defendants, Bicking, and Weiler.

The CFAA criminalizes intentional access to a computer "without authorization." *Van Buren v. United States*, 593 U.S. 374, 374 (2021) (citing 18 U.S.C. § 1030(a)(2)). But those with authorization do not violate the CFAA even if they have "improper motives for obtaining information that is otherwise available to them." *Id.* at 378. To state a claim under the CFAA, a plaintiff must allege that the defendant: (1) accessed a "protected computer;" (2) has done so

14

without authorization or by exceeding such authorization as was granted; (3) has done so "knowingly" and with "intent to defraud"; and (4) as a result has "further[ed] the intended fraud and obtain[ed] anything of value." *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) (quoting 18 U.S.C. § 1030(a)(4)).

A plaintiff must also plead facts that plausibly demonstrate: (1) loss or damage that exceeds or equals $5,000 in value; and (2) that the defendant caused the loss or damage by violating the CFAA. *Christine v. Nat'l Inst. for Newman Stud.*, No. 16-6572, 2019 WL 1916204, at *4 (D.N.J. Apr. 30, 2019). Although the Third Circuit generally treats the CROA and CFAA similarly, and Plaintiff brings both causes of action, the CFAA has an independent loss threshold. *Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, No. 09-2751, 2011 WL 6088611, at *4 (E.D. Pa. Dec. 7, 2011) (noting $5,000 loss element in CFAA private cause of action).

Without alleging damages or monetary loss exceeding $5,000, a claim under the CFAA cannot survive a motion to dismiss. *Volpe v. Abacus Software Sys. Corp.*, No. 20-10108, 2021 WL 2451968, at *6 (D.N.J. June 16, 2021) ("A plaintiff must allege that the defendant's actions, in violating the CFAA, 'caused damage or loss to the plaintiff in excess of $5,000 in a one-year period.'") (citation omitted). The CFAA defines loss as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). To plead damage or loss under the CFAA, a plaintiff must allege that the defendant damaged or impaired a computer system. *Volpe*, 2021 WL 2451968, at *6-7. Put differently, "the 'loss' must generally be 'in some way related to functionality of the protected computer at issue.'" *Id.* (quoting *Clinton Plumbing*, 2011 WL 6088611, at *5). Grievances that

consist of "lost business opportunities, damaged reputation, loss of assets, and other missed revenue, however," are insufficient to satisfy the CFAA's loss requirement. *Sealord Holdings, Inc.*, 2012 WL 707075, at *4.

### 1.    *The PEC Defendants*

The PEC Defendants argue that: (1) the TAC fails to allege that PEC or Manning accessed Plaintiff's computers; (2) Johnson was authorized to access the information allegedly sent to Manning; (3) the TAC does not allege any damage or loss as a result of any actions by PEC or Manning; and (4) Plaintiff's CFAA claim is time-barred. (PEC Defs.' Moving Br. 28-33.)

Here, the Court finds that the TAC fails to sufficiently plead claims under the CFAA and CROA against the PEC Defendants. As the Court previously determined with the SAC, the TAC is devoid of any factual allegations that the PEC Defendants ever accessed, or even had access to, any CCFW computer or server. (*See generally* TAC.) This is fatal to Plaintiff's Computer Fraud Claims as to PEC and Manning. *See Fritz & Bianculli, LLC v. McCabe*, No. 24-4741, 2025 WL 491991, at *4 (E.D. Pa. Feb. 13, 2025) (dismissing plaintiff's computer fraud claims against a defendant because that defendant "only viewed and edited the plaintiff's documents on [its] own computer that [it] received via e-mail [message,]" and therefore defendant "never accessed [] plaintiff's computers" (citation modified) (quoting *Dresser-Rand Co. v. Jones*, 957 F. Supp. 2d 610, 615 (E.D. Pa. 2013)). While the Court notes that the TAC alleges that "Manning . . . directed Johnson to steal confidential CCFW files and data . . . as specifically averred in paragraphs 377-80[,]" those paragraphs merely contain a threadbare recital of some elements of computer fraud and do not contain allegations that any materials were accessed by Manning via Plaintiff's computers. (TAC ¶¶ 365, 377-80.) Moreover, to the extent that Plaintiff alleges that Defendants conspired together, this is insufficient. *See In re Vertis Holdings, Inc.*, 536 B.R. 589, 619 (Bankr.

D. Del. 2015), *aff'd*, No. 12-51176, 2016 WL 7031282 (D. Del. Nov. 30, 2016) ("[A] plain reading of the [CROA] supports the conclusion that the New Jersey legislature intended that the statute covered only those 'actors' who directly accessed the computer at issue.").

The Court, accordingly, dismisses Count Four against the PEC Defendants.

### 2.    *The PVI Defendants*

The PVI Defendants argue that Plaintiff failed to adequately allege that $5,000 in losses were suffered. (PVI Defs.' Moving Br. 23-27.) Here, viewing the facts in the light most favorable to Plaintiff, the Court finds that the TAC adequately alleges CFAA and CROA claims against Johnson, PVI, and PVP. Plaintiff alleges that Johnson deleted over one thousand files from her CCFW laptop (TAC ¶ 257), and that "through the actual loss of Plaintiff's data . . . [it] spent . . . well over $5,000 aggregated over a one-year period . . . by way of, *inter alia*, forensic investigations" (*id.* ¶ 405). At minimum, these allegations give rise to a plausible inference that Plaintiff suffered $5,000 in losses to conduct forensic investigations into Johnson's deletion of data. "Compensable losses can include 'the cost of remedial measures taken to investigate or repair the damage to the computer[.]" *Paramount Residential Mortg. Grp., Inc. v. Nationwide Mortg. Bankers, Inc.*, No. 22-4656, 2023 WL 3736385, at *7 (D.N.J. May 31, 2023) (quoting *Volpe*, 2021 WL 2451968, at *6 (D.N.J. June 16, 2021)). "A plaintiff can also recover for 'damage,' defined by the CFAA as 'any impairment to the integrity or availability of data, a program, a system, or information.'" *Id.* (quoting 18 U.S.C. § 1030(e)(8)).

Because the Court finds that the TAC adequately alleges that Johnson damaged Plaintiff's computer by deleting data and Plaintiff suffered at least $5,000 in damages by conducting a

forensic investigation as a result, the Court denies the PVI Defendant's Motion to Dismiss as to Plaintiff's CFAA claim against Johnson, PVI, and PVP.[5]

### 3. *Bicking, Weiler, Kuh*

As to Bicking, Weiler, and Kuh, the Court finds that the TAC fails to adequately allege Computer Fraud Claims. While the TAC generally alleges that Bicking, Weiler, and Kuh stole information and documents and sent them to Johnson (*see* TAC ¶¶ 391-99), it is devoid of allegations of how Bicking or Weiler's unauthorized actions caused "damage" that needed "repair" or caused Plaintiff to be unable "to utilize [its] computer[s,]" *Paramount Residential Mortg. Grp., Inc.*, 2023 WL 3736385, at *7.

The Court, accordingly, dismisses Count Four as to Bicking, Weiler, and Kuh.

### F. Counts Eight, Nine, Twelve, and Thirteen: Tortious Interference Claims

"[T]o state a claim for tortious interference with contractual relations and/or prospective economic advantage," a plaintiff must adequately allege:

> (1) the existence of a contract or of a "reasonable expectation of economic advantage;" (2) an intentional and unjustifiable interference with the contract or expectation by defendant; (3) the interference caused the loss of contract or prospective gain; and (4) the injury caused the damage to the plaintiff.

*Dando v. Bimbo Food Bakeries Distrib., LLC*, No. 14-2956, 2016 WL 475262, at *4 (D.N.J. Feb. 8, 2016) (citations omitted); *see also Centennial Plaza Prop, LLC v. Trane U.S. Inc.*, No. 22-1262,

---

[5] The TAC alleges that Johnson's deletion of the data and files were done after her resignation from CCFW and "within the scope of her role as an Officer of PVI and PVP" including as "PVI's CEO" and that PVI and PVP are vicariously liable because she was performing as an agent of PVI and PVP. (TAC ¶¶ 38-84.) The Court, moreover, previously determined in the 2025 Opinion that Plaintiff adequately alleged the elements of a CROA claim against Johnson, PVI, and PVP and thus that the data was deleted "without authorization." (*See* Mem. Op. 39); *see also Ho-Ho-Kus, Inc. v. Sucharski*, No. 23-1677, 2023 WL 7403539, at *15 (D.N.J. Nov. 9, 2023) (explaining the CROA's "without authorization" element).

2023 WL 7403640, at *3 (D.N.J. Nov. 9, 2023) (citing *Industria De Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*, 679 F. Supp. 3d 53, 111 (D.N.J. 2023)). "A plaintiff need not identify multiple lost business opportunities to establish a cause of action for tortious interference, but it must identify [at least] one." *Austar Int'l Ltd.*, 425 F. Supp. 3d at 358 (citing *Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, 332 F. App'x 787, 790 (3d Cir. 2009)).

In the TAC, Plaintiff asserts tortious interference claims against the PEC Defendants based on: (1) its contractual relationships with clients, vendors, and suppliers, and with potential future relationships with clients and vendors (Counts 8 and 9); (2) its employment contracts with Johnson (Counts 8 and 13); and (3) its employment contracts with Bicking, Weiler, and Kuh (Counts 8 and 13). (TAC ¶¶ 503-45, 577-88.) Similarly, Plaintiff asserts the following tortious interference claims against the PVI Defendants: (1) tortious interference with contracts and existing business relationships (Count 8); (2) tortious interference with prospective economic advantage (Count 9); and (3) tortious interference with Bicking, Weiler and Kuh's employment contracts (Count 12). (TAC ¶¶ 503-45, 570-76.)[6]

### 1.    *PEC Defendants*

The PEC Defendants argue that the Court should dismiss Plaintiff's tortious interference claims because none of Johnson's contracts prohibited PEC or Manning from continuing to do business with PVI after September 22, 2022. (PEC Defs.' Moving Br. 35.) The PEC Defendants contend that: (1) neither agreement had a non-compete provision; (2) PEC and Manning began working with PVI *before* Johnson's Consulting Agreement was signed; (3) PEC and Manning had no knowledge of Johnson's Consulting Agreement in March 2022 when they entered into a master

---

[6] Count 12 only asserts tortious interference claims against Johnson, PVI, and PVP. (TAC ¶¶ 570-76.)

service agreement (the "MSA") with PVI; (4) Plaintiff failed to adequately allege malice or intentional inducement of Johnson, Weiler, Bicking, or Kuh; (5) Plaintiff failed to adequately allege that PEC or Manning caused Johnson, Bicking, Weiler, or Kuh to violate their agreements; (6) Plaintiff failed to adequately allege damages associated with the purported breaches; (7) Plaintiff failed to allege that PEC or Manning interfered with Plaintiff's relationships with Albireo, Merz, or other CCFW clients; and (8) Plaintiff's allegations that PEC and Manning interfered with its client and vendor relationships cannot stand because it is group pled and there are no allegations that PEC or Manning had actual knowledge of any of Plaintiff's client contracts or prospective relationships. (*Id.* at 35-42.)

Here, the Court finds, as it did in the 2025 Opinion, that Plaintiff does not plausibly allege that PEC or Manning knew about the individual employment agreements with Johnson, Bicking, Weiler, or Kuh—or that PEC or Manning intentionally induced a breach of those agreements. *See Perti v. McRoberts Protective Agency, Inc.*, No. 14-7459, 2015 WL 5089570, at *4 (D.N.J. Aug. 27, 2015) ("A claim for tortious interference requires [allegations] 'that the defendant caused a third party to breach a contract' with the plaintiff" (citations omitted)).

Plaintiff alleges that it sent PEC and Manning a letter enclosing each of the contracts alleged to be breached on September 22, 2022, as proof of knowledge that the PEC Defendants knew of the contracts. (TAC ¶¶ 75-77, 518.) The Court therefore finds that Plaintiff's tortious interference claims regarding its agreements with Johnson, Bicking, Weiler, and Kuh are limited to allegations after September 22, 2022. (*See id.*); *Florian Greenhouse, Inc. v. Cardinal IG Corp.*, 11 F. Supp. 2d 521, 525 (D.N.J. 1998) ("A person cannot intentionally interfere with a contract that he knows nothing about." (citation omitted)). Plaintiff contends that because it pleads that Manning knew that Bicking worked for CCFW, the PEC Defendants had "actual knowledge of"

the employment agreements at issue. (Pl.'s Opp'n Br. to PEC Defs. 18.) The Court disagrees. Just because the TAC alleges that Manning was aware that Bicking worked for Plaintiff does not mean that Manning was aware of the subject matter of Bicking's, or any other employee's specific employment contracts with CCFW. Plaintiff, moreover, fails to dispute in opposition the PEC Defendants' argument that Johnson signed her Consulting Agreement (which included a non-solicitation provision) two days after PEC and PVI signed the MSA. (*See* TAC ¶ 181 ("[O]n or about March 29, 2022, . . . PVI[ ] entered into a master services agreement . . . with PEC."); PEC Defs.' Moving Br. 36 n.49 (explaining that the MSA was dated March 31, 2022); Ex. C. to Lonergan Decl. ("Consulting Agreement") 2, ECF No. 162-6).)[7] Any alleged solicitation of the PEC Defendants by Johnson necessarily occurred before the non-solicitation provision became effective and could not constitute a violation of Johnson's Consulting Agreement.

Moreover, while Plaintiff does allege that Manning knew that Merz and Albireo were CCFW clients, and that they had contractual agreements with CCFW (*see* TAC ¶¶ 244, 523-25), these allegations are threadbare and conclusory at best, and do not constitute sufficient allegations of actual knowledge of their contracts or the contracts' terms. *See Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 422 (3d Cir. 2013) ("[W]ithout knowledge of the specific contractual right, [defendant] cannot be deemed to have intentionally interfered with that right.").

---

[7] "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985)). An exception to the general rule, however, is that a "document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *Id.* (internal quotation marks omitted); *see Cope v. Soc. Sec. Admin.*, 532 F. App'x 58, 60 (3d Cir. 2013). Because the employment agreements at issue are integral to, and explicitly relied upon in the TAC, the Court considers these documents and arguments the parties make relying on them. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

21

Because Plaintiff fails to adequately allege that the PEC Defendants had knowledge of the contracts at issue and their terms, the Court finds that Plaintiff does not sufficiently allege that the PEC Defendants intentionally interfered with those contracts. *See id.*

The Court, accordingly, dismisses Counts Eight, Nine, and Thirteen against the PEC Defendants.

### 2. *PVI Defendants*

The PVI Defendants argue that the Court should dismiss Plaintiff's tortious interference claims because they are duplicative of Plaintiff's breach of contract claims and thus barred by the economic loss doctrine. (PVI Defs.' Moving Br. 29.)

As the Court explained in the 2025 Opinion, where a plaintiff alleges the same underlying conduct for its tortious interference and contract claims (as CCFW does here for Johnson, Bicking, Weiler, and Kuh), the economic loss doctrine bars the plaintiff's tortious interference claim. *See Dando*, 2017 WL 1362022, at *3. The Court, accordingly, dismisses Counts Eight, and Nine against Johnson, Bicking, Weiler, and Kuh, as well as Count Twelve against Johnson.

Plaintiff's tortious interference claims against PVI and PVP, however, are separate and distinct from those claims because PVI and PVP were not parties to Johnson, Bicking, Weiler, and Kuh's employment contracts with CCFW. The Court finds that Plaintiff adequately alleges tortious interference claims against PVI and PVP.

First, Plaintiff adequately alleges the existence of Johnson, Bicking, Weiler, and Kuh's employment contracts, as well as CCFW's contracts with Janssen, Albiero, Merz, and PEC, and a reasonable expectation of economic advantage flowing therefrom. (TAC ¶¶ 504, 511, 529-30.) Plaintiff's allegations, moreover, give rise to the plausible inference that: (1) PVI and PVP knew about those contracts because Johnson, Bicking, Weiler, and Kuh were all employees of Plaintiff

and had their own independent employment contracts; (2) Johnson, Bicking, Weiler, and Kuh worked at CCFW while Janssen, Albireo, Merz, and PEC were clients of Plaintiff; and (3) thereafter Johnson, Bicking, Weiler, and Kuh were the principal employees of PVI and PVP. (TAC ¶¶ 504, 511, 516, 529-30.) Second, Plaintiff alleges that PVI and PVP intentionally interfered with those contracts. (TAC ¶¶ 506, 530, 541, 572-74.) Third, Plaintiff alleges that the interference caused the loss of those contracts or of economic advantage that it would have gained therefrom. (TAC ¶¶ 513, 531-32, 539-40, 573-74.) Fourth, Plaintiff alleges that the injury caused damage to Plaintiff. (TAC ¶¶ 514, 531-32, 544, 576.)

The Court therefore finds that Plaintiff has sufficiently alleged tortious interference against PVI and PVP and denies the PVI Defendants' Motion to Dismiss Counts Eight, Nine, and Twelve against PVI and PVP.

As the Court discussed in the 2025 Opinion, however, the economic loss doctrine bars these same claims against Johnson, Bicking, Weiler, and Kuh. (*See* Mem. Op. 41.)

The Court, accordingly, grants the PVI Defendant's Motion to Dismiss Counts Eight, Nine, and Twelve against Johnson, Bicking, Weiler, and Kuh.

G.    **Count Ten: Unfair Competition**

Plaintiff brings an unfair competition claim against Defendants based on: (1) the PVI Defendants' "continued unauthorized use of the CCFW name and brand . . . after their employment at CCFW ended . . . to make it appear that Johnson, Bicking, Weiler, Kuh, PVI and PVP would be providing services through . . . CCFW . . . for their own benefit" (TAC ¶ 547); and (2) the PEC Defendants' use of the CCFW name and brand where the PEC Defendants entered into contracts that were signed by PEC consultants using CCFW email addresses (TAC ¶¶ 551-553).

23

Under New Jersey law, "[u]nfair competition claims under [both] . . . statutory and common law generally parallel those under § 43(a) of the Lanham Act." *JK Soft, Inc. v. Innoas, Inc.*, No. 18-199, 2025 WL 2305002, at \*4 (D.N.J. Aug. 11, 2025) (quoting *Cambridge Pavers, Inc. v. EP Henry Corp.*, 407 F. Supp. 3d 503, 509-10 (D.N.J. 2019)).

> The concept of unfair competition is as flexible and elastic as the evolving standards of commercial morality demand. Generally[,] it consists of the misappropriation of one's property by another—or property which has some sort of commercial or pecuniary value. The misappropriation usually takes the form of palming off another's goods as your own, although the modus operandi is not essential.

*Id.* at 5 (citation modified) (quoting *Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp. 2d 802, 815 (D.N.J. 2000)).

### 1.    *PEC Defendants*

The PEC Defendants argue that Plaintiff's unfair competition claim should be dismissed because: (1) PEC and CCFW are not competitors; (2) the allegations of unfair competition are implausible; (3) there are no allegations that the use of CCFW's email domain had any commercial or pecuniary value; (4) Plaintiff does not allege that PEC or Manning used the email with malice; and (5) Plaintiff does not allege how the email caused harm. (PEC Defs.' Moving Br. 43-45.)

Here, the Court finds that Plaintiff's unfair competition claim fails because the PEC Defendants were clients of CCFW and are therefore not competitors.[8] PEC is a pharmaceutical company and CCFW is a medical communications and marketing firm. The Court, accordingly, dismisses Count Ten as to the PEC Defendants.

---

[8] The TAC is devoid of allegations to suggest that PEC and CCFW are competitors, and Plaintiff did not argue in opposition that they are. (*See generally* TAC; Pl.'s Opp'n Br. to PEC Defs.)

### 2.    *PVI Defendants*

The PVI Defendants argue that Plaintiff's unfair competition claim should be dismissed because it is duplicative of Plaintiff's claims for tortious interference. (PVI Defs.' Moving Br. 30.) Plaintiff argues in opposition that its unfair competition claims do not rest solely on the same set of allegations as its tortious interference claims. (Pl.'s Opp'n Br. to PVI Defs. 21-22.)

While the Court found in the 2025 Opinion that Plaintiff's unfair competition claim was duplicative of Plaintiff's tortious interference and breach of contract claims (Mem. Op. 46), the Court is persuaded by Plaintiff's arguments raised in opposition to the PVI Defendants' instant motion to dismiss (*see* Pl.'s Opp'n Br. to PVI Defs. 21-22). As such, the Court finds that Plaintiff sufficiently pleads an unfair competition claim against the PVI Defendants. Plaintiff's unfair competition claims are not duplicative of their tortious interference of contract claims because its allegations rest on: (1) the PVI Defendants using their status as CCFW employees after they were no longer employed at CCFW, and (2) the same allegations made in connection with Plaintiff's Trade Secret Claims. (Pl.'s Opp'n Br. to PVI Defs. 21-22.) Because the Court already determined that Plaintiff has stated misappropriation of trade secret claims against the PVI Defendants, it also finds that Plaintiff has adequately stated an unfair competition claim against the PVI Defendants. *See CommScope, Inc. v. Rosenberger Tech. (Kunshan) Co.*, No. 19-15962, 2021 WL 4193118, at *5 (D.N.J. Feb. 26, 2021) (finding that plaintiff sufficiently stated an unfair competition claim because the Court already determined that plaintiff sufficiently stated a misappropriation of trade secrets claim); *Am. Int'l Grp.*, 2025 WL 937745, at *11 (denying defendant's motion to dismiss plaintiff's unfair competition claim after finding that plaintiff stated a misappropriation of trade secrets claim); *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 386-87 (3d Cir. 2016) (finding

25

that a claim for unfair competition encompasses, *inter alia*, claims for misappropriation of trade secrets).

The Court, accordingly, denies the PVI Defendants' Motion to Dismiss Count Ten of the TAC as to the PVI Defendants.

### H.    Count Fourteen: Misappropriation and Fraud against Kuh and PVP

Plaintiff alleges misappropriation and fraud against PVP and Kuh based on Kuh's alleged misappropriation of funds.

The PVI Defendants argue that Plaintiff's misappropriation and fraud claims should be dismissed because there is no allegation of fraud by PVP and misappropriation cannot exist as a stand-alone tort with fraud. (PVI Defs.' Moving Br. 27.) The PVI Defendants maintain that there is "no allegation of fraud by PVP, let alone allegations that meet Rule 9(b)'s heightened pleading standards." (*Id.*; PVI Defs.' Reply Br. 10.)

#### 1.    Misappropriation

"New Jersey common law misappropriation claims have similar requirements as DTSA and NJTSA claims, but add an additional element: whether [P]laintiff took precautions to maintain trade secret secrecy." *Arro-Mark Co. LLC. v. Warren*, No. 22-6663, 2024 WL 4053027, at *8 (D.N.J. Sep. 5, 2024) (citations omitted); *Rycoline Prods., Inc. v. Walsh*, 756 A.2d 1047, 1052 (N.J. Super. Ct. App. Div. 2000). The Court, in the 2025 Opinion, found that Plaintiff stated a statutory trade secrets claim against PVP. (*See* Mem. Op. 28.) Because the allegations contained in the TAC on this count are essentially the same as those contained in the SAC (*compare* TAC ¶¶ 589-95 *with* SAC ¶¶ 445-49), the remaining question is whether Plaintiff took precautions to maintain trade secrets secrecy.

Here, the Court finds that Plaintiff does not sufficiently allege that it took precautions to maintain trade secrets' secrecy pursuant to New Jersey common law misappropriation. While Plaintiff alleges that it "took reasonable steps to maintain the secrecy thereof including maintaining them in a secure file location and not disclosing them to third parties" (TAC ¶¶ 350, 369), such an allegation is a threadbare recital that misses the mark. *Cf. Arro-Mark*, 2024 WL 4053027, at *8 (finding that plaintiff adequately alleged that it protected its trade secrets secrecy where, among other things, it alleged that only select employees had access, the information was password protected, and it had "policies restricting use of personal phones, emails, and computers in the workplace"); *Rohm & Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 430 (3d Cir. 1982) (explaining that plaintiff showed it took steps to protect its trade secrets' secrecy where "it took extensive security measures to prevent the [trade secrets] disclosure"). Here, Plaintiff does not allege sufficient facts to show that it took security measures to secure its alleged trade secrets to adequately state a New Jersey common law misappropriation claim.

The Court therefore dismisses Plaintiff's Count Fourteen common law misappropriation claim against PVP and Kuh.

### 2.    *Fraud*

To state a claim of fraud under New Jersey law, a plaintiff must allege: "(1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)).

Claims of fraud must also meet the heightened pleading standard of Rule 9(b). *Id.* Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiffs "may satisfy this requirement by pleading the date, place[,] or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *McCarthy v. Musclepharm Corp.*, No. 22-3412, 2023 WL 358561, at *6 (D.N.J. Jan. 23, 2023) (internal quotation marks and citation omitted). A plaintiff alleging a misrepresentation "also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Duffy v. Absecon Police Dep't*, No. 17-1117, 2018 WL 3410026, at *4 (D.N.J. July 12, 2018) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (abrogated on other grounds)).

Here, the TAC is devoid of any allegations of fraud by PVP. (*See generally* TAC.) The Court therefore dismisses Plaintiff's Count Fourteen fraud claim against PVP.

The Court, however, finds that Plaintiff adequately alleges a claim of fraud against Kuh. First, the TAC alleges that Kuh coded an invoice "charged back to a Janssen project as a pass-through expense, listing on the invoice nine names, none of which were associated with the Janssen account" for a birthday party charging $1,626.47 in June 2022. (TAC ¶ 121(a).) The TAC further alleges that Kuh coded an invoice and expenditure to a Janssen project account as a "'Medical Strategy Team' dinner" for a meal he had alone at Jean Georges Restaurant at the Four Seasons Hotel in Philadelphia, Pennsylvania in January of 2022 where he charged $719.34. (*Id.* ¶ 121(d).) Second, because none of the names listed on the invoices were associated with the Janssen account, there is at least a plausible inference that Kuh knew that these charges were false. (*See id.*) Third, because Kuh coded the invoices to the Janssen project account, there is a plausible inference that Kuh intended that Plaintiff would rely on those invoices to fund the expenditure requests. (*See id.*) Fourth, Plaintiff adequately alleges that it relied on these invoices in that it reimbursed Janssen for the charges. (*See id.* ¶¶ 121-25.) Fifth, the TAC adequately alleges that as

28

a result of Kuh submitting these reimbursement requests, and more, Plaintiff was damaged, in total, of approximately $85,000—$69,648.40 of which it repaid to Janssen. (*See* TAC ¶¶ 121-25.) The Court notes that Kuh only joins the arguments of the PVI Defendants, and the PVI Defendants make no argument regarding Plaintiff's claim of fraud against Kuh. (*See* Kuh Mot. to Dismiss; *see generally* PVI Defs.' Moving Br.) The Court, therefore, construing these allegations in the light most favorable to Plaintiff, finds that Plaintiff has adequately alleged all five elements under the heightened pleading standard for the fraud claim against Kuh.

The Court, accordingly, denies the PVI Defendant's Motion to Dismiss Count Fourteen's fraud claim against Kuh.

## IV.     **CONCLUSION**

For the reasons set forth herein, Defendants' motions to dismiss are granted in part and denied in part. The Court will issue an Order consistent with this Memorandum Opinion.

/s/ *Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

DATED: April 29, 2026

29